UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CINDY HALABURDA, individually, and on behalf of all others similarly situated, | Case No. 12-cv-12831 |
| Plaintiff, | Hon. George C. Steeh<br>Magistrate Judge R. Steven Whalen |
| v. | |
| BAUER PUBLISHING CO., LP, a Delaware partnership, | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Bauer Publishing Co., LP ("Defendant "), by and through its counsel, moves to dismiss the amended class action complaint of plaintiff Cindy Halaburda ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

1.     In this matter, Plaintiff has failed to establish statutory standing under Michigan's Video Rental Privacy Act, or Article III standing.

2.     Additionally, Plaintiff has failed to state a claim under the Video Rental Privacy Act.

3.     Plaintiff has also failed to state a claim for breach of contract.

4.     On December 3, 2012, there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

**WHEREFORE,** Defendant respectfully requests the Court grant its motion to dismiss the Amended Complaint in its entirety with prejudice, together with costs, attorneys' fees, and such other relief as the Court deems appropriate.

Dated: December 3, 2012

|  |  |
|---|---|
| Herschel P. Fink  (P13427)<br>Robert M. Jackson (P40723)<br>Arthur T. O'Reilly (P70406)<br>HONIGMAN MILLER SCHWARTZ<br>AND COHN, LLP<br>660 Woodward Avenue<br>2290 First National Building<br>Detroit, MI  48226<br>(313) 465-7400<br>hfink@honigman.com<br>rjackson@honigman.com<br>aoreilly@honigman.com | By:___ s/ Sharon L. Schneier_____<br>Sharon L. Schneier<br>Collin J. Peng-Sue<br>DAVIS WRIGHT TREMAINE LLP<br>1633 Broadway – 27th Floor<br>New York, New York 10019<br>Telephone:    (212) 489-8230<br>Facsimile:    (212) 489-8340<br>sharonschneier@dwt.com<br>collinpengsue@dwt.com<br><br>*Attorneys for Defendant Bauer Publishing Co., LP* |

11752024.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CINDY HALABURDA, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>BAUER PUBLISHING CO., LP, a Delaware partnership,<br><br>               Defendant. | Case No. 12-cv-12831<br><br>Hon. George C. Steeh<br>Magistrate Judge R. Steven Whalen |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Herschel P. Fink (P13427)
Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
Honigman Miller Schwartz and Cohn, LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
(313) 465-7400
hfink@honigman.com
rjackson@honigman.com
aoreilly@honigman.com

Sharon L. Schneier
Collin J. Peng-Sue
Davis Wright Tremaine LLP
1633 Broadway – 27th Floor
New York, New York 10019
Telephone:     (212) 489-8230
Facsimile:     (212) 489-8340
sharonschneier@dwt.com
collinpengsue@dwt.com
*Attorneys for Defendant Bauer Publishing Co., LP*

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................. ii

CONTROLLING OR MOST IMPORTANT AUTHORITY ....................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

    A.    The Purpose and History of the Michigan Video Rental Privacy Act ................... 3

    B.    This Action ....................................................................................... 5

ARGUMENT .......................................................................................................... 5

I.    HALABURDA LACKS BOTH STATUTORY AND ARTICLE III STANDING ........... 5

    A.    Halaburda Lacks Statutory Standing ..................................................... 5

    B.    Halaburda Lacks Article III Standing .................................................... 9

II.    HALABURDA FAILS TO STATE A CLAIM UNDER THE VIDEO RENTAL PRIVACY ACT ............................................................................................ 11

    A.    The Video Rental Privacy Act Does Not Apply Here ............................. 12

        1.    The Act Does Not Cover The Sale Of Magazines .................................. 12

        2.    The Legislative History Indicates The Act Does Not Cover Magazines .. 14

        3.    Construing The Act To Cover Magazines Would Raise Constitutional Issues That This Court Should Avoid ................................................... 15

    B.    Halaburda Failed To Adequately Plead Lack Of Consent To The Disclosure Of Her Information .......................................................................... 17

III.    HALABURDA FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ......... 18

    A.    Halaburda Fails To Identify The Relevant Terms Of Her Alleged Contract ........ 18

    B.    Halaburda Has Failed To Allege Sufficient "Injury" ............................. 19

CONCLUSION ..................................................................................................... 20

i

# STATEMENT OF ISSUES PRESENTED

Should the claims under Michigan's Video Rental Privacy Act be dismissed under Rules 12(b)(1) and 12(b)(6) for lack of statutory and Article III standing because plaintiff has not suffered any injury or damage?

Defendant answers:  Yes.

Should the claim under Michigan's Video Rental Privacy Act be dismissed under Rule 12(b)(6) for failure to state a claim because the statute does not apply to the disclosure of magazine subscription lists, and plaintiff was provided notice that her subscription information would be disclosed for marketing purposes?

Defendant answers:  Yes.

Should the state common law claims be dismissed under Rule 12(b)(6) for failure to state a claim because they do not allege any contract that was breached or injury sustained?

Defendant answers:  Yes.

## CONTROLLING OR MOST IMPORTANT AUTHORITY

*Warth v. Seldin*, 422 U.S. 490 (1975); *Vinton v. CG's Prep Kitchen and Café*, No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. March 2, 2010); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001); *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012); *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012); *King v. Conde Nast Publications*, No. CV 12-0719-GHK, 2012 WL 3186578 (C.D. Cal. Aug. 3, 2012); *Miller v. Hearst Communications, Inc.*, No. CV 12–0733–GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.* (TOC), Inc., 528 U.S. 167 (2000); *Maloof v. BT Commercial Corp.*, 261 Fed. Appx. 887 (6th Cir. 2008); *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012).

*McCormick v. Carrier*, 487 Mich. 180 (2010); *Sorrell v. IMS Health, Inc.*, 131 S.Ct. 2653 (2011); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011); Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711-1715.

*LaMothe v. Auto Club Ins. Assoc.*, 214 Mich. App. 577 (Mich. Ct. App. 1995); *Haisha v. Countrywide Bank*, FSB, No. 11-11276, 2011 WL 2271319 (E.D. Mich. June 8, 2011); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001)

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American-Arab Anti-Discrimination Comm. v. City of Dearborn,*
418 F.3d 600 (6th Cir. 2005) ......................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .............................................................................11, 12

*Beaudry v. Telecheck Serv., Inc.,*
579 F.3d 702 (6th Cir. 2009),
*cert. denied* 130 S. Ct. 2379 (2010) ...........................................................10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................11, 12

*Boorstein v. Men's Journal LLC,*
No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ........8

*Boorstein v. Men's Journal LLC,*
No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012).........8

*Cincinnati Ins. Co. v. Fed. Ins. Co.,*
166 F. Supp. 2d 1172 (E.D. Mich. 2001)...................................................19

*Cohen v. Facebook, Inc.,*
798 F. Supp. 2d 1090 (N.D. Cal. 2011)......................................................9

*Crandon v. U.S.,*
494 U.S. 152 (1990) ...................................................................................12

*Deacon v. Pandora Media, Inc.,*
No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012)......9

*Doe v. Chao,*
540 U.S. 614 (2004) .....................................................................................9

*Frank v. Dana Corp.,*
646 F.3d 954 (6th Cir.),
*cert. denied sub nom. Burns v. Plumbers & Pipefitters Nat. Pension Fund,*
132 S. Ct. 559 (2011)..................................................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000)....................................................................................10

*Haisha v. Countrywide Bank, FSB,*
   No. 11-11276, 2011 WL 2271319 (E.D. Mich. June 8, 2011) ........................................18, 19

*In re Brown,*
   342 F.3d 620 (6th Cir.2003) ...................................................................................................18

*In re Carter,*
   553 F.3d 979 (6th Cir. 2009) ............................................................................................10, 11

*In re Doubleclick Inc. Privacy Litig.,*
   154 F. Supp. 2d 497 (S.D.N.Y. 2001).................................................................................7, 20

*In re Dunn,*
   203 B.R. 414 (E.D. Mich. 1996) .............................................................................................14

*In re Facebook Privacy Litig.,*
   No. C 10–02389 JW, 2011 WL 6176208 (N.D. Cal. Nov. 22, 2011).................................19, 20

*In re JetBlue Airways Corp. Privacy Litig.,*
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................................7, 20

*In re Zynga Privacy Litig.,*
   No. C 10-04680 JWW, 2011 WL 7479170 (N.D. Cal. June 15, 2011) ...................................20

*Jaimes v. Toledo Metro. Hous. Auth.,*
   758 F.2d 1086 (6th Cir. 1985).................................................................................................10

*Jarbo v. BAC Home Loan Servicing,*
   No. 10-12632, 2010 WL 5173825 (E.D. Mich. Dec. 15, 2010) ..............................................19

*King v. Conde Nast Publications,*
   No. CV 12-0719-GHK, 2012 WL 3186578 (C.D. Cal. Aug. 3, 2012).......................................8

*Kirch v. Embarq Mgmt. Co.,*
   No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011).............................................18

*Klimas v. Comcast Cable Commc'ns, Inc.,*
   465 F.3d 271 (6th Cir. 2006) ..................................................................................................11

*Leocal v. Ashcroft,*
   543 U.S. 1 (2004)....................................................................................................................16

*Leslie Salt Co. v. United States,*
   55 F.3d 1388 (9th Cir. 1995) ..................................................................................................16

*Limited, Inc. v. CIR,*
   286 F.3d 324 (6th Cir. 2002) ..................................................................................................13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................11

*Maloof v. BT Commercial Corp.,*
    261 Fed. Appx. 887 (6th Cir. 2008) .................................................................10

*Miller v. Hearst Communications, Inc.,*
    No. CV 12–0733–GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012)................8

*Mitchell v. Ky. Dept. of Corr.,*
    234 F.3d 1269, 2000 WL 1562842 (6th Cir. Oct. 12, 2000) ..........................10

*Morell v. Star Taxi,*
    343 Fed. Appx. 54 (6th Cir. 2009) ....................................................................9

*Murray v. Time Inc.,*
    No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ...........7, 8

*Nieman v. NLO, Inc.,*
    108 F.3d 1546 (6th Cir. 1997) .........................................................................12

*Parker v. U.S. Army,*
    No. 09-cv-11656, 2009 WL 3837654 (E.D. Mich. Nov. 16, 2009)...................18

*Potter v. Hughes,*
    546 F.3d 1051 (9th Cir. 2008) ...........................................................................6

*Raines v. Byrd,*
    521 U.S. 811 (1997) ....................................................................................10, 11

*Sorrell v. IMS Health, Inc.,*
    131 S.Ct. 2653 (2011) ..................................................................2, 7, 15, 16

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1988) ...............................................................................6, 9, 10

*Sterk v. Best Buy Stores, L.P.,*
    No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ...........................11

*United States v. X-Citement Video, Inc.,*
    513 U.S. 64 (1994) ............................................................................................16

*Univ. Sports Publ'ns Co. v. Playmakers Media Co.,*
    725 F. Supp. 2d 378 (S.D.N.Y. 2010)................................................................16

*Valley Forge Christian College v.*
    *Americans United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982)..........................................................................................10

*Van Alstyne v. Electronic Scriptorium, Ltd.*,
    560 F.3d 199 (4th Cir. 2009) ........................................................................9

*Vinton v. CG's Prep Kitchen and Café*,
    No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. March 2, 2010) ...........................6

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..........................................................................6


STATE CASES

*LaMothe v. Auto Club Ins. Assoc.*,
    214 Mich. App. 577 (Mich. Ct. App. 1995) .................................................19

*McCormick v. Carrier*,
    487 Mich. 180 (2010) .......................................................................12


FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

18 U.S.C. § 2710 ...............................................................................3, 14

47 U.S.C. § 551 ...................................................................................11

Fed.R.Civ.P. 8(a) .................................................................................11

Fed. R. Civ. P. 12(b)(1) ......................................................................1, 6, 9

Fed. R. Civ. P. 12(b)(6) .....................................................................1, 6, 12

U.S. Const. amend. I .......................................................................3, 7, 15, 16

U.S. Const. art. III ...........................................................................passim


STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Cal. Civ. Code § 1798.83 ..........................................................................8

Cal. Civ. Code § 3344 .............................................................................9

M.C.L. § 55.291 ..................................................................................13

M.C.L. § 256.659 ................................................................................14

M.C.L. § 338.3467 ...............................................................................14

M.C.L. § 429.352 ................................................................................................14

M.C.L. § 442.353 ................................................................................................14

M.C.L. § 445.911 ..................................................................................................6

Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711-1715 ......................... passim

**OTHER AUTHORITIES**

Oscar H. Gandy, Jr., *The Panoptic Sort* (Westview Press 1993)....................................15

S.Rep. No. 100-599 (1988) ..................................................................................3

Defendant Bauer Publishing Co., LP ("Bauer") submits this memorandum of law in support of its motion to dismiss the amended class action complaint ("Amended Complaint") of plaintiff Cindy Halaburda ("Halaburda" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This is one of many class actions the same lawyers have recently filed alleging violations of an obscure, and previously never invoked, statute – Michigan's Video Rental Privacy Act – which Michigan passed in 1988 in the wake of the federal Video Privacy Protection Act.[1] Congress passed the federal statute after the Robert Bork nomination hearings (when the nominee's video store rental records were leaked to the press), intending it to protect against unauthorized rummaging through citizens' video rental records.  In her Amended Complaint, Plaintiff details her personal dislike of certain generic data collection practices, but fails to plead facts showing that Bauer is legally liable for such routine and longstanding practices or their relevance to Michigan's statute.

Halaburda alleges no personal concrete harm or damage to her at all, let alone harm or damage caused by the alleged disclosure of her subscription to *Woman's World*, as the Michigan statute requires.  Rather, Halaburda offers the speculative theory that Bauer deprived her of the chance to sell her own data to third-party advertisers and profit from the value of her personal information.  However, in analogous privacy class actions, numerous courts have rejected this

---

[1] Consistent with their past practice, Plaintiff's lawyers have brought nearly identical suits against other magazine publishers based on purported violations of Michigan's Video Rental Privacy Act.  *See Grenke v. Hearst*, No. 2:12-cv-14221 (which has been assigned to Hon. David M. Lawson); *Fox v. Time*, No. 2:12-cv-14390 (which was recently reassigned to Hon. Gershwin A. Drain).  The lawyers brought a fourth suit, *Fox v. Condé Nast*, No. 2:12-cv14312-GCS-MKM, on behalf of a plaintiff with the same name as the plaintiff in the *Time* action, Susan Fox, but voluntarily dismissed that action a few days before they filed the complaint in the *Time* action.

1

injury theory, and dismissal of Plaintiff's claim under the Video Rental Privacy Act is warranted here as well.  Further, Plaintiff's failure to plead any injury demonstrates she lacks injury in fact sufficient to confer Article III standing.  *See* Point I.

There are compelling reasons for the Court to find that the Video Rental Privacy Act does not apply, and was not intended to apply, to the disclosure of magazine subscriber lists.  First, the plain meaning and legislative history of the Video Rental Privacy (consistent with the federal statute) make it clear that the Act does not apply to magazine subscriptions.  To find that the term "written materials" was intended to broadly cover *any* disclosure of *any* written material would lead to absurd results and goes well beyond what was intended to be covered by the statute.  Not surprisingly, Plaintiff has alleged no basis for treating magazines like videos (and books) or for treating subscribing to a magazine as "selling at retail" as required under the Act.  *See* Point II.A.

Second, legitimate privacy concerns would not be served by applying the statute to prohibit sharing the fact that Halaburda received through the mail a subscription to *Woman's World* – one of *many* magazines on the market catering to women.  Magazines, like newspapers, contain a variety of articles and are disseminated through a variety of open channels of distribution and can hardly be considered the type of information that the Michigan legislature intended to criminalize and make subject to statutory sanctions.  Particularly where, as here, the fact that Halaburda's "personal" information could be shared with others was disclosed, she cannot claim that the disclosure of her magazine subscription is actionable under the Act.  *See* Point II.B.

Third, the practices at issue do not come close to implicating Plaintiff's "most basic privacy rights" (Compl. ¶ 25).  Indeed, in *Sorrell v. IMS Health, Inc.*, 131 S.Ct. 2653 (2011), the Supreme Court found a state law that restricted pharmacies, insurers and other entities from selling or disseminating prescriber-identifying information for marketing purposes violated the

First Amendment.  Interpreting the Michigan statute to penalize magazines for disseminating or sharing certain factual information for marketing purposes would similarly run afoul of First Amendment protections, and the rule of lenity which dictates a narrow construction of the statute. *See* Point II.A.3.  It is hardly surprising that no one has brought a civil or criminal action under the Video Rental Privacy Act based on the sale of magazine subscription lists in the 25 years since Michigan enacted it into law, and no court has ever applied the Michigan statute applicable in these circumstances.  In the meantime, magazine publishers' longstanding practices – including subscription list sales – have remained largely unchanged since the statute's passage.

Finally, Plaintiff's contract claim must also fail because she cannot identify which provisions of her alleged contract was breached or any cognizable injury arising from such breach.  *See* Point III.

## FACTUAL BACKGROUND

### A.       The Purpose and History of the Michigan Video Rental Privacy Act

In 1987, the video rental records of United States Supreme Court nominee Judge Robert Bork were leaked to Washington's City Paper.  S.Rep. No. 100-599 at 5 (1988).  Congress denounced the disclosure of Judge Bork's video rental records and moved quickly to pass legislation prohibiting disclosure of video rental records.  The Video Privacy Protection Act ("VPPA"), which became law in November 1988, prohibits "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" from disclosing "to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.  In enacting the VPPA, Congress made clear that it was "extend[ing] privacy protection to only those transactions involving the purchase of video tapes and not other products."  S.Rep. No. 100-599 at 12.

3

Against this backdrop, the Michigan Legislature passed Act 378 of 1988, effective March 1989 (the "Video Rental Privacy Act," or "Act"), which states:

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.  In considering the subsequent addition of Section 445.1715, which would establish civil remedies for violation of the Video Rental Privacy Act, the Michigan House expressed its understanding of the Act as "generally prohibit[ing] disclosures of information on a customer's rentals of books, videos, and sound recordings."  *See* House Legislative Analysis Section, May 4, 1989.  The Michigan Senate expressed a similar understanding, stating that the Act "prohibits disclosure of information on a customer's rental of books, videos, and sound recordings."  *See* Senate Fiscal Agency Bill Analysis, October 4, 1989.  Neither the Act itself nor its legislative history makes any reference to magazines.

The Video Rental Privacy Act also contains various exceptions, including one that permits disclosure "for the exclusive purpose of marketing goods and services directly to the consumer."  M.C.L. § 445.1713(d).  The statute further provides that "written notice that the customer may remove his or her name at any time" shall be provided to the person by the disclosing party.  *Id*.  The Video Rental Privacy Act provides a civil cause of action "for *damages* to the customer identified in the record … disclosed in violation of this act" and provides for the recovery of actual damages, including damages for emotional distress, or $5,000, whichever is greater.  M.C.L. § 445.1715 (emphasis added).  In addition, "[a] person who violates this act is guilty of a misdemeanor."  M.C.L. § 445.1714.

4

**B.      This Action**

On June 27, 2012, counsel for Halaburda filed a complaint against Bauer naming

"Deborah Kinder" as plaintiff.  On August 23, 2012, Halaburda's counsel filed an Amended

Complaint, removing "Deborah Kinder" and instead naming Halaburda as plaintiff.  The

Amended Complaint asserts that Bauer disclosed without prior notice "Halaburda's name and

address, as well as the fact that Halaburda subscribes to *Woman's World*."  Am. Compl.

¶¶ 62-63.  Plaintiff alleges that disclosure of such information constitutes a violation of the

Video Rental Privacy Act, which she alleges "prohibits companies from disclosing without

permission *any* record or information identifying a customer as having purchased specific written

materials."  *Id.* ¶ 5 (emphasis provided).  The Amended Complaint details Halaburda's personal

dislike of various marketing practices and unidentified "data miners."  Am. Compl. ¶¶ 20-21, 44.

Plaintiff claims (based largely on press reports concerning information-sharing practices generally)

that Bauer damaged her and the putative class by "dilut[ing] the value of Plaintiff and the class

members' personal property, and depriv[ing] them of the opportunity to sell their personal property

at market rates for their own financial gain."  Am. Compl.  ¶ 70.  Among other remedies, Plaintiff

seeks an injunction and an award of damages, "including disgorgement, or $5,000, whichever is

greater, to each class member."  Am. Compl.  at 18-19 (Prayer for Relief), ¶ 4.

## ARGUMENT

## I.      HALABURDA LACKS BOTH STATUTORY AND ARTICLE III STANDING

The Court should dismiss Plaintiff's claims under the Video Rental Privacy Act because

she lacks standing under both the Act itself and Article III of the United States Constitution.

### A.      Halaburda Lacks Statutory Standing

The Court should dismiss Halaburda's First Cause of Action because she has failed to

adequately plead "damages" or injury to confer standing under the terms of the Act.[2]  The Video Rental Privacy Act premises a customer's right to bring a claim on "damages to the customer." M.C.L. § 445.1715.  Thus, even assuming the Video Rental Privacy Act applies to magazine subscription information – which it does not – Halaburda must plead she suffered "damages" to have statutory standing under the Act.  "Essentially, the standing question in such cases is whether the … statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  Here, the Video Rental Privacy Act does not allow a cause of action based on a mere statutory violation.  Rather, § 445.1715 requires the plaintiff suffer "damages" or injury.

     Although no Michigan court has construed the Video Rental Privacy Act, including the "damages" provision, a recent opinion by the United States District Court for the Western District of Michigan offers some insight.  In *Vinton v. CG's Prep Kitchen and Café*, No. 1:09-cv-707, 2010 WL 748221, at *1 (W.D. Mich. March 2, 2010), plaintiff claimed a violation of the Michigan Consumer Protection Act ("MCPA") based on the defendant's issuance of a credit card receipt to him containing all sixteen digits of his credit card number.  The court noted that the MCPA granted standing to "[a] person who suffers loss as a result of a violation of this act," M.C.L. § 445.911(2), and plaintiff had "merely allege[d] a technical violation of the statute."  *Id.* at *2.  Accordingly, the court ruled that "[i]n the absence of allegations that plaintiff has 'suffered a loss,' no claim for damages is stated under the Consumer Protection Act."  *Id.*

     Halaburda fails to allege she suffered injury caused by the alleged disclosure of her

---

[2] Lack of statutory standing requires dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), not for lack of standing under Fed. R. Civ. P. 12(b)(1).  *Potter v. Hughes*, 546 F.3d 1051, 1055-56 (9th Cir. 2008).  Although Bauer also contends that Halaburda lacks Article III standing, the Court may rule first on whether she has statutory standing under the Act without having to reach the Article III issue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1988) (approving resolution of statutory standing before Article III standing); *id.* at 115-17 (Stevens, J., concurring).

subscription to *Woman's World*. Instead, the Amended Complaint makes clear that Halaburda's complaint is generic and does not identify any harm to *her*.[3] Here, the only "damages" Halaburda alleges, besides the purported violation of the Video Rental Privacy Act, is that she and the purported class have lost "value" in the opportunity to sell their information themselves, and the value of their subscriptions has been diminished. Am. Compl. ¶¶ 68, 70.

First, Halaburda does not plead how her subscription information has value to *her*. Courts have rejected claims that personal information has value to individual consumers simply because it may have value to marketers. For instance, in *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001), the court held that "although demographic information is valued highly . . . the value of its collection has never been considered an economic loss to the subject." The court further noted it was "unaware of any court that has held the value of this collected information constitutes damage to consumers." *Id. See also In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("[T]here is absolutely no support for the proposition that the personal information of an individual JetBlue passenger had any value for which that passenger could have expected to be compensated. It strains credulity to believe that . . . Torch would have gone to each individual JetBlue passenger and compensated him or her for access to his or her personal information.").

Moreover, even assuming Halaburda's personal information did, in fact, have some "value" to her, nothing supports the idea that Bauer's alleged disclosure of that information deprived her of that value. In *Murray v. Time Inc.*, No. C 12-00431 JSW, 2012 WL 3634387

---

[3] Halaburda spends much time portraying the disclosure of consumer data as a nefarious practice undertaken with sinister motives. But the United States Supreme Court has recently held that disclosure of consumer data is, in fact, speech protected by the First Amendment, the suppression of which is subject to heightened judicial scrutiny. *See Sorrell*, 131 S.Ct. at 2663 (2011); *see also id.* at 2667 ("Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs.").

(N.D. Cal. Aug. 24, 2012), the plaintiff sued under California's "Shine the Light" Act, Cal. Civ. Code § 1798.83, alleging that "consumer data has 'inherent monetary value,' that 'consumers engage in *quid pro quo* transactions with online business whereby individuals exchange personal information for services,' and that 'companies now offer individuals the opportunity to sell their personal information themselves.'" 2012 WL 3634387, at *4. The court, however, ruled the plaintiff failed to "allege[] sufficient facts to show he suffered an economic injury" finding "Murray does not connect these general allegations to facts relating to the value of *his* personal information. Murray also has not alleged that . . . he would have attempted to sell his information and lost the opportunity to do so." *Id.* at *4-5 (emphasis original). *See also Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012); *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012); *King v. Conde Nast Publications*, No. CV 12-0719-GHK, 2012 WL 3186578 (C.D. Cal. Aug. 3, 2012); *Miller v. Hearst Communications, Inc.*, No. CV 12–0733–GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) (the "Cal. Privacy Cases").[4]

So, too, here. Halaburda has failed to plead facts specific to *her* that show the sale of her (and others') information damaged her. For example, she has not pled any facts that:

- She had an opportunity to sell that personal information;
- She desired to sell that personal information;
- Third parties would have purchased her personal information from her;
- Bauer's conduct prevented her from selling her personal information; or
- Bauer's conduct resulted in her receiving less money for her personal information.

---

[4] The courts in the Cal. Privacy Cases rejected claims brought against magazine publishers based on the alleged misuse of subscription data under California's "Shine the Light" Act, Cal. Civ. Code § 1798.83. Those cases underscored that the practice of businesses sharing customers' personal information so third parties can directly market to customers is both common and legitimate. *See, e.g., Boorstein,* 2012 WL 2152815, at *1; *Miller,* 2012 WL 3205241, at *4; *King,* 2012 WL 3186578, at *2. Indeed, Michigan's Video Rental Privacy Act specifically recognizes that businesses may share information for the "purpose of marketing goods and services directly to the consumer." M.C.L. § 445.1713(d).

*See generally* Am. Compl.  Instead, the Amended Complaint refers to generalized harm with no ties to Halaburda herself or to the putative class.  *See, e.g.*, Am. Compl. ¶ 36 (alleging "[Bauer's] practice of selling its customers' Personal Reading Information is particularly dangerous to the elderly" but failing to allege that Halaburda is herself elderly and has been exposed to danger).

Accordingly, the allegation that Bauer has diluted the value of her information is insufficient to confer statutory standing under the Video Rental Privacy Act.[5]

### B.    Halaburda Lacks Article III Standing

The Court should also dismiss Halaburda's First Cause of Action because she lacks standing under Article III of the United States Constitution.[6]  Fed. R. Civ. P. 12(b)(1) requires dismissal where a plaintiff has not established standing to sue under Article III of the U.S. Constitution.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998).  To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

---

[5] The court in *Deacon v. Pandora Media, Inc.*, No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012), mentioned in passing that the Video Rental Privacy Act "does not explicitly impose an actual injury requirement" and relied on an opinion from the Ninth Circuit interpreting the Fair and Accurate Credit Transactions Act in concluding the Michigan Act's "civil remedy provision allows for a recovery based on a showing of actual damages *or* statutory damages." 2012 WL 4497796, at *4 (emphasis original).  The *Deacon* court's interpretation of the Act does not bind this Court, and Hearst notes *Deacon*'s limited reference to statutory standing appeared in the context of an analysis of Article III standing, not statutory standing.  Moreover, that dicta conflicts with other cases regarding standing under other privacy statutes that provide for statutory damages.  *See, e.g.*, *Doe v. Chao*, 540 U.S. 614, 620 (2004) ("nothing more than a statutory violation" inadequate for an award of statutory damages under the Privacy Act of 1974; such an award "goes only to victims who prove some actual damages"); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 202 (4th Cir. 2009) ("plaintiffs pursuing claims under the [Stored Communications Act] must prove actual damages in order to be eligible for an award of statutory damages"); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (plaintiff must plead harm to qualify for statutory damages under Cal. Civ. Code § 3344).
[6] "When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action."  *Morell v. Star Taxi*, 343 Fed. Appx. 54, 57 (6th Cir. 2009).

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Dismissal is appropriate if a plaintiff cannot establish standing. *See Maloof v. BT Commercial Corp.*, 261 Fed. Appx. 887, 887 (6th Cir. 2008).

Article III standing presents an independent issue separate from whether a plaintiff has standing under a particular statute (here, the Act). *See Steel Co.*, 523 U.S. at 97 (statutory standing "has nothing to do with whether there is case or controversy under Article III"). In a class action, at least one named plaintiff must have standing. *Jaimes v. Toledo Metro. Hous. Auth.*, 758 F.2d 1086, 1093 (6th Cir. 1985) ("That a suit may be a class action, however, adds nothing to the question of standing for even named plaintiffs who represent a class must allege and show that they personally have been injured") (citation omitted) (internal marks omitted)); *Mitchell v. Ky. Dept. of Corr.*, 234 F.3d 1269, 2000 WL 1562842, at *3 (6th Cir. Oct. 12, 2000).

The fact that a statute has authorized a plaintiff to sue by granting a right of action against the defendant therefore does not, without more, satisfy the requirement of injury in fact. *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.24 (1982) ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III.").[7] Thus, absent a concrete and particularized injury, Halaburda has no Article III

---

[7] The Sixth Circuit's decisions in *In re Carter*, 553 F.3d 979 (6th Cir. 2009), and *Beaudry v. Telecheck Serv., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010), are not to the contrary. In *Beaudry*, the Sixth Circuit held that the Fair Credit Reporting Act did not require proof of injury where the statute imposed a willfulness requirement and thus did not impose a strict liability regime. *Id.* at 708. Moreover, there, unlike here, plaintiff alleged harm – the inclusion of "*false* and *negative*" information about the plaintiff. *Id.* (emphasis in original).

standing to sue under the Video Rental Privacy Act. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As discussed above, Halaburda fails to allege actual damages related to any disclosure. The only injury Halaburda has alleged is a technical violation of the Act, and a technical statutory violation, without more, does not confer standing. *See Raines*, 521 U.S. at 820 n.3. Indeed, the District Court for the Northern District of Illinois recently dismissed a case under the federal VPPA for lack of Article III standing because the plaintiff failed to allege any injury besides a violation of the statute. *See Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *6-7 (N.D. Ill. Oct. 17, 2012). Accordingly, the Court should dismiss her First Cause of Action.

## II. HALABURDA FAILS TO STATE A CLAIM UNDER THE VIDEO RENTAL PRIVACY ACT

Under Fed. R. Civ. P. 8(a) "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint fails to

---

And in *Carter*, the plaintiffs alleged a specific harm, *i.e.*, that they had received "referrals sullied by kickbacks." 553 F.3d at 989. Indeed, the Sixth Circuit in *Carter* emphasized that "RESPA does not authorize suits by members of the public at large; it authorizes suit only by individuals who receive a loan that is accompanied by an unlawful referral, which is plainly an individualized injury." *Id.* at 989. Thus, *Carter* and *Beaudry* do not support the proposition that the Video Rental Privacy Act – a very different statutory scheme with a very different structure and purpose – creates Article III standing for any plaintiff who alleges a statutory violation that caused her no concrete and particularized injury. Here, Halaburda pleads no financial detriment or other harm that has any nexus to alleged actions or omissions of Bauer. Further, to the extent *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271 (6th Cir. 2006), held that an allegation of a violation of the privacy provisions of the Cable Communications Policy Act, 47 U.S.C. § 551, conferred standing under Article III, that holding was dicta, as the court dismissed that case for failure to state a claim because broadband internet service did not qualify as "cable service" within the meaning of the statute. *Id.* at 280.

meet this standard "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Rule 12(b)(6) exists to weed out undeserving complaints *before* parties engage in expensive discovery, particularly in putative class actions likely to generate significant discovery costs. *Twombly*, 550 U.S. at 559. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. When a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

## A.    The Video Rental Privacy Act Does Not Apply Here

Based on the legislative history of the Video Rental Privacy Act, this Court should conclude that the Act does not and was not intended to apply in the circumstances alleged here. That being the case, the Court should dismiss Halaburda's claim in its entirety.

### 1.    The Act Does Not Cover The Sale Of Magazines

"In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. U.S.*, 494 U.S. 152, 158 (1990). *See also McCormick v. Carrier*, 487 Mich. 180, 191 (2010) ("The primary goal of statutory construction is to give effect to the Legislature's intent"). "When the text of a statute contains an undefined term, that term receives its ordinary and natural meaning. As a further aide in determining the meaning of an undefined term, the maxim of *noscitur a sociis* – it is known from its associates – directs us to look to accompanying words to deduce the undefined word's meaning. Where this textual analysis fails to produce a conclusive result, or where it leads

12

to ambiguous or unreasonable results, a court may look to legislative history to interpret a statute." *Limited, Inc. v. CIR*, 286 F.3d 324, 332 (6th Cir. 2002) (internal citations omitted).

Here, the Video Rental Privacy Act focuses on persons "engaged in the business of selling at retail," not on magazine publishers, who are not in the "retail" business as that word is commonly understood. Consistent with this understanding, no civil or criminal case has been brought against magazine publishers for selling subscriber lists in the last 25 years, even though the sale of those lists has been a well-known practice since long before the Act's passage.

Even if this Court were to view publishers as "retailers" under the Act, it does not cover magazines. The Act refers to "information concerning the purchase, lease, rental, or borrowing" of "books or other written materials," but does not define "written materials." *See* M.C.L. §§ 445.1711, 445.1712. No reported cases interpret "written materials" in the context of the Video Rental Privacy Act, and the ordinary definitions of "written" and "materials" are unhelpfully vague and ambiguous. *See* http://www.merriam-webster.com/dictionary/written (defining "write" as "to form (as characters or symbols) on a surface with an instrument (as a pen);" "to form (as words) by inscribing the characters or symbols of on a surface;" "to spell in writing;" and "to cover, fill, or fill in by writing"); http://www.merriam-webster.com/dictionary/material (defining "material" as "relating to, derived from, or consisting of matter").[8] It is self-evident that disclosure of someone's subscription to a magazine or newspaper – containing a variety of articles – is entirely different from disclosure that someone rented or purchased a particular video (or book) and is not the activity covered by the Act.

Moreover, no Michigan statute, including the Act, includes magazines in its definition of "written materials." Indeed, a review of the Michigan Compiled Laws reveals a plethora of ideas as to what constitutes "written material" – none of which includes magazines. *See* Michigan Notary Public Act, M.C.L. § 55.291(2)(b) (prohibiting notaries from translating from English

---

[8] Under these definitions, any objects bearing any symbols would constitute "written materials."

certain terms found on any "document, advertisement, stationery, letterhead, business card, or other comparable written material"); Driver Education Provider and Instructor Act, M.C.L. § 256.659(c)(ii) (requiring driving instructors to provide instructional information in the form of "a brochure or other written material" if received at no cost); Michigan Immigration Clerical Assistant Act, M.C.L. § 338.3467(q)(2) (prohibiting immigration clerical assistants from translating from English certain terms found on any "document, advertisement, stationery, letterhead, business card, or other comparable written material"); Appliances Act, M.C.L. § 429.352(b) (prohibiting the sale of appliances bearing "a label or other written materials" containing false or misleading information regarding the appliance's energy efficiency); Art Multiples Sales Act, M.C.L. § 442.352(1) (permitting certain information to be furnished in "a catalog or other written material"); *id.* § 442.353 (requiring certain disclosures for solicitation of direct sales in "a catalog, prospectus, flyer, or other written material or advertisement").

### 2.    The Legislative History Indicates The Act Does Not Cover Magazines

The legislative history of the Video Rental Privacy Act leaves no doubt that the term "written materials" was intended to be construed narrowly. *See, e.g.*, *In re Dunn*, 203 B.R. 414, 416 (E.D. Mich. 1996) ("To determine the meaning Congress intended its enactment to carry, courts are to look to the legislative history."). In fact, that history (as well as the history of the related federal statute) shows the Michigan Legislature *never* intended to criminalize the existing practice of sharing magazine subscription information.

The federal statute, which immediately preceded the Act, clearly excluded magazine subscription information. *See* 18 U.S.C. § 2710(a)(4) (limiting scope of act to "rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials"). Indeed, it was commonly recognized the federal statute did *not* cover magazine subscription lists. The editors of *Friday Report*, a marketing newsletter, complained about the federal statute and raised the

14

question, "if this legislation passes, will magazine subscription lists be next?"  Oscar H. Gandy,

Jr., *The Panoptic Sort*, 210-11 (Westview Press 1993) (citing "DMA Comes Out Against Video

Privacy Legislation As Written," *Friday Report*, Aug. 5, 1988, at 1).

With the federal statute in mind, the Michigan legislature passed the Video Rental

Privacy Act.  The Michigan legislature, like Congress, did not intend the Act to apply to

magazine subscriptions.  Both the Michigan House and the Michigan Senate understood the Act

to apply to "rentals of books, videos, and sound recordings," not magazines.  *See* House

Legislative Analysis Section, May 4, 1989; Senate Fiscal Agency Bill Analysis, October 4, 1989.

And the popular name of the Act, the "Video Rental Privacy Act," by referring to "Rental[s],"

excludes subscriptions, including magazine subscriptions.  Similarly, the editorially supplied

caption for the Act reads, "Purchase, rental, or borrowing of *books, or sound or video

recordings*; preservation of personal privacy" (emphasis added).  All of the available evidence

dispels any notion that Michigan legislature was intending to criminalize the then-routine

practice of selling magazine subscription lists for marketing purposes.

### 3.    Construing The Act To Cover Magazines Would Raise Constitutional Issues That This Court Should Avoid

If the Court were to find the Michigan statute applies to the sharing of facts concerning

magazine subscriptions, that reading would raise difficult First Amendment issues.  In *Sorrell*, the

Supreme Court rejected the government's interest in protecting doctors from the harassing sales

behavior of pharmaceutical companies by restricting the sales of pharmacy records that reveal an

individual doctor's prescribing practices unless the doctor opts-in and permits disclosure.  That case

involved a Vermont statute that forbade the sale of doctors' prescription-buying preferences to

pharmaceutical manufacturers for marketing purposes, while allowing sale of the same information

to other users.  131 S.Ct. at 2663.  The Supreme Court held the statute impermissibly imposed both

content-based and speaker-based restrictions on the availability and use of prescriber-identifying information.  The information was most likely speech entitled to protection because "[f]acts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* at 2667.  Not unlike magazine subscription lists, the Supreme Court found little doubt that databases of doctors' prescription-buying preferences were speech entitled to protection because the value of the databases communicated doctors' preferences.

The rule of lenity further requires the Court to narrowly construe any ambiguity in the Video Rental Privacy Act's civil action provision and resolve it in favor of Bauer.  The rule of lenity, a canon of statutory construction, counsels courts to choose the interpretation of an ambiguous statute that is most "lenient" or favorable to the defendant.  *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (holding where a statute has both civil and criminal application the rule of lenity must be applied consistently to both).  Courts have applied the rule of lenity in analogous situations, where the claim was based on criminal statutes that created a civil action (*see, e.g., Leslie Salt Co. v. United States*, 55 F.3d 1388, 1398 (9th Cir. 1995)*; Univ. Sports Publ'ns Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 384 (S.D.N.Y. 2010), and the rule is applied with particular scrutiny in cases implicating First Amendment concerns.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611-13 (6th Cir. 2005).

* * * * *

In sum, nothing in the Act supports the broad interpretation of "written materials" that Plaintiff urges in her Amended Complaint.  It defies the logical reach of the statute as evidenced by its legislative history – "rentals of books, videos and sound recordings" – and, if adopted, would raise constitutional concerns.  Because the Video Rental Privacy Act does not, and should not, cover magazines, it does not apply to Bauer's purported disclosure of the fact that Halaburda

subscribes to *Woman's World*, the Court should dismiss Halaburda's first cause of action.

**B.    Halaburda Failed To Adequately Plead Lack Of Consent To The Disclosure Of Her Information**

The Court should also dismiss Halaburda's claims for violation of the Video Rental Privacy Act because she failed to adequately plead lack of consent.  The Act specifically allows disclosure "[w]ith the written permission of the customer."  M.C.L. § 445.1713(a).

Halaburda makes the sweeping conclusory allegation that "[r]egardless of how the consumer subscribes, [Bauer] … uniformly fails to obtain any form of consent from its subscribers before disclosing their Personal Reading Information (must less notify them of such practices)."  Am. Compl. ¶ 33.  Magazine subscriptions generally are not sold through retail brick-and-mortar stores.  Most magazines sell subscriptions by mail, phone or online.  And the *Woman's World* website (http://winit.womansworldmag.com) (the "Website"), where customers can subscribe to the magazine, reveals that Halaburda's allegations are baseless.[9]

Here, the Website's Privacy Policy states:

> **Your continued use of womansworldmag.com (the "Website") or submission of any information to us is consent to this Privacy Policy and the womansworldmag.com Terms of Use. If you do not agree to these terms, please do not use our website.**

*See* http://winit.womansworldmag.com/pages/privacy_policy (emphasis original).  It continues:

> *We may collect Personal Information from you when you sign up* for services at womansworldmag.com, enter contests or sweepstakes, contact us via e-mail, and in other instances where you provide us with personal information.  Personal Information includes data such as your first and last name, residence address, telephone number, e-mail address, or any other information that would allow someone to identify you. . . .
>
> *Personal Information may be used for marketing and promotional* purposes by womansworldmag.com and its parent companies, subsidiaries and affiliates.  *We* also *may rent, sell or otherwise disclose your Personal Information to advertisers,*

---

[9] On a motion to dismiss, a court may consider documents incorporated into a complaint by reference.  *See Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir.), *cert. denied sub nom. Burns v. Plumbers & Pipefitters Nat. Pension Fund*, 132 S. Ct. 559 (2011).

> *sponsors, business partners and other third parties for their use.*

(emphasis provided). Thus, anyone who subscribed to *Woman's World* agreed that Bauer, like many magazine publishers, could provide certain subscriber information to third parties for marketing purposes.

Courts have held that website users consent to the terms of use contained in the website's privacy policies. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 WL 3651359, at *8 (D. Kan. Aug. 19, 2011) (plaintiffs consented to monitoring of their internet use because "the prevailing industry practice among websites is to disclose their relationship with advertising networks and the type of information those networks collect, in their privacy policies.").

In her Amended Complaint, Halaburda fails to plead that she did not subscribe to *Woman's World* through the Website, thereby consenting to the use of her magazine subscription information as permitted by the Act. Accordingly, Halaburda's First Cause of Action should be dismissed for this independent reason.

## III.   HALABURDA FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract under Michigan law, a plaintiff must allege (1) the existence of a valid contract; (2) the terms of the contract; (3) breach of the contract; and (4) an injury caused by the breach. *See Haisha v. Countrywide Bank, FSB*, No. 11-11276, 2011 WL 2271319, at *4 (E.D. Mich. June 8, 2011) (citing *In re Brown*, 342 F.3d 620, 628 (6th Cir.2003)).

### A.   Halaburda Fails To Identify The Relevant Terms Of Her Alleged Contract

Halaburda fails to even plead the contract provisions Bauer allegedly breached. In *Parker v. U.S. Army*, this court dismissed a breach of contract claim where, as here, the plaintiff did not identify any contract that was breached. No. 09-cv-11656, 2009 WL 3837654 (E.D. Mich. Nov. 16, 2009). Similarly, in *Haisha* the court dismissed plaintiff's breach of contract claim: "Plaintiffs' allegation of a breach is lacking because it is unaccompanied by facts that

support the claim, and is therefore implausible . . . nowhere do Plaintiffs plead which provisions of the mortgage or note are violated." 2011 WL 2271319, at *4. Likewise, in *Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 WL 5173825, at *10 (E.D. Mich. Dec. 15, 2010), the Court granted Defendants' motion to dismiss because "Plaintiffs provide[d] no specific contract provision or identifiable term breached by any specific Defendant . . . Plaintiffs identify no contractual provision precluding assignment or incorporating 'SEC guidelines' that might preclude assignment." Halaburda has failed to identify which provisions of her purported contract Bauer supposedly breached when it allegedly violated the Video Rental Privacy Act. Accordingly, the Court should dismiss her breach of contract claim.[10]

### B.      Halaburda Has Failed To Allege Sufficient "Injury"

Courts also dismiss breach of contract claims for failure to allege sufficient "injury." In *LaMothe v. Auto Club Ins. Assoc.*, 214 Mich. App. 577, 582 (Mich. Ct. App. 1995), for example, the plaintiff pled that his "injury" was "the threat of receiving annoying or harassing telephone calls from creditors." The court held those were "not cognizable damages in a contract action" and plaintiff had "suffered no damages as a matter of law." *Id.* at 582, 583. Similarly, Halaburda's allegations of injury include the disclosure of her name and address, which do not suffice to state a claim for breach of contract.

District courts have also rejected breach of contract claims for failure to alleged "injury" based on the alleged sale of personal data, finding personal information to have no value to consumers. *See, e.g.*, *In re Facebook Privacy Litig.*, No. C 10–02389 JW, 2011 WL 6176208, at

---

[10] As discussed in Part II.B above, the *Woman's World* Website privacy policy establishes that consumers obtaining subscriptions through the website consent to disclosure of their information. Accordingly, to the extent Halaburda claims ambiguity about whether her subscription impliedly required Bauer to abide by the Video Rental Privacy Act's disclosure provisions, that attempt must fail. *See Cincinnati Ins. Co. v. Fed. Ins. Co.*, 166 F. Supp. 2d 1172, 1177 (E.D. Mich. 2001) ("If a contract is clear and unambiguous, the court must enforce the contract as written").

*5 (N.D. Cal. Nov. 22, 2011) ("Plaintiffs fail to show that they have suffered 'appreciable and actual damage,' which means that their breach of contract claim fails"); *In re Zynga Privacy Litig.*, No. C 10-04680 JWW, 2011 WL 7479170, at *2 (N.D. Cal. June 15, 2011) (same); *JetBlue*, 379 F. Supp. 2d at 327 (plaintiffs "had no reason to expect that they would be compensated for the 'value' of their personal information"); *DoubleClick*, 154 F. Supp. 2d at 525 ("[A]lthough demographic information is valued highly . . . the value of its collection has never been considered a[n] economic loss to the subject")  Here, Halaburda's assertion of injury resembles the theory the *LaMothe*, *Facebook*, *Zynga, JetBlue*, and *DoubleClick* plaintiffs unsuccessfully advanced to show "damage."  This Court should likewise dismiss her breach of contract claim.

## CONCLUSION

For the reasons set forth above, defendant Bauer respectfully requests the Court grant its motion to dismiss the Amended Complaint in its entirety with prejudice, together with costs, attorneys' fees, and such other relief as the Court deems appropriate.

Dated: December 3, 2012
  Herschel P. Fink (P13427)
  Robert M. Jackson (P40723)          By:    /s/ Sharon L. Schneier
  Arthur T. O'Reilly (P70406)          Sharon L. Schneier
  HONIGMAN MILLER SCHWARTZ           Collin J. Peng-Sue
  AND COHN, LLP                      DAVIS WRIGHT TREMAINE LLP
  660 Woodward Avenue, Suite 2290     1633 Broadway – 27th Floor
  Detroit, MI  48226                  New York, New York 10019
  (313) 465-7400                      Telephone:    (212) 489-8230
  hfink@honigman.com                  Facsimile:    (212) 489-8340
  rjackson@honigman.com               sharonschneier@dwt.com
  aoreilly@honigman.com               collinpengsue@dwt.com


*Attorneys for Defendant Bauer Publishing Co., LP*


11754346.1

20

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that a copy of the foregoing was served on the attorneys of record in this matter by efiling on December 3, 2012.

The statement above is true to the best of my knowledge, information and belief.

/s/ Sharon L. Schneier
Sharon L. Schneier