# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CINDY HALABURDA, individually, and on
behalf of all others similarly situated,

      Plaintiff,

  v.

BAUER PUBLISHING CO., LP, a
Delaware Partnership,

      Defendant.

Case No. 2:12-cv-12831-GCS-RSW

[Hon. George C. Steeh]

[Magistrate Judge R. Steven Whalen]

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Christine E. Ficks – P64625
BODMAN PLC
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Tel: (312) 259-7777
cficks@bodmanlaw.com

Ari J. Scharg
EDELSON MCGUIRE, LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
ascharg@edelson.com

*Counsel for Plaintiff Cindy Halaburda
and the Putative Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ....................................................................................2

*Michigan's Video Rental Privacy Act* ...................................................................2

***Bauer Sells Its Michigan Customers' Private Magazine Subscription Information*** ......................3

***Halaburda Never Consented To Bauer's Disclosure Of Her Personal Reading Information*** ........4

**ARGUMENT** .....................................................................................................4

I.     BAUER'S ATTACKS ON HALABURDA'S STANDING FALL FLAT ........................4

       A.    **Halaburda Has Standing To Sue For Bauer's Violations Of The VRPA Because She Was Identified In Records Disclosed By Bauer Without Her Consent** ................................................5

       B.    **Bauer's Article III Standing Arguments Seriously Misunderstand The Case And Controversy** ......................................8

       C.    **Halaburda Sufficiently Pleads Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing Under The VRPA** ....................................................11

II.    HALABURDA PLEADS A VRPA CLAIM—THE ACT COVERS MAGAZINES AND BAUER CANNOT AVAIL ITSELF OF THE STATUTE'S "CUSTOMER CONSENT" DEFENSE .....................................................13

       A.    **Bauer Cannot Overcome The Fact That The VRPA's Plain Language Expressly Applies To All "Written Materials," Which Includes Magazines** .....14

       B.    **Bauer's Cherry-Picking Of The Legislative History Ignores That Michigan's Legislature Provided Greater Privacy Protections Than The Federal VPPA** ...........................................16

       C.    **Bauer's Supposed First Amendment Argument Is Baseless** ................17

       D.    **Halaburda Alleges She Did Not Consent To Bauer's Disclosures, And Those Allegations Govern At The Pleadings Stage** ...........................18

             **1. Bauer ignores that Halaburda is not required to anticipate and disprove Bauer's affirmative defenses in her Complaint** ........................19

             **2. Halaburda expressly alleges that she did not consent to, or receive notice of, Bauer's disclosure of her Personal Reading Information** ........................20

i

       3. **Bauer's merits defense improperly relies on extrinsic documents** .................21

       4. **In any event, Bauer's Website Privacy Policy does not address the disclosure of its customers' Personal Reading Information** .........................23

**III.**    **HALABURDA SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT, WHICH SHE SPECIFICALLY ALLEGES INCORPORATED THE VRPA** ....................................................................................................23

**CONCLUSION** ......................................................................................................24

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................4

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ........................................8

*Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390 (1906)................11

*Conn. Nat'l. Bank v. Germain*, 503 U.S. 249 (1992)........................................14

*Doe v. Chao*, 540 U.S. 614 (2004)........................................................................7

*Home Bldg. & Loan Ass'n. v. Blaisdell*, 290 U.S. 398 (1934) ........................23

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2005) ........................................14

*Raines v. Byrd*, 521 U.S. 811 (1997) ........................................................9

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ........................................11

*Reno v. Koray*, 515 U.S. 50 (1995)........................................................16 n.12

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005) ........................19, 20

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ........................................11

*Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011) ........................17, 18

*U.S. Dep't. of State v. Ray*, 502 U.S. 164 (1991)........................................9

*Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138 (1874) ........................15

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................8, 9

**United States Circuit Court of Appeals Cases**

*Bassett v. Nat'l. Collegiate Athletic Ass'n.*, 528 F.3d 426 (6th Cir. 2008)................19, 20

*Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009),
    *cert. denied* 130 S. Ct. 2379 (2010)........................................5, 6, 10 n.6

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ........................8 n.5

*FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988)........................8 n.5, 9, 10

*Graczyk v. West Pub. Co.*, 660 F.3d 275 (7th Cir. 2011) ........................6

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999) ............................... 21

*Harzewski v. Guidant*, 489 F.3d 799 (7th Cir. 2007) ......................................... 12 n.10

*In re Carter*, 553 F.3d 979 (6th Cir. 2009) ...................................................... 6, 8, 10

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012) ................................................ 20

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006) ..................... 6, 9

*Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003) ................................................. 16

*Newton v. Merill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998) .................... 15

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012) ......................... 8

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ..................................... 12 n.10

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) ......................... 6

*Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks, Inc.*, 173 F.3d 988 (6th Cir. 1999) ........................................................... 17

*Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009) ......................... 7

*Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788 (6th Cir. 2012) .............................. 11

*White v. U.S.*, 601 F.3d 545 (6th Cir. 2010) .......................................................... 4

## United States District Court Cases

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) ............................ 11 n.8

*Deacon v. Pandora Media, Inc.*, No. 11-cv-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012) ....................................... 6, 8, 9

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1101 (N.D. Cal. 2010) ......................................... 12

*Gasperoni v. Metabolife Int'l. Inc.*, No. 00-cv-71255, 2010 WL 33365948 (E.D. Mich. Sept. 27, 2000) ........................................ 15

*Gutierrez v. Barclays Group*, No. 10-cv-1012 DMS (BGS), 2011 WL 579238 (S.D. Cal. Feb. 9, 2011) .................................................. 6

*Harris v. comScore, Inc.*, 825 F. Supp. 2d 924 (N.D. Ill. 2011) ............................... 20

*In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................. 12

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................... 11

*In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................. 12, 13

*Kinder v. United Bancorp Inc.*, No. 11-cv-10440,
      2012 WL 4490874 (E.D. Mich. Sept. 28, 2012) ................................................. 5, 6

*King v. Gen. Information Servs., Inc.*, No. 10-6850,
      2012 WL 5426742 (E.D. Pa. Nov. 6, 2012) ........................................................ 18

*Kirch v. Embarq Mgmt. Co.*,
      No. 10-cv-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 18, 2011) .......................... 22 n.17

*Murray v. Time, Inc.*, No. C 12-00431 JSW,
      2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ..................................................... 12

*Narayan v. Indiana Bank Corp.*, No. 1:11-cv-01481-TWP,
      2012 WL 3229156 (S.D. Ind. Aug. 6, 2012) ...................................................... 12 n.10

*Redman Agency, Inc. v. Allstate Ins. Co.*, No. 1:89-cv-114,
      1991 WL 526300 (W.D. Mich. Oct. 30, 1991) .................................................... 23

*Rumpz v. Am. Drilling & Testing, Inc.*, No. 09-cv-10971,
      2009 WL 3464826 (E.D. Mich. Oct. 23, 2009) .................................................. 19

*Small v. Ramsey*, 280 F.R.D. 254 (W.D. Va. 2012) ...................................................... 18

*Steele v. RadioShack Corp.*, No. 11-cv-14021,
      2012 WL 368329 (E.D. Mich. Feb. 3, 2012) ...................................................... 21 n.15

*Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894,
      2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ...................................................... 10 n.7

*Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059 (N.D. Ill. 2011) .............................. 20

*Sterk v. Redbox Automated Retail, LLC*, No. 1:11-cv-01729,
      Dkt. No. 152 (N.D. Ill. Nov. 7, 2012) ............................................................. 10 n.7

*Vinton v. CG's Prep Kitchen & Cafe*, No. 1:09-cv-707,
      2010 WL 748221 (W.D. Mich. Mar. 2, 2010) ....................................................... 7

*Wang v. OCZ Tech Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) ......................................... 12 n.10

**State Court Cases**

*Att'y. Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343 (Mich. Ct. App. 2011) .................. 11

*In re Acquisition of Land for Virginia Park Neighborhood Development Program,
      Michigan A-4-2*, 283 N.W.2d 771 (Mich. Ct. App. 1979) ..................................... 12

*Ziegler v. Witherspoon*, 49 N.W.2d 318 (Mich. 1951) ..................................................... 23

v

**United States Statutes**

Electronic Fund Transfer Act, 15 U.S.C. § 1693m..................................................6 n.3

Fair Credit Reporting Act, 15 U.S.C. § 1681n ......................................................6 n.3

Video Privacy Protection Act, 18 U.S.C. § 2710 ......................................2, 10 n.7, 16, 17

**State Statutes**

M.C.L. §§ 55.263−67 ...........................................................................................15

M.C.L. §§ 256.623−27 .........................................................................................15

M.C.L. § 338.3843 ...............................................................................................15

M.C.L. § 429.351 .................................................................................................15

M.C.L. § 442.351a ...............................................................................................15

Michigan Consumer Protection Act, M.C.L. § 445.911(2) ........................................7

Michigan Public Safety Solicitation Act, M.C.L. § 14.321 ....................................7 n.4

Michigan Regulation of Collection Practices Act, M.C.L. § 445.257.......................7 n.4

Michigan Rental-Purchase Agreement Act, M.C.L. § 445.964.................................7 n.4

Video Rental Privacy Act, M.C.L. §§ 445.1711−15...........................................*passim*

**Federal and Local Rules**

Civ. L.R. 9.1(b)....................................................................................................17

Fed R. Civ. P. 8(a)(2)...........................................................................................20

**Legislative History Materials**

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section,
    H.B. No. 5331 (Jan. 20, 1989)...................................................................*passim*

Video and Library Privacy Protection Act, S. 2361, 100th Cong. (1988).........................2

**Secondary Sources**

Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*,
    17 Suffolk U.L. Rev. 881, 885 (1983) ..............................................................10

Black's Law Disctionary (9th ed. 2009) ..................................................................15

Expert Witness Report of Dr. Serge Egelman, Ph.D, *In re Netflix Privacy Litig.*,
    No. 5:11-cv-00379-EJD, Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) ...................12 n.9

Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Oct. 2002),
    *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf
    (last accessed Jan. 18, 2013) .......................................................................................12 n.9

*Retail*, Merriam-Webster Online Dictionary,
    http://www.merriam-webster.com/dictionary/retail (last accessed Jan. 18, 2013)...............15

**STATEMENT OF ISSUES PRESENTED**

Should the Court deny Defendant's Motion to Dismiss Plaintiff Halaburda's claims under Rules 12(b)(1) and 12(b)(6) because Michigan's Video Rental Privacy Act confers privacy rights, the invasion of which are sufficient to confer both statutory and constitutional standing?

Plaintiff Answers: Yes.


Should the Court deny Defendant's Motion to Dismiss Halaburda's claims under Rules 12(b)(1) and 12(b)(6) because Plaintiff alleges that Defendant's unlawful conduct caused her economic harm, thereby providing an additional basis for statutory and constitutional standing?

Plaintiff Answers: Yes.


Should the Court deny Defendant's motion to dismiss Plaintiff's claim under the Video Rental Privacy Act because the statute, by its plain text, applies to the disclosure of magazine subscription lists, and because Defendant Bauer cannot meet the requirements of the Video Rental Privacy Act's "customer consent" defense?

Plaintiff Answers: Yes.


Should the Court deny Defendant's motion to dismiss Plaintiff's breach of contract claim under Rule 12(b)(6) because Halaburda specifically alleges that she had an agreement with Bauer that, *inter alia*, prohibited Bauer from disclosing Halaburda's personal reading information to third parties without her consent?

Plaintiff Answers: Yes.

## CONTROLLING AND MOST IMPORTANT AUTHORITY

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *White v. U.S.*, 601 F.3d 545 (6th Cir. 2010).

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963); *U.S. Dep't. of State v. Ray*, 502 U.S. 164 (1991); *Warth v. Seldin*, 422 U.S. 490 (1975); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010); *In re Carter*, 553 F.3d 979 (6th Cir. 2009); *Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012); *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012); *Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009); *Deacon v. Pandora Media, Inc.*, No. 11-cv-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012); *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010); *Kinder v. United Bancorp Inc.*, No. 11-cv-10440, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012).

*In re Acquisition of Land for Virginia Park Neighborhood Development Program, Michigan A-4-2*, 283 N.W. 2d 771 (Mich. Ct. App. 1979); *Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010).

*Conn. Nat'l. Bank v. Germain*, 503 U.S. 249 (1992); *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004); *See Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138 (1874); *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003); *Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988 (6th Cir. 1999); *Gasperoni v. Metabolife, Int'l. Inc.*, No. 00-cv-71255, 2000 WL 33365948 (E.D. Mich. Sept. 27, 2000).

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005); *Bassett v. Nat'l. Collegiate Athletic Ass'n.*, 528 F.3d 426 (6th Cir. 2008); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999); *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012); *Rumpz v. Am. Drilling & Testing, Inc.*, No. 09-cv-10971, 2009 WL 3464826 (E.D. Mich. Oct. 23, 2009).

*Home Bldg. & Loan Ass'n. v. Blaisdell*, 290 U.S. 398, (1934); *Ziegler v. Witherspoon,* 49 N.W.2d 318 (Mich. 1951); *Redman Agency, Inc. v. Allstate Ins. Co.,* 1:89-cv-114, 1991 WL 526300 (W.D. Mich. Oct. 30, 1991).

## PRELIMINARY STATEMENT

This putative class action challenges Defendant Bauer Publishing Co., LP's ("Bauer") systematic practice of selling its customers' detailed magazine purchase records—without permission—to data mining companies and anybody else willing to pay for them. Plaintiff Cindy Halaburda ("Halaburda" or "Plaintiff"), a subscriber to one of Bauer's magazines,[1] alleges that Bauer's failure to obtain consent prior to the disclosure violates Michigan's Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ("VRPA" or the "Act"), a privacy statute that recognizes that "a person's choice in reading, music, and video entertainment is a private matter," and, as such, prohibits companies from disclosing their customers' reading, listening, and video viewing records without consent. *See Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331 (Jan. 20, 1989) (attached as Exhibit A).

Notwithstanding the fact that its (mis)conduct falls squarely within the plain language of the Act, Bauer's primary argument, incredibly, is that its status as a magazine publisher shields it from VRPA liability. Should the Court reject that frankly unsupportable argument, Bauer pretends that Plaintiff lacks statutory and Article III standing and that none of her claims survive because—according to Bauer—Halaburda supposedly needed to, but hasn't, shown that she suffered damages. Likewise, Bauer asserts that Halaburda was required to plead, but hasn't, that she didn't consent to Bauer's Website Privacy Policy. Failing all this, Bauer makes the

---

[1]    In her Amended Complaint, Plaintiff mistakenly alleged that she subscribed to *Woman's World* magazine, (¶¶ 40, 41, 44, 56, 58, 62), when she actually subscribed to *First for Women*—a different Bauer magazine, albeit one with a similar title and subject matter. (*See* Declaration of Cindy Halaburda, attached hereto as Exhibit B, at ¶¶ 2–5.) For all intents and purposes, however, the two magazines are one and the same; their most recent privacy policies are identical (attached hereto as Exhibits C and D), and they disclose and sell the same customer information to the same data miners, as well as the general public. (The *Woman's World* Mailing List is attached hereto as Exhibit E and the *First for Women* Mailing List is attached hereto as Exhibit F).

1

remarkable argument that it cannot be liable because no one else has ever bothered to sue it under this law.

None of Bauer's assertions support dismissal. Halaburda's allegations show she has both statutory and Article III standing. Bauer wrongfully disclosed her information, violated the Act, invaded her privacy, and caused her to overpay for her subscription. Further, the VRPA squarely applies to magazines, and any argument to the contrary asks the Court to ignore the Act's plain language (or, conversely, to read in a carve-out for magazine publishers that simply doesn't exist). Nor can Bauer seek refuge by claiming consent to its online privacy policy—Halaburda explicitly alleges that she did not consent to, or even receive notice of, any supposed privacy policy. Finally, Bauer breached its contract with Halaburda by failing to comply with the laws in place at the time of her subscription, including the VRPA, again depriving her of the full benefits of her bargain.

For all these reasons, and as discussed more fully below, Bauer's Motion to Dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

### *Michigan's Video Rental Privacy Act*

Congress passed the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), in 1988, giving substantial privacy protections to consumers' video purchase and rental histories. Originally, the VPPA was broad, protecting video and audio recordings as well as library rentals. *See* S. 2361, 100th Cong. (1988). Following intense lobbying efforts, however, its final protections were limited to video rental and purchase records. *See* 18 U.S.C. § 2710.

The State of Michigan decided to go a step (or two) further and passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of *written materials*,

2

sound recordings, and video recordings." (Ex. A) (emphasis added). The VRPA "recognize[s] [that] a person's choice in reading, music, and video entertainment is a private matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else, for that matter." *Id.* In the name of safeguarding privacy, the Act provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . *shall not disclose* to any person, other than the customer, *a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.*

M.C.L. § 445.1712 (emphasis added). Any customer whose information is disclosed in violation of the VRPA "may bring a civil action against the person and may recover both of the following: (a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater; and (b) Costs and reasonable attorney fees." M.C.L. § 445.1715. Though the original draft of the VRPA did not provide for a private right of action, this civil action provision was added to "offer more in the way of recourse for injured parties." (*See* Ex. A.)

### Bauer Sells Its Michigan Customers' Private Magazine Subscription Information

Bauer is part of a German international media, news, and entertainment conglomerate that publishes some of the most widely-circulated magazines in the United States. (*See* Plaintiff's Amended Class Action Complaint, Dkt. 9 ("Compl."), ¶ 1.) Despite the substantial revenue its magazine subscriptions generate, Bauer double dips by selling its customers' magazine subscription records—including their full names, home addresses, and magazine subscription titles ("Personal Reading Information")—to data miners[2] and others. (*Id.* at ¶ 2.)

To increase the value of its customer lists, Bauer discloses its customers' magazine purchase records to data miners for those companies to enhance Bauer's lists with detailed personal

---

[2]   Data miners are companies that purchase, trade, and collect massive databases of information about individuals and then sell that information to others. (*Id*. at ¶¶ 21–25.)

3

information about the subscribers from their own databases. (*Id.* at ¶¶ 2, 29–31, 44, 59, 60.) This information includes each subscriber's age, ethnicity, income, whether the subscriber recently moved, whether the subscriber makes political contributions or charitable donations, and even the number, age, and gender of children living in the subscriber's household. (*See id.* at ¶¶ 2, 29; *see also* Dkt. 9-1.) These "enhanced" lists are then returned to Bauer, who in turn sells them to anyone willing to pay the right price. (*Id.* at ¶¶ 29–31, 59, 60.)

***Halaburda Never Consented To Bauer's Disclosure Of Her Personal Reading Information***

No matter how they subscribe, Bauer's customers never consent to disclosure of their magazine subscription records. (*Id.* at ¶¶ 4, 5, 32, 33, 42, 43, 63–65.) During the subscription process, Bauer's customers are never presented with or required to consent to any terms or policies informing them of Bauer's disclosure practices. (*Id.*) Likewise, even after subscribing, Bauer fails to notify its customers that it will disclose their personal magazine subscription records. (*Id.* at ¶¶ 42, 43, 64, 65.) Halaburda is no different as she was neither aware of, nor consented in any way to, Bauer's policies supposedly informing her of its disclosure practices. (*Id.* at ¶¶ 42–45, 63–65.)

## ARGUMENT

On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff, *White v. U.S.*, 601 F.3d 545, 551 (6th Cir. 2010), and a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## I.  BAUER'S ATTACKS ON HALABURDA'S STANDING FALL FLAT.

Bauer's first argument is that the entire case fails for lack of statutory and Article III standing. Bauer asserts that showing injury here requires Halaburda to plead actual damages, which she

supposedly fails to do. (Defendant's Memorandum of Law in Support of Motion to Dismiss, Dkt. 29 ("Def. Br."), at 6–11.) The problem for Bauer is that actual damages are not required. The VRPA allows for statutory damages to any "customer identified in a record or other information that is disclosed in violation of [the] act," M.C.L. § 445.1715, and Halaburda pleads an invasion of privacy to establish Article III standing. Moreover, Halaburda alleges economic harm in the form of overpayment for her subscription as well as in the reduced value of her personal information.

### A. Halaburda Has Standing To Sue For Bauer's Violations Of The VRPA Because She Was Identified In Records Disclosed By Bauer Without Her Consent.

Bauer's first argument, that Halaburda fails to plead actual damages, (Def. Br. at 6–9), is simply a red herring (in addition to being incorrect factually)—the VRPA has no actual damages requirement. Rather, the VRPA provides:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following . . . (a) Actual damages, including damages for emotional distress, *or $5,000.00, whichever is greater* [plus] (b) Costs and reasonable attorney fees.

M.C.L. § 445.1715 (emphasis added). Examining similar language under the Fair Credit Reporting Act, 15 U.S.C. § 1681n, the Sixth Circuit explained that "Because 'actual damages' represent an *alternative* form of relief and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim." *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705–06 (6th Cir. 2009) (emphasis in original), *cert. denied* 130 S. Ct. 2379 (2010). The Honorable Judge Hood recently found the same with respect to the Electronic Funds Transfer Act. *See Kinder v. United Bancorp Inc.*, No. 11-cv-10440, 2012 WL 4490874, at *2

5

(E.D. Mich. Sept. 28, 2012) (Where a statute "allow[s] consumers to recover actual damages, *if any*, [and] statutory damages . . . [t]he statute allows recovery even when there are no actual damages.") (emphasis in original); *see also In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) (finding statutory damages available even where plaintiff suffers no economic harm).[3]

Courts routinely reject arguments that actual damages are required when statutory damages are provided as an alternative, especially in consumer privacy cases. *See, e.g., Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271, 275−76 (6th Cir. 2006) (Cable Act does not require actual damages); *Beaudry*, 579 F.3d at 705−06 (Fair Credit Reporting Act does not require actual damages); *In re Carter*, 553 F.3d at 989; *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) (Video Privacy Protection Act allows "\$2,500 in 'liquidated damages,' without need to prove 'actual damages,'" on a claim of unlawful disclosure); *Kinder*, 2012 WL 4490874, at *2 (Electronic Funds Transfer Act does not require actual damages); *Graczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (Driver's Privacy Protection Act does not require actual damages); *Gutierrez v. Barclays Group*, No. 10-cv-1012 DMS (BGS), 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011) (Telephone Consumer Protection Act does not require actual damages).

Not surprisingly, the only court to have interpreted the VRPA rejected Bauer's actual damages requirement. *See Deacon v. Pandora Media, Inc.*, No. 11-cv-04674 SBA, 2012 WL 4497796, at *4 (N.D. Cal. Sept. 28, 2012) (finding that the VRPA "does not explicitly impose an

---

[3]     *Compare* M.C.L. § 445.1715 (VRPA) ("[T]he customer identified in a record or information that is disclosed in violation of this act . . . may recover . . . [a]ctual damages, including damages for emotional distress, or \$5,000, whichever is greater") *and* 15 U.S.C. § 1681n(a)(1)(A) (at issue in *Beaudry*) (willful violator of act is liable to consumer for "any actual damages sustained by the consumer . . . or damages of not less than \$100 and not more than \$1,000"); 15 U.S.C. § 1693m(a) (at issue in *Kinder*) (violators of statute liable to consumer for the sum of "any actual damage sustained by the consumer as a result [of the violation]" and "in the case of an individual action, an amount not less than \$100 nor greater than \$1,000.").

6

actual injury requirement."). Bauer attacks the *Deacon* court's reasoning in a footnote, claiming it is dicta that conflicts with the rulings of courts interpreting other privacy statutes. (Def. Br. at 9 n.5.) This is incorrect. True, the Supreme Court in *Doe v. Chao*, 540 U.S. 614 (2004), found that the Privacy Act of 1974 required a showing of actual damages, but that statute provides for "actual damages sustained by the individual . . . but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619. As the Court held, such language does not present statutory damages as an alternative since "a person entitled to recovery" is limited by those who suffered "actual damages." *Id.* at 620–21. The VRPA contains no such requirement.

Bauer's second case, *Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009), offers it no help either. The *Van Alstyne* court found that statutory damages under the Stored Communications Act were only available upon a showing of actual damages because the act's language mirrored that in *Chao. Id.* at 205. But the Fourth Circuit went on to explain that if Congress wanted to provide free-standing statutory damages, it "could have written a simpler, unambiguous statute," stating that the defendant "shall be liable to the individual in an amount equal to the sum of (A) whichever is greater: actual damages sustained by the individual as a result of the refusal or failure, or $1,000"—language basically identical to the VRPA. *See Id.* at 205 (distinguishing the Wiretap Act and Driver's Privacy Protection Act on such grounds.)

The only case from any Michigan Court that Bauer is able to cite—*Vinton v. CG's Prep Kitchen & Cafe*, No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. Mar. 2, 2010)—is both unreported and off-point. The statute involved in that case, the Michigan Consumer Protection Act, specifically limits recovery to a person "who suffers a loss as a result of violation of this Act." M.C.L. § 445.911(2).[4] Though Bauer acknowledges this fact, it fails to appreciate its

---

[4] Other statutes demonstrate the Michigan legislature's ability to impose an actual damages

import. Put simply, the VRPA contains no comparable loss requirement, and the *Pandora* court's

decision was correct. *See Deacon*, 2012 WL 4497796, at *4.

Accordingly, because the VRPA does not require a showing of actual damages, Bauer's first

attack on Halaburda's statutory standing falls flat.

### B. Bauer's Article III Standing Arguments Seriously Misunderstand The Case And Controversy.

Bauer's claim that Article III also requires money damages badly misunderstands

constitutional standing, ignores relevant precedent, and impermissibly writes Halaburda's

allegations of economic harm out of the Complaint. (*See* Def. Br. at 9–11.)

To start, "[t]he minimal standing requirements of Article III" require a plaintiff to show:

> (1) . . . an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012). Standing "may

exist solely by virtue of statutes creating legal rights, *the invasion of which creates standing*."

*In re Carter*, 553 F.3d at 989 (emphasis in original) (internal quotation omitted); *see also*

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (violation of a statutory right causes

"a legal injury" sufficient to confer standing).[5] In cases involving statutory rights, "the standing

---

requirement when it wants to. *See* M.C.L. § 445.257(1) (limiting claim to a person "who suffers injury, loss, or damage"); M.C.L. § 445.964(2) (limiting claim to "[a] person who suffers loss as a result of a violation"); M.C.L. § 14.321(2) (same).

[5]   The injury required by Article III may exist by invasion of either federal or state statutory rights. *See FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("Properly pleaded violations of state-created legal rights . . . must suffice to satisfy Article III's injury requirement. Thus, even in the absence of a specific finding that [plaintiff] was injured by the misappropriation of its confidential business information, [plaintiff] sufficiently alleged the violation of a state-law right that in itself would suffice to satisfy Article III's injury requirement."); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("We

8

question . . . is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Here, the VRPA gives customers a right to privacy of reading information, and it grants a right to relief to any "customer identified in a record or other information that is disclosed in violation of this act." *See* M.C.L. §§ 445.1712, 1715. Halaburda alleges that Bauer violated her right to privacy in the information she reads, (*see* Compl. ¶¶ 5, 67), and she has brought suit to exercise her right to relief. (*See id.* at ¶ 71; M.C.L. § 445.1715.) Thus, Halaburda has standing to sue. *See Deacon*, 2012 WL 4497796, at *4 (VRPA claims confer Art. III standing); *see also Klimas*, 465 F.3d at 276 (Violations of Cable Act's privacy provisions confer Art. III standing); *cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991) ("Although disclosure of [individuals'] personal information constitutes only a *de minimis* invasion of privacy when the identities of the [individuals] are unknown, the invasion of privacy becomes significant when the personal information is linked to particular [individuals].").

Bauer's arguments offer nothing to suggest Plaintiff's standing analysis is incorrect. Bauer contends that privacy violations without actual damages cannot confer standing because "'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" (Def. Br. at 10) (*quoting Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). But *Raines*, rather than holding that a statutory violation cannot confer standing, held that Congress cannot create a right to sue if it has not also created a substantive right to be vindicated (*i.e.*, that Congress cannot draft statutes granting individuals,

---

agree with the Seventh Circuit that state law can create interests that support standing in federal courts. If that were not so, there would not be Article III standing in most diversity cases, including run-of-the-mill contract and property disputes. State statutes constitute state law that can create such interests.").

lacking any "personal stake" in the putative litigation, rights to sue). *See Raines*, 521 U.S. at 815–16, 829–30; *see also FMC Corp.*, 852 F.2d at 996 (Ripple, J., concurring) (In standing cases, "the essential question remains the same: Do the federal or state statutory provisions upon which each cause of action is predicated afford protection *for the plaintiff* from the sort of harmed alleged in the complaint?") (emphasis added). No such problem exists here. First, the VRPA *does* grant Halaburda a substantive right to privacy, and Halaburda brings suit to vindicate it. *See In re Carter*, 553 F.3d at 988 ("Congress no doubt has the power to create legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right."); *see also* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983) ("Standing requires . . . the allegation of some particularized injury to the individual plaintiff. But legal injury is by definition no more than the violation of a legal right; and legal rights can be created by the legislature.")[6] Second, Halaburda isn't a random citizen who thinks Bauer has merely violated the Act with respect to others—it was her information that was disclosed. Thus, Halaburda sufficiently pleads Article III standing.[7]

---

[6]   Bauer's attempt to explain away *In re Carter* and *Beaudry*, (Def. Br. at 10 n.7), is meritless. The *Beaudry* court in no way predicated its standing decision on the statute's "willful violation" requirement, and instead referenced willfulness *only* in responding to concerns about creation of a strict liability regime. *Beaudry*, 579 F.3d at 708. Likewise, that the statute in *In re Carter* "does not authorize suit by members of the public at large," (Def. Br. at 10 n.7 (quoting *In re Carter*, 553 F.3d at 989)), is irrelevant. The VRPA does not authorize suit by members of the public at large either—it authorizes suit *only* by customers who, like Halaburda, have had their information disclosed in violation of the Act. *See* M.C.L. § 445.1715.

[7]   Defendant asserts that the Northern District of Illinois's recent holding in *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *6–7 (N.D. Ill. Oct. 17, 2012), that allegations of unlawful information disclosure under the VPPA do not give rise to standing, should govern here. (Def. Br. at 11.) But that decision is not binding in this Court and has not even been followed by its sister courts. Shortly after that opinion was issued, another VPPA defendant in the Northern District filed a Rule 12(b)(1) motion to dismiss for lack of standing,

### C. Halaburda Sufficiently Pleads Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing Under The VRPA.

Though Bauer focuses only on allegations that its disclosure diluted the value of Halaburda's personal information,[8] Halaburda also alleges that Bauer's disclosures forced her to overpay for her subscription, a well-recognized form of loss. *See Sierra Club v. Morton*, 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review."). A plaintiff alleges economic injury in the form of overpayment where she paid money for a good or service and did not receive the full benefit of the bargain. *See Att'y. Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 348 (Mich. Ct. App. 2011) ("[G]enerally, "'[a] person whose property is diminished by a payment of money wrongfully induced is injured in his property.'" *Reiter v. Sonotone Corp.*, [442 U.S. 330, 340] (1979), quoting *Chattanooga Foundry & Pipe Works v. City of Atlanta*, [203 U.S. 390, 396] (1906) (city induced to pay more than the value of the item received)"); *see also Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788, 801 (6th Cir. 2012) (finding that Plaintiffs alleged economic injury under the Robinson-Patman Act where "they had to pay substantially more for electricity than their competitors due to rebates provided to some of Defendants' large customers"); *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("[A] plaintiff who is a *consumer* of certain services (*i.e.*, who 'paid fees' for those services) may state [a claim requiring monetary loss] when a company, in violation of its own policies, discloses personal information about its customers to the public.")

---

relying on the *Best Buy* opinion, and the Court dismissed the motion without even requiring the plaintiffs to submit responsive briefing. *See Sterk v. Redbox Automated Retail, LLC*, No. 1:11-cv-01729, Dkt. No. 152 (N.D. Ill. Nov. 7, 2012).

[8]   Of course, allegations that a defendant disclosed valuable personal information alone can confer Article III standing. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 861 (N.D. Cal. 2011).

Here, Halaburda alleges that she paid money for her Bauer subscription, (Compl. ¶¶ 56, 68,

69), which entitled her to privacy in her subscription records. (*Id.* at ¶¶ 57, 68, 69.) So her theory

goes, Bauer's unlawful disclosures prevented Halaburda from receiving the full benefit of those

privacy protections. (*Id.* at ¶¶ 68, 69.) Thus, Halaburda alleged economic harm because she did

not receive the full benefits she paid for.[9] *See In re Acquisition of Land for Virginia Park*

*Neighborhood Development Program, Michigan A-4-2*, 283 N.W.2d 771, 773 (Mich. Ct. App.

1979); *see also Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (finding

economic harm where "disclosure of [Class's] undeniably sensitive information is not something

that [they] bargained for when they signed up and paid fees for [Defendant's] service.").[10]

The cases Bauer cites do not negate Halaburda's injury. Bauer relies on three cases—*In re*

*Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001); *In re JetBlue Airways*

---

[9]   Recent studies confirm that consumers price privacy into their purchases. (*See* Compl. ¶ 28 n.10 (citing Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Oct. 2002), *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last accessed Jan. 18, 2013) (finding that consumers place a real value on privacy in transactions)); *see also* Expert Witness Report of Dr. Serge Egelman, Ph.D., *In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD, Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) (confirming that consumers would command a discount in exchange for allowing indefinite retention and disclosure of movie rental and viewing histories)).

[10]   *See also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (finding unjust enrichment where Plaintiff alleged she did not receive paid-for data security protections); *Harzewski v. Guidant*, 489 F.3d 799, 803 (7th Cir. 2007) ("Obviously the named plaintiffs have standing to sue in the sense of being entitled to ask for an exercise of the judicial power of the United States as that term in Article III of the Constitution has been interpreted, because if they win they will obtain a tangible benefit."); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 628 (N.D. Cal. 2011) (Plaintiff overpaid and suffered actual economic damages because Defendant's "conduct caused him either to buy a product that he would not have bought, or to buy a product that was inferior, of lower quality and less value, than that offered."); *Narayan v. Indiana Bank Corp.*, No. 1:11-cv-01481-TWP, 2012 WL 3229156, at *3 (S.D. Ind. Aug. 6, 2012) (finding Article III standing where plaintiff was "forc[ed] . . . to pay more than it should have been required to pay," and "the Court [could] redress [Plaintiff's] injury by awarding money damages.").

*Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005); and *Murray v. Time, Inc.*, No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012)—to assert that Halaburda could not have suffered damages as a result of its unlawful disclosures. (Def. Br. at 6–8.) But none of those cases hold that privacy compliance has no value in a transaction. In fact, *JetBlue* recognizes that privacy can form part of the basis of the bargain. *See In re JetBlue*, 379 F. Supp. 2d at 327 (noting that plaintiffs "may well have expected that in return for providing their personal information to JetBlue and paying the purchase price, they would obtain a ticket for air travel and the promise that their personal information would be safeguarded consistent with the terms of the privacy policy.").[11] As such, Bauer's attacks on Halaburda's overpayment allegations fail.

Hence, neither the Constitution nor the VRPA requires actual damages to confer standing. Even if they did, Halaburda alleges actual economic harm by virtue of overpayment. Accordingly, there can be no serious question that she has standing to sue.

## II. HALABURDA PLEADS A VRPA CLAIM—THE ACT COVERS MAGAZINES AND BAUER CANNOT AVAIL ITSELF OF THE STATUTE'S "CUSTOMER CONSENT" DEFENSE.

Stating a claim under the VRPA requires Halaburda to plead that: (1) Bauer "was engaged in the business of selling at retail . . . books or other written materials," (2) Bauer disclosed "a record or information concerning the purchase" of the books or written materials to "any person, other than the customer," and (3) the disclosure "indicat[ed] the identity of the customer." M.C.L. § 445.1712. Bauer doesn't dispute that Halaburda satisfies the second and third elements. Instead,

---

[11]  While Bauer contends that its policies do allow for information sharing, (*see* Def. Br. 16–18), Plaintiff alleges she never consented to, or had notice of, those policies, and that the operative contract between the Parties included the privacy protections guaranteed by the VRPA. (*See* Sections II.D and III, *infra*.) Thus, as provided in *In re Facebook*, *Doe 1 v. AOL*, and *In re JetBlue*,  Halaburda here alleges that she suffered harm because she paid for goods, she was entitled to privacy as part of that purchase, and she did not receive those privacy protections.

13

Bauer argues that, even if Halaburda has standing to bring such a claim, the VRPA does not apply to the sale of magazines and that its conduct falls under the Act's "customer consent" defense. Both arguments fail even modest scrutiny.

### A.  Bauer Cannot Overcome The Fact That The VRPA's Plain Language Expressly Applies To All "Written Materials," Which Includes Magazines.

Bauer first argues that magazines are not protected by the VRPA because they are not "books or other written materials." (Def. Br. at 12–14.) According to Bauer, "it is self-evident that disclosure of someone's subscription to a magazine or newspaper – containing a variety of articles – is entirely different from disclosure that someone rented or purchased a particular video (or book) and is not the activity covered by the act." (Def. Br. at 13.) This borders on absurdity.

 "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotation omitted). Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). When the statutory language is unambiguous, "judicial inquiry is complete." *Id*. at 254.

Here, the VRPA is clear: it protects records relating to the purchase of "books or *other written materials*." M.C.L. § 445.1712 (emphasis added). Magazines plainly fall within the meaning of "other written materials," and Bauer cannot seriously contend otherwise. The legislature could've simply limited the Act to books—but it didn't. Indeed, what "other written materials" could the VRPA possibly apply to if not magazines? Like books, magazines are bound, contain pages of text, are publicly available, and can reveal to others information regarding the reader's interests, beliefs, age, gender, political affiliation, income, and more. Bauer's confusion of Merriam-Webster's separate definitions of "written" and "material" aside,

14

(Def. Br. at 13), that the term "written material" would be too challenging for one of the world's leading publishers to grasp is simply implausible.

Moreover, Bauer reads too much into its conclusion that no Michigan statute, "including the [VRPA], includes magazines in its definition of written materials." (Def. Br. at 13.) None of the statutes that Bauer cites suggest the phrase "written material" within the VRPA would *not* include magazines. *See* M.C.L. §§ 55.263–67; 256.623–27; 338.3843; 429.351; 442.351a. The phrase "written materials" is simply a catchall term that should be construed broadly to effectuate the statute's purpose. *See Gasperoni v. Metabolife, Int'l. Inc.*, No. 00-cv-71255, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000) (finding that Michigan Consumer Protection Act "should be construed liberally" to achieve its purposes).

Even less credible than its definition of "other written material" is Bauer's claim that it cannot be held liable because it is "not in the 'retail' business as that word is commonly understood." (Def. Br. at 13.) "Retail" refers to "the sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing." Black's Law Dictionary (9th ed. 2009). Similarly, Webster's defines "retail" as "the sale of commodities or goods in small quantities to ultimate consumers . . . ." *Retail*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/retail (last accessed Dec. 24, 2012). Halaburda alleges that Bauer sells subscriptions directly to consumers, (*see* Compl. ¶ 56), therefore she sufficiently pleads that Bauer sells magazines "at retail."

Bauer's remaining argument, that magazine publishers cannot be subject to the VRPA because they have been selling mailing lists since before the VRPA was enacted, also fails. (Def. Br. at 13.) Industry-wide misconduct is not a defense to violation of a statute. *See Newton v. Merill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 274 (3d Cir. 1998) (rejecting industry

15

practice defense); *see also Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138, 146 (1874) ("If [defendants] have been in the habit of disregarding the law, this does not relieve them from the consequences nor establish a different law.").

### B. Bauer's Cherry-Picking Of The Legislative History Ignores That Michigan's Legislature Provided Greater Privacy Protections Than The Federal VPPA.

Thwarted by the plain language, Bauer turns to the legislative history, arguing that the Act's history bears repeated references to books, but less often to "other written materials." Bauer's argument fails for three reasons.

To start, the Court should disregard Bauer's legislative history discussion entirely because the VRPA is straightforward and unambiguous.[12] The Court "may resort to a review of congressional intent or legislative history only when the language of the statute is not clear." *Mitchell v. Chapman*, 343 F.3d 811, 826 (6th Cir. 2003). As explained above, there can be no real dispute that "books or other written materials" includes magazines, so there is no need to consult the legislative history.

Second, the VRPA's legislative history provides no help to Bauer and, if anything, supports a reading that would include the protection of magazines. For example, the VRPA "create[s] a new public act to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." (Ex. A.) By using "written materials" without books there, the legislature demonstrated its intent to cover more than just books.

Third, Bauer's own arguments about the federal VPPA confirm that magazines are considered "other written materials." Bauer asserts that because the federal VPPA does not

---

[12]   Likewise, because the VRPA is unambiguous, the Court may disregard Defendant's "rule of lenity" argument, (Def. Br. at 16). *See Reno v. Koray*, 515 U.S. 50, 65 (1995) (Rule of lenity "applies only if, after seizing everything from which aid can be derived . . . [the Court] can make no more than a guess as to what [the legislature] intended.") (internal quotation marks and citations omitted).

protect magazines, neither can the VRPA, because it supposedly followed the federal act. (Def. Br. at 15.) But that rewrites history. Rather than merely parrot the federal statute, the VRPA extends to "books and other written materials, [and] sound recordings." M.C.L. § 445.1712. The VRPA's plain text thus evinces an intent to protect *more* content than the federal VPPA—which protects only information regarding video purchase and rental materials, *see* 18 U.S.C. § 2710— giving no reason to read "other written materials" as excluding magazines.

In the end, any doubt about whether "other written materials" covers magazines should be resolved consistent with the Act's purpose of protecting personal privacy. When faced with ambiguity (and there isn't any here), the Court "look[s] to the purpose of the statute for its proper interpretation." *Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 995 (6th Cir. 1999). The VRPA's purpose is simple: "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." (Ex. A.) The Court should therefore reject Bauer's assertions and find that magazines are "other written materials" under the VRPA.

### C.  Bauer's Supposed First Amendment Argument Is Baseless.

Bauer also purports to bring a constitutional challenge—that applying the VRPA to magazines would raise First Amendment issues. (Def. Br. at 15–16.) This is meritless.

First, Bauer provides no support for its claim that "[i]f the Court were to find the Michigan statute applies to the sharing of facts concerning magazine subscriptions, that reading would raise difficult First Amendment issues." (Def. Br. at 15.) Bauer fails to identify any First Amendment issues unique to applying the VRPA to magazine sales as opposed to the book and video sales and rentals Bauer concedes are within the Act's scope.

Second, Bauer failed to state to the right of the case caption that it was making a "Claim of

17

Unconstitutionality." For this reason alone, the Court may disregard Bauer's unconstitutionality assertion entirely. *See* Civ. L.R. 9.1(b). And even if considered, Bauer's argument still fails.

Bauer contends that the Supreme Court's decision in *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011), invalidates privacy statutes like the VRPA. (Def. Br. at 15–16.) In *Sorrell*, the Supreme Court struck down a Vermont statute prohibiting the disclosure and use of certain pharmacy records. 131 S. Ct. at 2659. The Vermont statute was unconstitutional because it sought not to effectively protect personal privacy but to insulate physicians from the perceived dangers of pharmaceutical advertising. *Id.* at 2663–65. The Court noted that if Vermont had used a "more coherent policy" to address a "privacy interest by allowing the information's sale or disclosure in only a few narrow and well-justified circumstances," rather than "allow[ing] the information to be studied and used by all but a narrow class of disfavored speakers," it "would present quite a different case." *Id.* at 2668.

The VRPA succeeds where the Vermont act failed. The VRPA advances an "asserted privacy interest" in protecting consumers' magazine preferences and reading histories "by allowing the information's sale or disclosure in only a few narrow and well-justified circumstances," such as with the consumer's consent, pursuant to a court order, as necessary for debt collection, exclusively for direct marketing purposes, and pursuant to a search warrant. *See id*. at 2668; M.C.L. § 445.1713; *see also Small v. Ramsey*, 280 F.R.D. 264, 282 (W.D. Va. 2012) (distinguishing *Sorrell* where plaintiff sought "to protect his personal health care records from dissemination to everyone not entitled to them"); *King v. Gen. Information Servs., Inc.*, No. 10-6850, 2012 WL 5426742, at *5 (E.D. Pa. Nov. 6, 2012) (distinguishing *Sorrell* based on statute's dual purpose of "provid[ing] businesses with the most accurate and relevant information *while simultaneously protecting the privacy rights of consumers*") (emphasis added). Thus, rather than

18

being rendered unconstitutional by *Sorrell*, the VRPA represents the type of coherent privacy statute the Supreme Court said *would not* conflict with the First Amendment.

### D.   Halaburda Alleges She Did Not Consent To Bauer's Disclosures, And Those Allegations Govern At The Pleadings Stage.

Bauer next argues that Halaburda fails to state a claim because she supposedly failed to allege facts demonstrating that she didn't purchase her magazine subscription through Bauer's website. (Def. Br. at 18.) Had she purchased the subscription through its website, Bauer's argument goes, she would have agreed to its Website Privacy Policy and thereby provided Bauer with "written permission" to disclose her Personal Reading Information. Bauer's merits-based argument is improper and ultimately fails because it: (i) misunderstands federal pleading standards by suggesting that Halaburda was required to anticipate and negate its affirmative defenses, (ii) ignores that Halaburda expressly alleges that she did not consent to or receive notice that Bauer would disclose her Personal Reading Information, (iii) improperly relies on outside documents (*i.e.*, a Website Privacy Policy that wasn't even attached to its motion), and (iv) in any event, misreads its own proffered Website Privacy Policy, which doesn't even deal with the disclosure of Personal Reading Information.

### 1.   Bauer ignores that Halaburda is not required to anticipate and disprove Bauer's affirmative defenses in her Complaint.

Bauer seeks to impose on Halaburda a pleading standard that has no basis in the Federal Rules or common sense. Bauer contends that because its websites have privacy policies, and there are no allegations that she didn't subscribe online, the Court can infer that Halaburda must have consented to Bauer's disclosure of her Personal Reading Information. The Federal Rules, however, do not allow the Court to make such an inference. *Bassett v. Nat'l. Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (All reasonable inferences are to be construed in

19

Plaintiff's favor.). To be sure, federal pleading requirements do not mandate that Plaintiff specify the precise manner of how she signed up for her subscription. "Even under *Iqbal*'s heightened pleading standard, a plaintiff is not required to anticipate and respond to every affirmative defense that a defendant may choose to assert." *Rumpz v. Am. Drilling & Testing, Inc.*, No. 09-cv-10971, 2009 WL 3464826, at *6 (E.D. Mich. Oct. 23, 2009); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005) ("[T]he burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exceptions.").

Here, Halaburda has met her burden by alleging that Bauer unlawfully disclosed her Personal Reading Information without notice or consent. (Compl. ¶¶ 4, 5, 32, 33, 42, 43, 63–65.) Thus, her Complaint provides the required "short and plain statement of the claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), and Bauer's motion fails.

### 2. Halaburda expressly alleges that she did not consent to, or receive notice of, Bauer's disclosure of her Personal Reading Information.

Bauer's consent defense fails for an additional reason: Halaburda specifically alleges that she never received notice of, or consented to, any policy or written document governing the disclosure of her Personal Reading Information. On a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (internal quotation omitted).

Thus, Halaburda's allegations that she never received notice of Bauer's Personal Reading Information disclosures, (Compl. ¶¶ 4, 32, 33, 42, 63, 64), and that she never consented to any disclosures, (*id.* at ¶ 4, 5, 32, 33, 43, 64, 65), control at this stage. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) ("We must construe the complaint in the light most favorable to

20

the plaintiff and accept all allegations as true."); *see also Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059, 1069 (N.D. Ill. 2011) *rev'd on other grounds,* 672 F.3d 535 (denying motion to dismiss because "[plaintiff] allege[d] . . . that [defendant's] policy was not identified or made available to him and thus that he was not given an opportunity, in a clear and conspicuous manner, to prohibit disclosures."); *cf. Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 926–27 (N.D. Ill. 2011) (refusing to enforce forum-selection clause where plaintiffs alleged they were not aware of the clause and defendant failed to establish that the clause was actually presented to plaintiffs).[13] Bauer cannot, on a motion to dismiss, overcome the deference given to Halaburda's plain-language allegations simply by disagreeing with them.

### 3.  Bauer's merits defense improperly relies on extrinsic documents.

Additionally, Bauer's consent defense fails because it relies on extrinsic evidence—its Website Privacy Policy—not properly before the Court. On a motion to dismiss, a court may consider documents not referred to in the complaint *only* where those documents are "*central* to the plaintiff's claim" and the defendant "submit[s] an authentic copy to the court." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (emphasis added). Bauer's attempt to introduce its Website Privacy Policy fails for two reasons.

First, Bauer's Website Privacy Policy is not "central to the plaintiff's claim." *Id.* Halaburda makes no reference to Bauer's Privacy Policy in her Complaint, nor does she attach it. Rather, Halaburda expressly alleges that she never received notice of or consented to any policy governing the disclosure of her Personal Reading Information. (*See* Compl. ¶¶ 4, 5, 32, 33, 42,

---

[13]   *See also Steele v. RadioShack Corp.*, No. 11-cv-14021, 2012 WL 368329, at *3 (E.D. Mich. Feb. 3, 2012) (denying motion for summary judgment where "[t]he complaint and Plaintiff's response to the motion suggest there are questions of fact for a jury to decide, including, but not limited to, the scope of consent given by Plaintiff to Defendant" and whether defendant complied with its own Privacy Policy).

43, 63−65.) Given that Halaburda expressly alleges that no privacy policy governed her subscription, and without any mention of the Website Privacy Policy in her Complaint, the contents of any privacy policy offered by Bauer cannot be considered *central* to her claim.

Second, even if some privacy policy was central to Halaburda's claim, Bauer has not established that the policy it proffers in support of its motion is authentic. Bauer fails to attach any declaration or affidavit containing a copy of any privacy policy; instead, it quotes selectively from what it asserts is its Website Privacy Policy. (Def. Br. at 17–18.) Without the full copy of the policy, the Court cannot determine: (1) whether the Website Privacy Policy actually exists as represented,[14] (2) whether the Website Privacy Policy was in place prior to Bauer's disclosure of Halaburda's Personal Reading Information, (3) how Halaburda supposedly would have gone about consenting to the Website Privacy Policy,[15] or (4) whether Bauer has provided its complete terms. Because Bauer's Website Privacy Policy is not central to Halaburda's claims, and because Bauer fails to provide an authenticated copy, the Court should reject Bauer's attempt to escape liability by relying on extrinsic materials.

---

[14]   The URL provided by Bauer for the womansworldmag.com privacy policy—http://winit.womansworldmag.com/pages/privacy_policy, (Def. Br. at 17)—does not direct to any privacy policy, but rather to a message stating "The page you were looking for doesn't exist. You may have mistyped the address or the page may have moved." (*See* Ex. G.)

[15]   Bauer's reliance on *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011), is not helpful to its cause either. To start, *Kirch* is not controlling authority, nor, as a summary judgment decision, is it persuasive. *Kirch* offers no support for the proposition that a print-media Defendant can defeat a suit at the pleadings stage simply by showing that its website has a privacy policy. Second, in *Kirch*, "as a condition of [defendant's service], [defendant's] subscribers were required to agree to the terms of [defendant's] Privacy Policy." 2011 WL 3651359, at *5. Here, however, Halaburda specifically alleges that she and the Class were neither required to, nor did they, agree to *any* privacy policy as part of their subscriptions, (Compl. ¶¶ 4, 5, 32, 33, 43, 64, 65).

**4.   In any event, Bauer's Website Privacy Policy does not address the disclosure of its customers' Personal Reading Information.**

Even if Bauer's Website Privacy Policy could be considered at this stage (it can't), and Halaburda had consented to it (she hasn't), Bauer's consent defense still fails because the Website Privacy Policy does not even purport to govern disclosure of Personal Reading Information. Bauer contends that because its websites have privacy policies, "anyone who subscribed to *Woman's World* agreed that Bauer, like many magazine publishers, could provide certain subscriber information to third parties for marketing purposes." (Def. Br. at 18.)

Bauer's supposed privacy policy does not save the day. First, the document on its face says it applies not to magazine subscription purchases, but rather to use of its website. (*See id.* (discussing "the Website's Privacy Policy.").) And second, Bauer's Website Privacy Policy does not so much as even discuss disclosure of its customers' magazine purchase and reading habits. (*See id.* ("Personal Information includes data such as your first and last name, residence address, telephone number, e-mail address, or any other information that would allow someone to identify you . . . . We . . . may rent, sell, or otherwise disclose your Personal Information to advertisers, sponsors, business partners and other third parties for their use.").) Because Bauer's Website Privacy Policy omits that Bauer discloses information identifying its customers as having purchased specific written materials—the very information the VRPA was enacted to protect, *see* M.C.L. § 445.1712—Bauer's conjured consent defense fails.

## III. HALABURDA SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT, WHICH SHE SPECIFICALLY ALLEGES INCORPORATED THE VRPA.

Bauer's attack on Halaburda's breach of contract claim fares no better. Bauer asserts that Halaburda has not identified the contract terms that it allegedly breached or that she incurred damages as a result. Both arguments are easily dispatched.

First, Halaburda expressly alleges that her contract for magazine purchases incorporated the applicable laws at the time and place of creation, including the VRPA. (Compl. ¶ 76.) "Without a doubt, all contracts incorporate the law as it stands at the time of contracting." *Redman Agency, Inc. v. Allstate Ins. Co.,* No. 1:89-cv-114, 1991 WL 526300, at *5 (W.D. Mich. Oct. 30, 1991) (citing *Ziegler v. Witherspoon*, 49 N.W.2d 318, 327 (Mich. 1951)); *see also Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429–30 (1934) ("This Court has said that the laws which subsist at the time and place of the making of the contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.") (internal quotation omitted).

Halaburda alleges that by disclosing her Personal Reading Information, Bauer breached the term of the subscription contract requiring VRPA compliance. (Compl. ¶ 79.) Thus, Bauer's contention that Halaburda does not identify the term breached, (*see* Def. Br. at 18 ("Halaburda fails to even plead the contract provisions Bauer allegedly breached")), ignores both the law and the plain allegations in the Complaint.

Second, Bauer's argument that Halaburda alleges no injury also goes nowhere. (Def. Br. at 19.) First, Halaburda alleges that as a result of Bauer's breach, she overpaid for her subscription and Bauer gained excess profits. (Compl. ¶¶ 80–82.) As explained in Section I.C, *supra*, Halaburda's allegations of overpayment—to say nothing of her demand for disgorgement—show economic harm sufficient to support a breach of contract claim. Accordingly, the breach of contract claim should survive.

## CONCLUSION

For the reasons stated above, Plaintiff Cindy Halaburda, individually and on behalf of all others similarly situated, respectfully requests this Honorable Court deny Bauer's Motion to

Dismiss and award such other relief as it deems necessary, reasonable, and just.

Dated: January 18, 2013       Respectfully submitted,

       **Cindy Halaburda**, individually and on behalf of a
class of similarly situated individuals,

By: /s/  Ari J. Scharg
     One of her Attorneys

Christine E. Ficks – P64625     Ari J. Scharg
BODMAN PLC     EDELSON MCGUIRE, LLC
1901 St. Antoine Street     350 N. LaSalle, Suite 1300
6th Floor at Ford Field     Chicago, Illinois 60654
Detroit, Michigan 48226     Tel: (312) 589-6370
Tel: (313) 259-7777     Fax: (312) 589-6378
cficks@bodmanlaw.com     ascharg@edelson.com

*Counsel for Plaintiff Cindy Halaburda and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on January 18, 2013, I served the above and foregoing ***Plaintiff's Opposition to Bauer Publishing Co., LP's Motion to Dismiss*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this January 18, 2013.


/s/  Ari J. Scharg