# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CINDY HALABURDA, individually and on behalf of all others similarly situated, | Case No. 2:12-cv-12831-GCS-RSW |
| Plaintiff, | Hon. George C. Steeh |
| v. | |
| BAUER PUBLISHING CO., LP, a Delaware Partnership, | |
| Defendant. | |
| DAVID GRENKE, individually and on behalf of all others similarly situated, | Case No. 2:12-cv-14221-GCS-MKM |
| Plaintiff, | Hon. George C. Steeh |
| v. | |
| HEARST COMMUNICATIONS, INC., a Delaware Corporation, | |
| Defendant. | |
| SUSAN FOX, individually and on behalf of all others similarly situated, | Case No. 2:12-cv-14390-GCS-MKM |
| Plaintiff, | Hon. George C. Steeh |
| v. | |
| TIME, INC., a Delaware Corporation, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR AMENDMENT AND CERTIFICATION OF ORDERS FOR INTERLOCUTORY APPEAL AND STAY PENDING APPEAL

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.      The Sixth Circuit's Decision in *Beaudry* Resolves the Issue at Hand, and
        Defendants' Attempts to Distinguish that Case Fail..................................2

        A.      That *Beaudry* involved a state, rather than federal, statute is irrelevant ........3

        B.      That the statute in *Beaudry* contained a state-of-mind requirement was
                irrelevant to the analysis of whether the plaintiff suffered an injury ..............4

        C.      Defendants' assertion that Plaintiffs fail to allege a concrete and
                particularized injury, like that in *Beaudry*, is wrong.........................................5

II.     Even Putting *Beaudry* Aside, the Court's Order is Consistent with Decades of
        Supreme Court and Federal Appellate Authority .........................................7

III.    Defendants' Authorities Offer Them No Assistance...................................10

CONCLUSION ...................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases</u>**

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)....................................................6

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)....................................................7

*First Am. Fin. Corp. v. Edwards*, 131 S. Ct. 3022 (2011), *cert. dismissed as improvidently granted*, 132 S. Ct. 2536 (2012) ...........................................................8

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982) ............................................8, 9, 10

*Heckler v. Matthews*, 465 U.S. 728 (1984)....................................................5

*Int'l Primate Protection League v. Administrators of Tulane Education Fund*, 500 U.S. 72 (1991)....................................................4

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ....................................................7, 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................6, 10, 11

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ....................................................6

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)....................................................2

*Raines v. Byrd*, 521 U.S. 811 (1997) ....................................................11

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ....................................................12

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982)....................................................6, 12

**<u>United States Circuit Court of Appeals Cases</u>**

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009) ....................................................7

*Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338 (11th Cir. 2011)....................................................8

*Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010)............................................................... *passim*

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ....................................................4

*Donoghue v. Bulldog Invs. Gen. P'Ship*, 696 F.3d 170 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2388 (2013)....................................................7, 11

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988)...................................................3, 4

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) ........7

*Graczyk v. West Pub. Co.*, 660 F.3d 275 (7th Cir. 2011) ...........................................8

*In re Carter*, 553 F.3d 979 (6th Cir. 2009) ...........................................................5, 7

*In re City of Memphis*, 293 F.3d 345 (6th Cir. 2002) ...............................................2

*In re Miedzianowski*, No. 13-101, 2013 WL 4436545 (6th Cir. Aug. 20, 2013)........................2, 3

*Jewel v. Nat. Sec. Agency*, 673 F.3d 902 (9th Cir. 2011) ...........................................8

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) ...................................................7

*Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271 (6th Cir. 2006)....................................8

*Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289 (7th Cir. 2000) .............................. *passim*

*Oti Kaga, Inc. v. S. Dakota Hous. Dev. Auth.*, 342 F.3d 871 (8th Cir. 2003)............................5, 8

*Research Improves Env't Inc. v. Costle*, 650 F.2d 1312 (5th Cir. 1981)...............................7

*Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208 (10th Cir. 2006)............................8

*Shays v. Fed. Election Comm'n*, 414 F.3d 76 (D.C. Cir. 2005).......................................8

*Village of Bellwood v. Dwivedi*, 895 F.3d 1521 (7th Cir. 1990)......................................9

*WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) .................................5, 8

**United States District Court Cases**

*Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111 (C.D. Cal. 2012) ....................................8, 9

*Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) .......12

*Sterk v. Redbox Automated Retail, LLC*, No. 11-cv-1729,
    2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) ................................................13

**United States Statutes**

28 U.S.C. § 1292(b) ................................................................. *passim*

Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–25 ................................................8

**State Statutes**

Video Rental Privacy Act, M.C.L. §§ 445.1711–15................................................1, 7

**Secondary Sources**

Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881 (1983) ........................................................4

## **STATEMENT OF ISSUES PRESENTED**

Whether any substantial ground for difference of opinion exists as to whether Plaintiffs, who allege that Defendants violated their statutorily conferred legal rights, have standing to sue under Article III of the U.S. Constitution.

**Plaintiffs' answer**: No.

## <u>CONTROLLING AND MOST IMPORTANT AUTHORITY</u>

Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711–15

28 U.S.C. § 1292

*In re City of Memphis*, 293 F.3d 345 (6th Cir. 2002)

*Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009)

*In re Miedzianowski*, No. 13-101, 2013 WL 44336545 (6th Cir. Aug. 20, 2013)

**I.      The Sixth Circuit's Decision in *Beaudry* Resolves the Issue at Hand, and Defendants' Attempt to Distinguish that Case Fail.**

       **A.      That *Beaudry* involved a state, rather than federal, statute is irrelevant.**

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988)

       **B.      That the statute in *Beaudry* contained a state-of-mind requirement is irrelevant to the analysis of whether the plaintiff suffered an injury.**

*Heckler v. Matthews*, 465 U.S. 728 (1984)

*In re Carter*, 553 F.3d 979 (6th Cir. 2009)

       **C.      Defendants assertion that Plaintiffs fail to allege a concrete and particularized injury, like that in *Beaudry*, is wrong.**

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982)

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007)

**II.     Even Putting *Beaudry* Aside, the Court's Order is Consistent with Decades of Supreme Court and Federal Appellate Authority.**

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)

*In re Carter*, 553 F.3d 979 (6th Cir. 2009)

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006)

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)

**III.    Defendants' Authorities Offer Them No Assistance.**

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

## INTRODUCTION

This case challenges Defendants Bauer Publishing Co., LP's, Hearst Communications, Inc.'s, and Time Inc.'s practice of systematically disclosing and selling their Michigan customers' detailed magazine subscription records in violation of the Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ("VRPA"). Defendants now seek interlocutory appeal of the Court's August 6, 2013 Order (the "Order") denying their bid to dismiss the VRPA claims. According to Defendants, immediate review of the Order is warranted because the Court's finding—that Plaintiffs satisfied Article III's requirements by alleging violations of the privacy rights conferred on them by the VRPA—is erroneous and inconsistent with Supreme Court precedent. Defendants are incorrect.

Interlocutory review requires the existence of a substantial ground for a difference of opinion on a controlling question of law. Here, the controlling question of law—whether invasion of a statutory right confers Article III standing—is subject to *no* difference of opinion. Decades of federal precedent (including both Supreme Court and Sixth Circuit cases) clearly establish the unanimous rule that legislatures can grant their citizens substantive rights (here, a privacy right), the invasion of which constitutes a concrete and particularized injury sufficient to confer Article III standing. Defendants' request for interlocutory review of a standing question that has already been authoritatively answered should be denied.

For these reasons, as discussed further below, this Court should deny Defendants' § 1292(b) Motion for Certification.

## ARGUMENT

28 U.S.C. § 1292(b) allows appeal of an interlocutory order only when the "order involves a controlling question of law as to which there is a substantial ground for difference of

opinion." The Sixth Circuit has cautioned that "review under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

Here, whether the invasion of a legal right conferred by statute creates an injury-in-fact sufficient to establish Article III standing is not subject to any difference of opinion, and thus, try as they might, (*see* Def. Br. at 1–2), Defendants' arguments in this regard fail for three reasons. First, as this Court noted, the Sixth Circuit has already resolved the question of whether the invasion of a statutory right establishes Article III standing in *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010). This alone means that no difference of opinion exists for purposes of interlocutory appeal. *In re Miedzianowski*, No. 13-101, 2013 WL 4436545, at *1–2 (6th Cir. Aug. 20, 2013). Second, *Beaudry* is consistent with decades of Supreme Court and other federal appellate precedent on the question. Third, none of the cases relied on by Defendants provide any ground (let alone the "substantial" ground required by § 1292(b)) to suggest that a difference of opinion on the question exists.[1]

I.     **The Sixth Circuit's Decision in *Beaudry* Resolves the Issue at Hand, and Defendants' Attempts to Distinguish that Case Fail.**

As discussed in the Court's Order, this case is controlled by *Beaudry*, 579 F.3d 702, where the Sixth Circuit held that the violation of an individual's statutory right confers Article III

---

[1]      Perhaps recognizing that controlling precedent dictates that Plaintiffs have standing to sue, Defendants attempt to skirt the requirement that they present a "substantial ground for difference of opinion" by raising a "public interest" argument, proposing a parade of horribles that supposedly would result from allowing Plaintiffs their day in Court. (Def. Br. at 6–7.) Defendants claim that all publishers share their mailing lists, and thus, that Plaintiffs' suits will drive the publishing industry out of business. But these suits are not simply about the selling of subscriber lists. Instead, they are about the fact that Defendants—*unlike* many of their industry competitors—fail to obtain their customers' consent before selling their confidential information. At its core, Defendants' public interest argument is nothing more than a claim that they should be allowed to continue to violate the law, while Michigan citizens' rights to privacy in their confidential information are destroyed. *Cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (recognizing public interest in nondisclosure of confidential information).

standing. (Order at 10–11.) Certification under § 1292(b) must be rejected where there is "governing precedent in this circuit that settles the issue at hand." *In re Miedzianowski*, 2013 WL 4436545, at *1–2 (6th Cir. Aug. 20, 2013) ("Where our circuit has answered the question, the district court is bound by our published authority. And so are we."). In such cases, litigants—like Defendants here—"cannot show the extraordinary circumstances such that an interlocutory appeal should be granted." *Id*. at 2. Thus, Defendants' bid for certification fails in the first instance because governing Sixth Circuit precedent exists that resolves the issue.

Nonetheless, Defendants assert that *Beaudry* has "no bearing here" because that case involved a federal (rather than state) statute, because the statute at issue in *Beaudry* contained a state-of-mind requirement, and because the *Beaudry* plaintiffs alleged concrete and particularized harm while Plaintiffs here supposedly did not. (Def. Br. at 11.) Defendants' attempts to distinguish *Beaudry* are irrelevant, however, because they do not address the immediate questions of whether interlocutory review is appropriate or whether a substantial ground exists for a difference of opinion on the standing issue (which is required here). In any event, as discussed below, Defendants are simply wrong in asserting that *Beaudry* does not apply.

### A.    That *Beaudry* involved a state, rather than federal, statute is irrelevant.

Defendants first argue that *Beaudry* did not address whether a state legislature, rather than Congress, may create rights, the invasion of which establishes Article III standing. (Def. Br. at 11.) Despite Defendants' doubt, however, the power to create rights is not limited to the federal government—state legislatures, too, may grant their citizens substantive rights, the invasion of which constitutes cognizable injury. *See, e.g., FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("[E]ven in the absence of a specific finding that [plaintiff] was injured by

the misappropriation of its confidential business information, [plaintiff] sufficiently alleged violation of a state-law right that in itself would suffice to satisfy Article III's injury requirement"); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("We agree with the Seventh Circuit that state law can create interests that support standing in federal courts. If that were not so, there would not be Article III standing in most diversity cases, including run-of-the-mill contract and property disputes. State statutes constitute state law that can create such interests."); *cf.* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983) ("Standing requires . . . the allegation of some particularized injury to the individual plaintiff. But legal injury is by definition no more than the violation of a legal right; and legal rights can be created by the legislature.").[2] Thus, the fact that *Beaudry* dealt with a federal—rather than a state—statute in no way renders it inapplicable here.

### B.     That the statute in *Beaudry* contained a state-of-mind requirement was irrelevant to the analysis of whether the plaintiff suffered an injury.

Next, Defendants rehash their argument from the previous round of briefing that the statute in *Beaudry* "contains a willfulness requirement and thus does not impose strict liability for punitive sanctions without regard to the defendant's state of mind or the plaintiff's loss." (Def. Br. at 11.) As an initial matter, this Court did not find such a distinction to be relevant to its previous Order, and Defendants fail to offer *any* argument that the Court erred in that regard. Further, that the statute in *Beaudry* (the Fair Credit Reporting Act ("FCRA")), imposes a state-

---

[2]     Defendants contend that *Int'l Primate Protection League v. Administrators of Tulane Education Fund*, 500 U.S. 72, 78 n.4 (1991), lends analogous support to their position. But footnote four of the *Primate Protection League* decision only deals with the question of whether a case must be remanded to state court when petitioners were found to lack Article III standing, as well as novel accompanying issues concerning pendant jurisdiction over state law claims. *Id.* *Nothing* in the decision stands for the proposition that a state legislature cannot confer a substantive legal right, the invasion of which would constitute injury-in-fact.

4

of-mind requirement simply has no bearing on the legislative power to confer rights and define

injuries. In fact, nothing in the *Beaudry* decision stands for the proposition that absent the

FCRA's state-of-mind requirement for statutory *damages*, Congress could not have conferred on

the plaintiff a substantive *right*, the invasion of which would constitute injury-in-fact. 579 F.3d at

707 (explaining that injury-in-fact standard requires that the plaintiff "be 'among the injured,' in

the sense that she alleges the defendants violated *her* statutory rights," without any reference to

the defendant's state of mind.).

Nor should the irrelevance of the state of mind requirement in *Beaudry* come as any

surprise, as precedent throughout the circuits supports the conclusion that invasion of an

individual's substantive statutory right constitutes injury-in-fact, without standing turning on any

state of mind requirement. *See, e.g., Heckler v. Matthews*, 465 U.S. 728, 738 (1984); *In re

Carter*, 553 F.3d 979 (6th Cir. 2009); *Oti Kaga, Inc. v. S. Dakota Hous. Dev. Auth.*, 342 F.3d

871, 878 (8th Cir. 2003); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir.

2010). Defendants simply present no authority making the analysis of the *plaintiff's* injury

dependent on the *defendant's* state of mind in committing the wrongful conduct.

Accordingly, Defendants' attempt to distinguish *Beaudry* on the ground that the statute

there had a willfulness requirement fails.

C.    **Defendants' assertion that Plaintiffs fail to allege a concrete and
      particularized injury like that in *Beaudry* is wrong.**

Finally, Defendants allege that *Beaudry* is distinguishable because "the *Beaudry* plaintiffs

alleged harm, i.e., the inclusion of '*false* and *negative*' information about the plaintiff in credit

reports" while "Plaintiffs here allege nothing in the way of concrete particularized loss." (Def.

Br. at 11) (quoting *Beaudry*, 579 F.3d at 708) (emphasis in *Beaudry*). Defendants' assertion that

5

Plaintiffs fail to allege a concrete and particularized injury is incorrect and demonstrates a fundamental misunderstanding of Article III jurisprudence.

Undoubtedly, a plaintiff must allege a concrete and particularized injury to demonstrate injury in fact. This test requires "more than an injury to [any] cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). Here, Plaintiffs satisfy that requirement because they allege that Defendants specifically violated the statutory rights that protect *them* in connection with the disclosure of *their* own magazine purchasing information. (*See* Order at 11 (the VRPA "was created by a state legislature to protect individual consumers from certain disclosures of their personal information.").)

An injury is "concrete" and "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (contrasting a "concrete and particularized" injury with "a grievance the [plaintiff] suffers in some indefinite way common with people generally"). The requirement of an individual, particularized injury prevents litigation of so called "generalized grievances" for legal violations allegedly affecting all citizens or consumers. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982). The concerns present in such suits—that a plaintiff does not have a sufficiently "personal stake in the outcome of the controversy so as to assure . . . concrete adverseness"—are not present when an individual plaintiff (or a class of plaintiffs) is the victim of a defendant's invasion of *their own* statutory rights. *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007).

Here, Plaintiffs have not simply alleged that Defendants violated the VRPA with respect to their friends or neighbors, or to all citizens generally. Rather, they claim that *they* were the

victims of those violations. Specifically, Plaintiffs have alleged the unlawful disclosure of their own personal reading information without notice or consent, which, in turn, violated their personal statutory privacy rights. (*See* Order at 13−14 (finding that Plaintiffs properly alleged violation of their rights under VRPA).)

Thus, Defendants' contention that "the *Beaudry* plaintiffs alleged harm, i.e., the inclusion of '*false* and *negative*' information about the plaintiff in credit reports" while "Plaintiffs here allege nothing in the way of concrete particularized loss," is just wrong. (Def. Br. at 11) (quoting *Beaudry*, 579 F.3d at 708) (emphasis in *Beaudry*). Plaintiffs have substantive rights to privacy in *their* magazine purchases. *See* M.C.L. § 445.1712. Defendants invaded those personal rights by disclosing *their* magazine purchasing histories without permission. (Order at 15.) Defendants, therefore, have violated *Plaintiffs'* legal rights, thereby causing *them* concrete and particularized injury-in-fact.

## II.   Even Putting *Beaudry* Aside, the Court's Order is Consistent with Decades of Supreme Court and Federal Appellate Authority.

Further, even if looking beyond the Sixth Circuit were necessary to determine whether a difference of opinion exists (which it isn't), the *Beaudry* case does not stand alone. The Supreme Court and appellate courts throughout the country have likewise recognized that the invasion of a plaintiff's statutory right is itself an injury-in-fact sufficient to establish Article III standing. *See*, *e.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 22 (1998); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973); *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012); *Donoghue v. Bulldog Invs. Gen. P'Ship*, 696 F.3d 170, 174 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 2388 (2013); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156−57 (4th Cir. 2000); *Research Improves Env't Inc. v. Costle*, 650 F.2d 1312, 1320 (5th Cir. 1981); *In re Carter*, 553 F.3d at 988

(6th Cir. 2009); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 290 (7th Cir. 2000); *Oti Kaga, Inc.*, 342 F.3d at 881 (8th Cir. 2003); *Jewel v. Nat. Sec. Agency*, 673 F.3d 902, 908−09 (9th Cir. 2011); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006); *Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1343−43 (11th Cir. 2011); *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 89 (D.C. Cir. 2005); *WiAV Solutions LLC*, 631 F.3d at 1264 (Fed. Cir. 2010).

Like other individual rights conferred by statute, privacy rights form the basis of injury-in-fact when violated. *See, e.g.*, *Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271, 275−76 (6th Cir. 2006) (violations of the Cable Act's privacy protections confer standing); *Graczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (finding standing to sue under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721−25, where the plaintiff alleged unlawful obtainment of personal information and "Congress ha[d] defined the relevant injury under the DPPA as the 'obtain[ment], disclos[ure], or [use],' 18 U.S.C. § 2724(a), of an individual's personal information."); *Jewel*, 673 F.3d at 908−09 (9th Cir. 2011) (finding Article III standing based on violation of federal statutory rights protecting against unlawful surveillance).

These principles have been ingrained in federal jurisprudence for decades.[3] For example, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), a housing-discrimination "tester"

---

[3]     Defendants contend that the issue of "whether a statutory violation confers Article III standing is a live issue" in the Supreme Court. (Def. Br. at 2, 8.) This contention is patently false. Judge Carter of the Central District of California said it best:

In the past few years, some defendants in consumer cases have advanced increasingly strained Article III arguments, perhaps emboldened by the United States Supreme Court's grant of certiorari on Edwards. *See First Am. Fin. Corp. v. Edwards*, ⸻ U.S. ⸻, 131 S.Ct. 3022, 180 L.Ed.2d 843 (2011). The Supreme Court has since dismissed the writ of certiorari as "improvidently granted." *First Am. Fin. Corp. v. Edwards*, ⸻ U.S. ⸻, 132 S.Ct. 2536, 183 L.Ed.2d 611 (2012). Perhaps the Supreme Court realized that reversing Edwards would create

claimed standing based on a violation of her "statutorily created right to truthful housing information." 455 U.S. at 374. On four separate occasions, the plaintiff, a racial minority, was falsely told that no apartments were available for rent at a housing complex, while a separate white tester was told (truthfully) that apartments were available. *Id.* Neither tester actually intended to rent apartments in the complex. *Id.*

Invoking the principle that the "injury required by Art. III may exist solely by virtue of statutes creating legal rights," the Court held that "Section 804(d) [of the Fair Housing Act,] which . . . establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment." *Id.* at 373 (quotations omitted). "A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing"—even if she had no "intention of buying or renting a home" and "fully expect[ed] that [s]he would receive false information." *Id.* at 373–74.

Stated differently, there was no requirement that the plaintiff allege any additional or resulting harm from the denial of truthful information—for example, that she wanted to obtain housing in the complex but was instead forced to rent a more expensive apartment—in order to sufficiently allege an injury in fact. *See Kyles*, 222 F.3d at 297 ("the essential point of *Havens*

---

an unworkable constitutional standard and that permitting a federal judge to decide whether injuries already codified by legislatures are sufficiently "injury-like" to satisfy Article III standing is tantamount to deciding which statutory rights are, in the judge's personal opinion, sufficiently important to bring suit. *See* Kevin Russell, First American Financial v. Edwards: Surprising end to a potentially important case, SCOTUSblog (Jun. 28, 2012, 5:09 PM), http://www.scotusblog.com/2012/06/first-american-financial-v-edwardssurprising-end-to-a-potentially-important-case/. Regardless, *Edwards* remains binding precedent on this Court, despite frequent suggestions to the contrary.

*Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1146 (C.D. Cal. 2012).

9

was that 'Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury.'") (quoting *Village of Bellwood v. Dwivedi*, 895 F.3d 1521, 1526–27 (7th Cir. 1990)).

Like the statute in *Havens*, the VRPA establishes an enforceable right—in this case to privacy in certain types of information. And like the plaintiff in *Havens*, Plaintiffs here allege "injury in precisely the form the statute was intended to guard against": the disclosure of statutorily protected information. *See Havens*, 455 U.S. at 373. Thus, "even if [they] incur no other injury," *Kyles*, 222 F.3d at 297, Plaintiffs allege the violation of their privacy rights, and "therefore ha[ve] standing." *Havens*, 455 U.S. at 373.

In short, it simply is not the subject of a difference of opinion that invasion of Plaintiffs' statutory rights, as here, constitutes injury-in-fact sufficient to confer Article III standing.

## III.   Defendants' Authorities Offer Them No Assistance.

Against this unanimous wave of authority, Defendants cite a grab-bag of cases to try and establish some difference of opinion on the question whether invasion of statutory rights is sufficient to establish Article III standing. Upon even a cursory examination, however, none of the cases on which Defendants rely provide any ground—let alone the "substantial" ground required by § 1292(b)—to suggest that a difference of opinion exists.

To be sure, Defendants claim to find support from *Lujan v. Defenders of Wildlife*, 504 U.S. 555. But *Lujan* dealt with an entirely different limitation on legislative power. Specifically, it rejected the respondent's claim that Congress has the power to create "public rights" that may be enforced through citizen suits by "each individual who forms part of the public." *Id.* at 578. Instead, the Supreme Court merely re-affirmed the well-established rule that a *plaintiff himself*

must suffer a concrete and particularized injury for standing purposes, which no doubt includes allegations that the plaintiff himself suffered a violation of a right conferred by statute. *See Lujan*, 504 U.S. at 561–62.

The *Lujan* Court's holding had no impact on legislatures' inherent power to define injuries, however, as the "statutory broadening of the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must *himself* have suffered an injury." *Id.* (emphasis added); *see also Donoghue*, 696 F.3d at 175 (describing *Lujan* as "stating that nothing in denying standing to citizens at large to enforce public rights contradicts [the] principle that statutes may confer rights on specified individuals, the breach of which suffices for standing."). Because the VRPA requires a prospective litigant to allege that *his or her* privacy rights were violated *by the defendant*, *Lujan* in no way bars Plaintiffs' claims, and presents no conflict with the Court's Order.

Nor do any of Defendants' other authorities reject the legislative power to define new injuries, the invasion of which constitutes a legally cognizable injury-in-fact. To start, Defendants rely on *Raines v. Byrd*, 521 811, 820 n.3 (1997), for the proposition that "congress cannot erase Article III's standing requirements by statutorily granting the right to sue a plaintiff who would not otherwise have standing." (Def. Br. at 8.) But this Court already explained that "the issue in *Raines* was altogether different than that in this case" because the "Plaintiffs in *Raines* were found to lack Article III standing for the reason that they had alleged only a 'wholly abstract and widely dispersed' institutional injury, and no individual injury." (Order at 11.) Defendants make no effort to dispute the Court's holding, and ignore that Plaintiffs *do allege* that Defendants have invaded *their* rights as individuals. (*See* Order at 15–16.) As such, *Raines*, like *Lujan* before it, offers Defendants no succor.

11

Likewise, Defendants' reliance on *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009), is misplaced. In *Summers*, "Respondents argue[d] that they ha[d] standing to bring their challenge because they ha[d] suffered procedural injury, namely that they ha[d] been denied the ability to file comments on some Forest Service actions and will continue to be so denied." *Id.* at 496. The Court found that respondents lacked standing, however, because "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Id.* Obviously, no such problem exists here, where all Plaintiffs have suffered the invasion of a *substantive* right—the right to privacy in their reading preferences and purchases.[4]

Finally, Defendants assert that "another district court reached a conclusion contrary to this Court's Orders in *Sterk v. Best Buy Stores*, No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)." (Def. Br. at 20.) Defendants' reliance on *Best Buy*, however, is wholly untenable. To start, this Court has already distinguished *Best Buy*, and Defendants offer no response to the Court's distinction. (*See* Order at 9 ("Unlike the VPPA, a close reading of the VRPA reveals that it contains absolutely no language that a claimant suffer any actual injury apart from a violation of the statute.").)

Further, *Best Buy*'s rule that a prospective litigant must suffer some injury aside from the violation of a statutory right is simply irreconcilable with controlling precedent to the contrary. *See Kyles*, 222 F.3d at 298 (finding that where a plaintiff "suffers an injury in precisely the form

---

[4]     For the same reason, Defendants' reliance on *Valley Forge*, 454 U.S. at 487 n.24, evinces a fundamental misunderstanding of Article III standing principles. There, the Court found, as in *Summers*, that Congress cannot confer a bare procedural right to sue in the absence of invasion of some substantive right. *See id.* ("Respondents do not allege that the Act creates a legal right, 'the invasion of which creates standing,' *Linda R.S. v. Richard D.*, 410 U.S. at 617 n.3, and there is no other basis for arguing that its existence alters the rules of standing otherwise applicable to this case.")  Again, Plaintiffs here suffered an invasion of *substantive*, not procedural, rights.

the statute was intended to guard against . . . [s]he therefore has standing to sue, *even if she has not been harmed apart from the statutory violation*") (emphasis added). Finally—and further proving that the *Best Buy* decision is simply inconsistent with binding precedent—*Best Buy* has not even been followed within its own district. *See Sterk v. Redbox Automated Retail, LLC*, No. 11-cv-1729, 2013 WL 4451223, at *3 (N.D. Ill. Aug. 16, 2013) (finding plaintiff had standing to sue under the VPPA without any additional harm, despite claim's ultimate failure on the merits, because "[a]lthough Congress may not lower the requirements of Article III standing, it may 'enact statutes creating legal rights, the invasion of which creates standing even though no injury would exist without the statute'") (quoting *Kyles*, 222 F.3d at 294). Ultimately, the *Sterk v. Best Buy* decision is simply wrong, but even if it were not, this Court's prior Order adequately explains why it has no bearing on this case.

In short, none of the cases relied on by Defendants in any way support finding a substantial ground for difference of opinion on the question here, a requirement for interlocutory review under § 1292(b).

## **CONCLUSION**

For the reasons stated above, Plaintiffs Cindy Halaburda, David Grenke, and Susan Fox, individually and on behalf of all others similarly situated, respectfully request that this Honorable Court deny Defendants' motion for interlocutory appeal, and award such other relief as it deems necessary, reasonable, and just.

Dated: September 12, 2013          Respectfully submitted,

**Cindy Halaburda, David Grenke, and Susan Fox,**
individually and on behalf of all others similarly situated,

By: /s/ J. Dominick Larry
One of Plaintiffs' Attorneys

Ari J. Scharg
J. Dominick Larry
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
ascharg@edelson.com
nlarry@edelson.com
*Counsel for Plaintiffs and the putative classes*

Brian C. Summerfield – P57514
BODMAN PLC
201 W. Big Beaver Road
Suite 500
Troy, Michigan 48084
Tel: (248) 743-6075
bsummerfield@bodmanlaw.com
*Counsel for Plaintiffs Cindy Halaburda, David Grenke, and the putative classes*

Henry M. Scharg – P28804
LAW OFFICE OF HENRY M. SCHARG
302 W. Main Street
Northville, Michigan 48167
Tel: (248) 596-1111
Fax: (248) 596-1578
hmsattyatlaw@aol.com
*Counsel for Plaintiff Susan Fox and the putative class*

## <u>CERTIFICATE OF SERVICE</u>

   I, J. Dominick Larry, an attorney, certify that on September 12, 2013, I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendants' Motion for Amendment and Certification of Orders for Interlocutory Appeal and Stay Pending Appeal*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this September 12, 2013.

/s/  J. Dominick Larry