# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CINDY HALABURDA, individually and on behalf of all others similarly situated, | Case No. 2:12-cv-12831-GCS-RSW |
| Plaintiff, | Hon. George C. Steeh |
| v. | |
| BAUER PUBLISHING CO., LP, a Delaware Partnership, | |
| Defendant. | |

## PLAINTIFF'S *UNOPPOSED* MOTION FOR AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Brian C. Summerfield—P57514
bsummerfield@bodmanllp.com
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Tel: 313.259.7777
Fax: 313.393.7579

*Proposed Class Counsel*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.   MICHIGAN'S VIDEO RENTAL PRIVACY ACT ................................. 3

III.   NATURE OF THE LITIGATION................................................ 3

    A.   Plaintiff's Allegations ................................................ 3

    B.   Litigation, Negotiation, and Settlement............................ 4

IV.   TERMS OF THE SETTLEMENT .............................................. 5

    A.   Settlement Class.................................................... 6

    B.   Monetary Relief .................................................... 6

    C.   Prospective Relief .................................................. 7

    D.   Release ............................................................. 7

    E.   Notice and Settlement Administrative Expenses........................ 7

    F.   Incentive Award ................................................... 8

    G.   Attorneys' Fees and Expenses ...................................... 8

V.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION
    FOR SETTLEMENT PURPOSES ................................................ 8

    A.   The Numerosity Requirement Is Satisfied ......................... 9

    B.   The Commonality Requirement Is Satisfied........................ 10

    C.   The Typicality Requirement Is Satisfied......................... 11

    D.   The Adequacy Requirement Is Satisfied ......................... 12

    E.   The Proposed Settlement Class Meets the Requirements of Rule
    23(b)(3) ........................................................... 14

        1.    ***Common Questions of Law and Fact Predominate***...............15

        2.    ***A Class Action Is the Superior Method for Adjudicating this Action***.................................16

**VI.**    **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ...............................................................18

**VII.**    **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPOVAL** ..................................................................19

**VIII.**    **THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE** .............................................................24

**IX.**    **CONCLUSION** .........................................................................26

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013).................................................................................. 8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ 8, 9, 15, 16, 17

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) .................................................................... 13

*Blanco v. CEC Entm't Concepts L.P.,*
  2008 WL 239658 (C.D. Cal. Jan. 10, 2008)............................................... 22

*Calloway v. Caraco Pharm. Labs., Ltd.,*
  287 F.R.D. 402 (E.D. Mich. 2012) ............................................................ 17

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,*
  523 U.S. 424 (2001) ................................................................................ *22*

*Curry v. SBC Communications, Inc.,*
  250 F.R.D 301 (E.D. Mich. 2008) ............................................................... 9

*Date v. Sony Electronics, Inc.,*
  2013 WL 3945981 (E.D. Mich. July 31, 2013)........................................... 12

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) .................................................................................. 24

*Fraley v. Facebook, Inc.,*
  966 F. Supp. 2d 939 (N.D. Cal. 2013)......................................................... 24

*Gilkey v. Central Clearing Co.,*
  202 F.R.D. 515 (E.D. Mich. 2001) ............................................................. 11

*Harris v. comScore, Inc.,*
  292 F.R.D. 579 (N.D. Ill. 2013) ......................................................... 14, 18

*Harris v. Marketing Corp.,*

2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................................ 20

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) .................................................... 9, 11

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) .............................................. 16

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389, Dkt. 69 (N.D. Cal. 2010) ................................. 14

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. June 2, 2011) ............................ 2, 23

*In re Netflix Privacy Litig.*,
    No. 11-cv-00379 (N.D. Cal. 2011) ............................................. 14

*In re Packaged Ice Antitrust Litig.*,
    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ........................ 19, 20

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*,
    722 F.3d 838 (6th Cir. 2013) .................................................... 9, 10

*Int'l Union v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) ....................... 13, 20

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ............................................. 21

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................... 2, 23

*Landwehl v. AOL*,
    Case No. 11-cv-1014, Dkts. 91, 133 (E.D. Va. May 24, 2013) ............... 2, 23

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ..................................... 23

*Machesney v. Lar-Bev of Howell, Inc.*,
    292 F.R.D. 412 (E.D. Mich. 2013) ............................................. 15

*McDonald v. Asset Acceptance LLC*,

    296 F.R.D. 513 (E.D. Mich. 2013) ................................................................ 9

*Merenda v. VHS of Mich., Inc.,*
    296 F.R.D. 528 (E.D. Mich. 2013) ...................................................... 10, 14

*Parker v. Time Warner Entm't Co.,*
    331 F.3d 13 (2d Cir. 2003) .......................................................................... 22

*Powers v. Hamilton County Public Defender Com'n,*
    501 F.3d 592 (6th Cir. 2007) .......................................................... 15, 16, 17

*Reese v. CNH America, LLC,* 227 F.R.D. 483 (E.D. Mich. 2005) ........................ 11

*Sheick v. Auto. Component Carrier, LLC,*
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .................................... 20, 21

*UAW v. Gen. Motors Corp.,*
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................................ 21

*UAW v. Gen. Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) ...................................................................... 19

*Vassalle v. Midland Funding LLC,*
    708 F.3d 747 (6th Cir. 2013) ...................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ........................................................................ 10, 15

*Young v. Nationwide Mut. Ins. Co.,*
    693 F.3d 532 (6th Cir. 2010) .............................................................. 16, 17

**Rules and Statutes**

Fed. R. Civ. P. 23 ........................................................................... passim

M.C.L. § 445.1711. ........................................................................ passim

**Miscellaneous Authority**

Conte & Newberg, 4 *Newberg on Class Actions* (4th Ed. 2002) ..................... 19, 25

Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the*

*BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,*
63 Rutgers L. Rev. 327 (2010) .................................................................. 22

*Manual for Complex Litigation* (4th ed. 2004) ....................................... 19

# STATEMENT OF ISSUES PRESENTED

In this putative class action asserting claims under the Michigan Video Rental Privacy Act, M.C.L. § 445.1711, *et seq.* and related claims for breach of contract and unjust enrichment, the questions presented by Plaintiff's *Unopposed* Motion for Preliminary Approval of the Parties' Class Action Settlement are:

1.      Does the proposed Settlement Class meet Rule 23's requirements for provisional certification for settlement purposes?

2.      Should Plaintiff's Counsel be appointed as Class Counsel?

3.      Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed settlement class?

4.      Does the Notice Plan satisfy Rule 23 and Due Process?

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*Fidel v. Farley,* 534 F.3d 508 (6th Cir. 2008)

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001)

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.,* No. 11-14275, 2013 WL 692856 (E.D. Mich. Feb. 26, 2013)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*Karkoukli's, Inc. v. Dohany*, 409 F.3d 279 (6th Cir. 2005)

*McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D. Mich. 2013)

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)

## I.      INTRODUCTION

This class action lawsuit against Defendant Bauer Publishing Co., LP ("Bauer") arises from the alleged disclosure of its customers' reading habits. Plaintiff Halaburda alleges that Bauer sold its customers' detailed magazine subscription records—including their full names, home addresses, and magazine subscription titles—to certain third party companies. Plaintiff claims that by disclosing such information without its customers' permission or consent, Bauer violated Michigan's Video Rental Privacy Act, M.C.L. § 445.1712 ("VRPA").

After two years of hard-fought litigation—which included full briefing and oral argument on issues of first impression, application for interlocutory appeal, both formal and informal discovery, and extensive arm's-length negotiations—the Parties have reached a settlement that, if approved by the Court, will finally resolve the claims asserted against Bauer related to its alleged violations of the VRPA. As explained below, the relief afforded under this first-ever class-wide VRPA settlement provides significant benefits to the proposed Settlement Class,[1] and exceeds the standards for granting preliminary approval.

The proposed Settlement calls for Bauer to establish a non-reversionary $775,000 Settlement Fund, from which class members who submit a short claim

---

[1] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Parties' Class Action Settlement Agreement, attached hereto as Exhibit 1.

form will receive a *pro rata* cash portion, estimated at $175. The Settlement also includes prospective relief requiring Bauer to notify its customers of its disclosure practices and provide them with a simple way to opt out of having their personal information disclosed to third parties. Ultimately, by providing significant cash payments to the class, the instant Settlement surpasses the traditional consumer privacy settlement structure, where settlement monies are generally directed solely to *cy pres*.[2] *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) cert. denied, 134 S. Ct. 8 (2013) (approving settlement providing a $9.5 million *cy pres* payment as the sole monetary relief); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving settlement providing an $8.5 million *cy pres* payment as the sole monetary relief).

Unlike the settlements cited above, the instant Settlement falls in line with the more recent trend in statutory privacy class action settlements of providing class members with a cash payment ranging from $15 to $200. *See, e.g., Landwehl v. AOL*, Case No. 11-cv-1014, Dkts. 91, 133 (E.D. Va. May 24, 2013) (approving settlement providing claimants with a cash payment of up to $100); *Dunstan v. comScore*, Case No. 11-cv-5807, Dkt. 356 (N.D. Ill. June 6, 2014) (preliminarily approving settlement providing claimants with an estimated cash payment of

---

[2]  This statement is not meant as a criticism of those settlements, which have been consistently approved by the courts that have reviewed them.

$200); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving

settlement providing claimants with a cash payment of $15).

All told, the results achieved for the Class are exceptional and well beyond

those required to preliminarily approve the Settlement. Thus, Plaintiff asks that the

Court certify the proposed class for settlement purposes, preliminarily approve the

Settlement, and approve the form and manner of notice.

## II.    MICHIGAN'S VIDEO RENTAL PRIVACY ACT

A brief summary of the VRPA will give context to the proposed Settlement.

The Michigan Legislature passed the VRPA "to preserve personal privacy with

respect to the purchase, rental, or borrowing of written materials, sound recordings,

and video recordings." M.C.L. § 445.1712. As such, the VRPA provides that:

> a person, or an employee or agent of the person, engaged in the
> business of selling at retail . . . books or other written materials . . .
> shall not disclose to any person, other than the customer, a record or
> information concerning the purchase . . . of those materials by a
> customer that indicates the identity of the customer.

*Id.* To enforce the statute, the VPRA authorizes civil actions and provides for the

recovery of statutory damages in the amount of $5,000, plus costs and reasonable

attorney fees. *See* M.C.L. § 445.1715.

## III.   NATURE OF THE LITIGATION

### A.    Plaintiff's Allegations

Plaintiff's Amended Class Action Complaint alleges that Bauer sells its

3

customers' subscription information to third parties without consent. (*See* Dkt. 9, Amended Class Action Complaint[3] ["Compl."], ¶ 29.) To increase the value of such lists, Bauer first allegedly discloses them to data mining companies so that they may be supplemented with additional personal information already contained in such companies' databases. (*Id.* at ¶¶ 2, 29–31, 44, 59, 60.) The lists are then allegedly returned to Bauer, which in turn allegedly sells them on the open market. (*Id.* at ¶¶ 29-31, 59, 60.) Plaintiff claims that these disclosures violate the VRPA. Defendant denies that it has engaged in any wrongdoing.

### B.   Litigation, Negotiation, and Settlement

This class action lawsuit was filed in this Court on July 27, 2012. (Dkt. 1.) On August 28, 2012, following an initial exchange of information between the Parties, Plaintiff Halaburda filed her Amended Class Action Complaint. (Dkt. 9; Declaration of Ari J. Scharg[4] ["Scharg Decl."] ¶ 2.) Thereafter, on December 2, 2012, Defendant moved to dismiss Plaintiff's Amended Complaint for lack of Article III standing and failure to state a claim. (Dkt. 29.) Plaintiff filed her opposition brief on January 18, 2013, and Defendant replied on February 8, 2013 (Dkts. 35, 37). And although Plaintiff served written discovery on Defendant,

---

[3]  A true and accurate copy of the Amended Class Action Complaint is attached hereto as Exhibit 2.
[4]  A true and accurate copy of the Declaration of Ari J. Scharg is attached hereto as Exhibit 3.

including interrogatories and requests to produce, the Court stayed discovery on February 20, 2013, pending resolution of the motion to dismiss. (Dkt. 44.)

On August 6, 2013, after full briefing and oral argument (at the University of Michigan Law School), the Court entered an Order denying Defendant's motion to dismiss. (Dkt. 47.) Soon thereafter, Defendant filed a motion to certify the Order for interlocutory appeal, (Dkt. 50), which, after full briefing by the Parties, was denied in part and granted in part. (Dkt. 58.)

On October 3, 2013, the Court held a scheduling conference and entered an order setting discovery deadlines. (Dkt. 57.) Following the conference, the Parties held a meet and confer conference to discuss certain scheduling and discovery issues, and discussed the possibility of a class-wide settlement. (Scharg Decl. ¶¶ 3-4.) To facilitate their discussions, the Parties filed a joint motion to extend the discovery deadlines, which the Court granted on December 3, 2013. (Dkt. 57.)

In the months that followed, the Parties exchanged numerous settlement proposals and continued to exchange informal discovery. (Scharg Decl. ¶ 5.) While they made significant progress towards a class-wide settlement, the Parties were unable to resolve certain remaining issues. (*Id.*) Finally, on April 1, 2014, after several additional rounds of arm's-length negotiations, the Parties were able to resolve all remaining issues and reach an agreement on the principal terms of a class-wide settlement. (*Id.* ¶ 6.) Over the course of the next four months, the

Parties exchanged several drafts of the agreement and related documents, and ultimately executed the Settlement that is now before the Court. (*Id.* ¶ 7.)

## IV.   TERMS OF THE SETTLEMENT

The terms of the settlement are set forth in the Settlement Agreement (Ex. 1) and are briefly summarized as follows:

**A.   Settlement Class.** The Settlement Class is defined as:

All Persons in the state of Michigan that subscribed to any Bauer Publication and subsequently had their Subscriber Information disclosed by Bauer to a third party.

(Agreement ¶ 1.30.) This proposed settlement class definition is substantively identical to the class definition contained in the Amended Complaint.

**B.   Monetary Relief**. Defendant has agreed to establish a $775,000.00 non-reversionary Settlement Fund, from which each Class Member who submits a valid claim shall be entitled to an estimated cash payment of $175, subject to a possible *pro rata* reduction or increase based upon the amount of money remaining in the Settlement Fund after payment of notice and administrative costs, attorneys' fees, and an incentive award to the Class Representative. (Agreement ¶¶ 1.32, 2.2.) However, the *pro rata* share shall not exceed the $5,000 statutory damages available under the VRPA. (*Id.* ¶ 2.2.) Further, no amount of the Settlement Fund shall revert back to Bauer—any remaining funds will, subject to Court approval, be provided to the Michigan Bar Foundation's Access to Justice Fund. (*Id.*)

6

**C.    Prospective Relief.** Defendant has agreed to implement the following policies to provide enhanced protections to its Michigan subscribers for a period of four (4) years from the date of entry of the Preliminary Approval Order:

- maintain a privacy policy that (i) informs subscribers about its policy regarding the disclosure of subscription information to third parties, (ii) contains a statement informing subscribers of their ability to opt out of such disclosures, and (iii) provides instructions on how subscribers may opt out, which shall include a mechanism by which subscribers may opt out free of charge;

- comply with compliant opt out requests within thirty (30) days of receipt;

- refrain from disclosing the subscriber information of new subscribers for thirty (30) days from their subscription date; and

- direct new Michigan subscribers who purchase their Bauer Publications subscription(s) from Defendant to view its online Privacy Policy by including a written notice to that effect on its printed, online, and electronic materials that it disseminates in connection with first-time subscription orders.

(*See* Agreement ¶ 2.1.) In lieu of the above, Defendant may opt to implement a policy not to disclose its Michigan customers' subscription information. (*Id*.)

**D.    Release**. In exchange for the relief described above, the Defendant and each of its related and affiliated entities (the "Released Parties" defined in ¶ 1.25 of the Settlement) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. (*See* Agreement ¶¶ 1.24-1.26 for full release language.)

**E.    Notice and Settlement Administrative Expenses**. The Settlement

Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. (Agreement ¶¶ 1.29, 1.32.)

      **F.**    **Incentive Award.** In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Halaburda may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund as appropriate compensation for her time and effort serving as class representative and party to the Action. Defendant will not oppose any request limited to this amount. (Agreement ¶ 8.2.)

      **G.**    **Attorneys' Fees and Expenses**. Under the Agreement, Defendant has agreed that the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court. (Agreement ¶¶ 1.32, 8.1.) Class Counsel have agreed to petition the Court for no more than one-third of the Settlement Fund, and Defendant has the right to oppose Class Counsel's request. (*Id*. ¶ 8.1.)

## V.    THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality,

8

and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a);

*see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191

(2013). Additionally, because Plaintiff seeks certification under Rule 23(b)(3), she

must also demonstrate that common questions of law or fact predominate over

individual issues and that a class action is superior to other methods of adjudicating

the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion

to determine whether certification of a class action lawsuit is appropriate. *In re*

*Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838,

850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies

all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

## A.    The Numerosity Requirement Is Satisfied

The numerosity requirement is met when joining such a large number of

plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re*

*Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no

definite numerical threshold for determining impracticability of joinder, a

"substantial amount of members will suffice." *McDonald v. Asset Acceptance LLC*,

296 F.R.D. 513, 520 (E.D. Mich. 2013) (citing *Daffin v. Ford Motor Co.*, 458 F.3d

549, 552 (6th Cir. 2006)). Only a reasonable estimate or some evidence of the

number of members in the purported class is required. *Id.*; *see also Curry v. SBC*

*Communications, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class

9

members is sufficient to satisfy the numerosity requirement).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Bauer's records, the proposed Settlement Class is comprised of approximately 23,000 Michigan residents who have purchased a Bauer magazine subscription. (Scharg Decl. ¶ 8.) Thus, there should be no question that joinder of all members of the Settlement Class would be impractical and that numerosity is satisfied.

### B.  The Commonality Requirement Is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 582-83.

In this case, the Settlement Class Members share several common questions including, though not limited to: (i) whether Bauer's alleged disclosure of their magazine subscription information violated the VRPA, (ii) whether Bauer obtained

10

their written permission prior to disclosing such information, (iii) whether the disclosures fall within the VRPA's "direct mailing" exception, and (iv) if so, whether Bauer properly notified the Settlement Class Members of their ability to opt out of any such disclosures. Regardless of the answers, there can be no dispute that these questions are common to each member of the Settlement Class, focus solely on Defendant's uniform conduct and identical customer contracts, and are capable of determination through common proof.

There are multiple questions of law and fact common to members the Settlement Class, and thus, the commonality requirement is satisfied.

### C.    The Typicality Requirement Is Satisfied

The next prerequisite, typicality, requires that class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical.  *Reese v. CNH America, LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v.*

11

*Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiff alleges that Bauer discloses its customers' subscription information to third parties without consent as a matter of policy and practice. Plaintiff alleges that such conduct violates the VRPA, which provides identical statutory damages to all members of the Settlement Class. Plaintiff's representation of the Settlement Class is therefore appropriate because they were subjected to the same alleged unlawful conduct (i.e., Bauer's allegedly unlawful disclosures) and, as a result, suffered identical damages. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See Date v. Sony Electronics, Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met.").

### D.    The Adequacy Requirement Is Satisfied

The final Rule 23(a) prerequisite is that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the

12

class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976)); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the class members. *See Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625–26).

In this case, Plaintiff Halaburda—like each and every one of the Settlement Class Members—is a Michigan customer that purchased a magazine subscription from Bauer and then allegedly had their subscription information disclosed to third parties without consent. Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the VRPA and ensuring that such allegedly unauthorized disclosures do not continue in the future. As such, Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.

Likewise, Class Counsel and the attorneys at Edelson PC have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 9.) They regularly engage in major complex

13

litigation involving consumer privacy, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the county. (*Id.* ¶ 10; *see* Firm Resume of Edelson PC, attached hereto as Exhibit 3-A); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 (N.D. Cal. 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.*, No. 10-cv-02389, Dkt. 69 (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieving adversarial certification in the largest-ever privacy class action). Further, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (Scharg Decl. ¶ 11.)

Accordingly, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class

certification must also show that the action qualifies under at least one of the

categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at

535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i)

common questions of law and fact predominate over individualized ones, and that

(ii) a class action is superior to the other available methods for the fair an efficient

adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the

proposed Settlement Class meets these requirements.

### 1.    Common Questions of Law and Fact Predominate

Rule 23(b)(3)'s predominance requirement focuses on whether the

defendant's liability is common enough to be resolved on a class basis, *Dukes,* 131

S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to

warrant adjudication by representation." *Amchem*, 251 U.S. at 623. The Rule

23(b)(3) predominance requirement is akin the commonality requirement Rule

23(a) in that both require the existence of common questions of law and fact—

however, Rule 23(b) imposes the more stringent requirement that common issues

predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.,* 292

F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where as commonality is

satisfied when there is a single factual or legal question common to the class, the

"predominance requirement is met if this common question is at the heart of the

litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619

(6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

In this case, the common factual and legal questions—whether Defendant's alleged systematic disclosure of its customers' magazine subscription information to third parties violated the VRPA, whether Defendant obtained its customers' permission to do so, whether the disclosures at issue fall within the VRPA's "direct mailing" exception, and whether Defendant notified the its customers of their ability to opt out of such disclosures—are the central focus of this action. These questions predominate over any issues affecting individual members (to the extent there even are any) and are subject to common proof (i.e., examination of Bauer's uniform disclosure policies and identical customer contracts). In other words, successful resolution of Plaintiff's claim would establish a right of recovery in favor of the other class members as well. As such, predominance is met.

**2.      A Class Action Is the Superior Method for Adjudicating this Action**

Class action is a superior means of adjudicating the controversy when it would "achieve economies of time, effort and expense and promote . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class

16

actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem,* 521 U.S. at 617. Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545*; see also Powers*, 501 F.3d at 619 ("cases alleging a single course of wrongful conduct are particularly well-suited to class certification"). And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive, and multiple individual actions would be judicially inefficient given that each must address the exact same legal and factual arguments to prove their common claims. Further, no other member of the proposed Settlement Class has brought VRPA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012). Moreover, given that

17

the action has been settled, the Court need not consider issues of manageability relating to trial.

Therefore, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## VI. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer privacy class actions. (*See* Scharg Decl. ¶ 10; *see also* Ex. 3-A.) And as a result of their zealous efforts in this case, proposed Class Counsel have secured a groundbreaking settlement that provides substantial monetary relief, as well as the prospective relief necessary to protect Defendant's customers' privacy going forward. Thus, the Court should appoint Jay Edelson, Rafey S. Balabanian, Ari J. Scharg, and J. Dominick Larry of Edelson PC as Class Counsel.

18

## VII.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the voluntary conciliation and settlement of complex class action litigation, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a particular standard for granting preliminary settlement approval. Nevertheless, courts in this district generally look to two factors in making this determination. That is, preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval. *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *8 (E.D. Mich.

Aug. 2, 2010) *see also Ford Motor Co.,* 2006 WL 1984363, at *4 ("The Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies"). The proposed Settlement in this case—which achieves both monetary payments for the Class and strong prospective relief—easily satisfies both factors.

First, there are no grounds upon which to doubt the Settlement's fairness. The proposed Settlement was reached only after two-years of hard-fought litigation, which included the exchange of formal and informal discovery, the briefing on various legal issues of first impression, application for interlocutory appeal, and extensive arm's-length negotiations. (Scharg Decl. ¶ 12.) Further, after receiving the Court's ruling on Defendant's motion to dismiss, the Parties engaged in additional exchanges of information before deciding to broach the issue of settlement.[5] At that point, the Parties—through adversarial counsel with significant experience in consumer privacy class actions—negotiated the terms of the Settlement at arm's length, over a period of 8 months. (*Id.* ¶ 13.) As such, the first factor is satisfied. *See Sheick*, 2010 WL 3070130, at *13 ("negotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and

---

[5]     *See Harris v. Marketing Corp*., 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("With the Court's prior rulings as guidance, the parties were in a position to assess the strengths and weaknesses of their arguments and evidence, and make an informed decision about the risks associated with proceeding . . . to trial.").

experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy"); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of fraud or collusion absent evidence to the contrary).

Second, the strength of Plaintiff's case compared to the settlement offer demonstrates that the proposed Settlement is fair, reasonable, and adequate, and well within the range of possible approval. Here, while Plaintiff and proposed Class Counsel are confident in Plaintiff's claims, they are cognizant of the substantial risks that would accompany further litigation. (Scharg Decl. ¶¶ 14-15.) Indeed, Bauer is represented by highly experienced attorneys from a preeminent law firm, who have made clear that absent a settlement, they would continue their vigorous defense of this case. (*Id.* ¶ 15.) And of course, without a settlement, there would be the uncertainty and expense of trial, and the risks and delay of inevitable appeals. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151 at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement").

More specifically, Plaintiff is aware that Bauer would continue to challenge the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general. (Scharg Decl. ¶ 15.) Looking beyond trial, Plaintiff is also aware that Bauer would appeal the merits of

21

any adverse decision, and that in light of the massive aggregate statutory damages

in play (i.e., $115 million), it would argue—in both the trial and appellate courts—

for a reduction of damages based on due process concerns.[6] (*Id.* ¶ 16); *see, e.g.,*

*Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("the potential

for a devastatingly large damages award, out of all reasonable proportion to the

actual harm suffered by members of the plaintiff class, may raise due process

issues.").

Given these concerns, Plaintiff and Class Counsel view the creation of the

non-reversionary $775,000 settlement fund—with its estimated $175 per claimant

payment (and potential for recovery of the full $5,000 statutory award)—as well as

the required injunctive relief, to be an extraordinary result for the Class. This is

especially true considering the "all or nothing" nature of Plaintiff's statutory

claims: if she were to lose any aspect of this case, the Class would get nothing. *See*

*Leonhardt v. ArvinMeritor, Inc*., 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008)

("The parties recognize, and the Court concurs, that continued litigation would be a

---

[6] Though Plaintiff maintains that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—she acknowledges that if she obtained a judgment on the merits and was awarded statutory damages, the $115 million damages award would likely be reduced.

high stakes "zero sum" undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable"); *see also Olden v. LaFarge Corp*., 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Further, by providing significant cash payments directly to the Settlement Class, the proposed Settlement exceeds the traditional consumer privacy class action settlement structure which provides settlement monies to *cy pres* instead of class members. *See, e.g., Lane,* 696 F.3d at 820-22 (approving $9.5 million payment to *cy pres* as the sole monetary relief); *In re Google Buzz Privacy Litig*., 2011 WL 7460099, at *3-5 (approving $8.5 million payment to *cy pres* as the sole monetary relief). The proposed Settlement falls in line with the recent trend in statutory privacy class action settlements, where claimants have begun to receive cash payments ranging between $15 and $200. *See, e.g., Fraley*, 966 F. Supp. 2d at 948 (approving settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Landwehl*, Case No. 11-cv-1014, Dkts. 91, 133 (approving settlement providing for a cash payment of

up to $100 in Electronic Communications Protection Act ["ECPA"] case with potential statutory damages of $10,000); *Dunstan*, Case No. 11-cv-5807, Dkt. 356 (preliminarily approving settlement providing for an estimated cash payment of $200 in ECPA case with potential statutory damages of $10,000). Thus, the instant Settlement's estimated cash payment of $175 to each claimant is eminently fair, reasonable, and in line with the results achieved by privacy class actions that have recently received preliminary and/or final approval from courts across the country.

For all of these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that that the Settlement is fair, reasonable, and adequate, and well within the range of possible approval. (Scharg Decl. ¶ 17.) Accordingly, the Court should grant preliminary approval.

## VIII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ.

24

P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due process. First, the Settlement Administrator will send direct notice by First Class U.S. Mail to the physical mailing address that Bauer has in its records for each Settlement Class Member. (Agreement ¶ 4.2(b); *see* Ex. 1-C.) A claim form with prepaid return postage will accompany the notice. (*Id.*) In addition, to the extent that email addresses are available for any of the Settlement Class Members, the Settlement Administrator will also send notice to those Settlement Class Members via email.[7] (*Id.*; *see* Ex. 1-B.) The email will contain a hyperlink to the online claim form. (*Id.*) Further, the Settlement Administrator will establish a Settlement Website that shall provide the "long form notice" (*see* Ex. 1-D), important Court documents, and the ability to

---

[7]     In the event that an email "bounces back" because it is unable to be delivered, the Settlement Administrator shall, if possible, correct any issues that may have caused it to "bounce back" and make a second attempt to send the email notice. (Agreement ¶ 4.2(b).)

file claim forms online.[8] (*Id*. ¶ 4.2(c).) The Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id*. ¶ 4.2(d).)

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Class, (iv) appointing Plaintiff Halaburda as Class Representative, (v) appointing Plaintiff's counsel as Class Counsel, (vi) scheduling a Final Fairness Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[9]

Dated: September 5, 2014          Respectfully submitted,

                                  **CINDY HALABURDA**, individually and
                                  on behalf of a class of similarly situated
                                  individuals

                                  By: Ari J. Scharg
                                  _____
                                       One of her attorneys

---

[8]  The Settlement Website URL is www.michiganmagazinesettlement.net.
[9]  A [Proposed] Preliminary Approval Order is attached hereto as Exhibit 4.

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Brian C. Summerfield—P57514
bsummerfield@bodmanllp.com
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, MI 48226
Tel: 313-259-7777
Fax: 313-393-7579

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on September 5, 2014, I served the above and foregoing ***Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of the Parties' Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system on this, the 5th day of September 2014.

/s/ Ari J. Scharg
Ari J. Scharg

28