# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CINDY HALABURDA, individually
and on behalf of all others similarly
situated,

              Plaintiff,

      v.

BAUER PUBLISHING CO., LP, a
Delaware Partnership,

              Defendant.

Case No. 2:12-cv-12831-GCS-RSW

Hon. George C. Steeh

---

## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Brian C. Summerfield
bsummerfield@bodmanllp.com
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Tel: 313.259.7777
Fax: 313.393.7579

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Class Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iii

STATEMENT OF ISSUES PRESENTED...................................... vi

CONTROLLING AND MOST IMPORTANT AUTHORITY............................vii

I.    INTRODUCTION.................................................................... 1

II.   BACKGROUND ...................................................................... 2

      A.    Plaintiff's Allegations under the VRPA................................... 2

      B.    The Road to the Settlement Agreement. ............................... 4

III.  TERMS OF THE SETTLEMENT AGREEMENT ....................................... 6

      A.    Class Definition.................................................................. 6

      B.    Individual Monetary Relief. ................................................ 6

      C.    Prospective Relief.............................................................. 6

            1.    Implementation of online privacy policy. ....................... 7

            2.    Prompt compliance with opt-out requests. ...................... 7

            3.    Promotion of privacy policy................................... 7

            4.    Agreement not to disclose any Michigan customer's subscriber
                  information. ............................................................ 8

            5.    Compliance with notice plan. ......................................... 8

      D.    Additional Relief. .............................................................. 9

            1.    Payment of notice and settlement administration expenses. ............ 9

            2.    Payment of incentive award, attorneys' fees, and expenses............ 9

      E.    Release.............................................................................. 9

IV.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS. ........................ 9

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL. ........................... 12

    A.    Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval. ....... 13

    B.    In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest. .......................................... 17

    C.    The Complexity, Expense, and Duration of Further Litigation Favor Final Approval. ................................................................................... 18

    D.    The Stage of the Proceedings and Amount of Discovery that has Been Completed Weigh in Favor of Final Approval. ....................... 19

    E.    The Opinion of Class Counsel Supports Final Approval. ................. 20

    F.    The Reaction of Absent Class Members Favors Final Approval. ...... 22

    G.    The Settlement is Free from Fraud and Collusion. ........................... 23

VI.   CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................... 10

## United States Court of Appeals Cases

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ...................................................... 10

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) .................................................... 13

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984) .................................................... 15

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*
  [*"UAW"*] *v. Gen. Motors Corp.*,
  497 F.3d at 630 (6th Cir. 2007) .........................................*passim*

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...................................................... 16

*Olden v. Gardner*,
  294 F. App'x 210 (6th Cir. 2008) ............................................... 22

*Parker v. Time Warner Entm't Co., L.P.*,
  331 F.3d 13 (2d Cir. 2003) ......................................................... 15

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
  636 F.3d 235 (6th Cir. 2011) ............................................... 14, 15

*Vasalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013) ...................................................... 25

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) .............................................*passim*

iii

## United States District Court Cases

*Dick v. Sprint Commc'ns Co. L.P.*,
　　3:12-CV-00443-TBR, 2014 WL 345265 (W.D. Ky. Jan. 30, 2014) ........... 10

*Gentrup v. Renovo Servs., LLC*,
　　No. 1:07CV430, 2011 WL 2532922 (S.D. Ohio June 24, 2011) ................ 13

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
　　11-14275, 2013 WL 692856 (E.D. Mich. Feb. 26, 2013) .......................... 12

*In re Cardizem CD Antitrust Litig.*,
　　218 F.R.D. 508 (E.D. Mich. 2003) .............................................. 14, 17, 18, 22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
　　No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .......... 11

*In re Google Buzz Privacy Litig.*,
　　2011 WL 7460099 (N.D. Cal. June 2, 2011)................................................. 16

*In re Netflix Privacy Litig.*, No. 11-cv-00379,
　　2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................... 16, 21

*In re Packaged Ice Antitrust Litig.*,
　　No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)......... 18

*In re Rio Hair Naturalizer Products Liab. Litig.*,
　　No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ........... 17, 19

*In re Telectronics Pacing Sys., Inc.*,
　　137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................ 18

*Int'l Union v. Ford Motor Co.*,
　　No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)........ 19, 21, 22

*IUE-CWA v. Gen. Motors Corp.*,
　　238 F.R.D. 583 (E.D. Mich. 2006) ........................................................ 14, 23

*Kogan v. AIMCO Fox Chase, L.P.*,
　　193 F.R.D. 496 (E.D. Mich. 2000) .............................................................. 23

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ............................................*passim*

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007) ...................................... 16

*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ................... 23

*Stinson v. Delta Mgmt. Assocs., Inc.*,
    302 F.R.D. 160 (S.D. Ohio 2014)............................................. 18

*UAW v. General Motors Corp.*,
    No. 05-cv-73991-DT, 2006 WL 891151
    (E.D. Mich. Mar. 31, 2006) ........................................ 10, 16, 18

## Statutory Provisions & Rules

28 U.S.C. § 1715 .............................................................. 6

Fed. R. Civ. P. 23(c) ......................................................... 10

Fed. R. Civ. P. 23(e) ......................................................... 12

M.C.L. § 445.1711, *et seq.*.................................................... 1

M.C.L. § 445.1712 ............................................................. 3

M.C.L. § 445.1715 ............................................................ 16

## Other Authorities

Federal Judicial Center, Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010) ............................... 11

House Legislative Analysis Section, H.B. No. 5331 (Mich. Jan. 20, 1989)....... 3, 17

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.     Whether this Court should find that notice to the settlement class satisfies the requirements of due process and Rule 23 when direct notice, detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or submitting a claim, was transmitted via email and postcard, reaching 94% of the class?

**Plaintiff's answer: Yes.**

2.     Whether this Court should grant final approval to the Settlement Agreement—the first ever achieved under Michigan's Video Rental Privacy Act, M.C.L. § 445 1711, *et seq.*—finding it fair, reasonable, and adequate, when it advances the privacy interests the statute was enacted to protect and delivers meaningful cash and prospective relief to magazine subscribers across the state of Michigan, ensuring that their personal choices in reading material will be kept private?

**Plaintiff's answer: Yes.**

## CONTROLLING AND MOST IMPORTANT AUTHORITY

**IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS.**

*Eisen v. Carlisle & Jacquelin*,
      417 U.S. 156 (1974)

*Fidel v. Farley*,
      534 F.3d 508 (6th Cir. 2008)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*
[*"UAW"*] *v. Gen. Motors Corp.*,
      497 F.3d 615 (6th Cir. 2007)

*Dick v. Sprint Commc'ns Co. L.P.*,
      3:12-CV-00443-TBR, 2014 WL 345265 (W.D. Ky. Jan. 30, 2014)

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
      No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)

*UAW v. General Motors Corp.*,
      No. 05-cv-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

Fed. R. Civ. P. 23(c)

Federal Judicial Center, Judges' Class Action Notice and Claims Process
      Checklist and Plain Language Guide (2010)

**V.    THE SETTLEMENT WARRANTS FINAL APPROVAL.**

*Granada Invs., Inc. v. DWG Corp.*,
      962 F.2d 1203 (6th Cir. 1992)

*UAW v. Gen. Motors Corp.*,
      497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
      720 F.2d 909 (6th Cir. 1983)

*Gentrup v. Renovo Servs., LLC*,

No. 1:07CV430, 2011 WL 2532922 (S.D. Ohio June 24, 2011)

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
     11-14275, 2013 WL 692856 (E.D. Mich. Feb. 26, 2013)

*Leonhardt v. ArvinMeritor, Inc.*,
     581 F. Supp. 2d 818 (E.D. Mich. 2008)

Fed. R. Civ. P. 23(e)

### A.    Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval.

*Lane v. Facebook, Inc.*,
     696 F.3d 811 (9th Cir. 2012)

*Parker v. Time Warner Entm't Co., LP*,
     331 F.3d 13, 22 (2d Cir. 2003)

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
     636 F.3d 235 (6th Cir. 2011)

*UAW v. Gen. Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D 508 (E.D. Mich. 2003)

*In re Google Buzz Privacy Litig.*,
     2011 WL 7460099 (N.D. Cal. June 2, 2011)

*In re Netflix Privacy Litig.*,
     No. 11-cv-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)

*IUE-CWA v. Gen. Motors Corp.*,
     238 F.R.D. 583 (E.D. Mich. 2006)

*Leonhardt v. ArvinMeritor, Inc.*,
     581 F. Supp. 2d 818 (E.D. Mich. 2008)

*Olden v. LaFarge Corp.*,
        472 F. Supp. 2d 922 (E.D. Mich. 2007)

M.C.L. § 445.1715

**B.    In Protecting Reader Privacy and Conserving Judicial Resources,
        the Settlement Serves the Public Interest.**

*Williams v. Vukovich*,
        720 F.2d 909 (6th Cir. 1983)

*In re Cardizem CD Antitrust Litig.*,
        218 F.R.D 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*,
        No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)

*In re Rio Hair Naturalizer Products Liab. Litig.*,
        No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Leonhardt v. ArvinMeritor, Inc.*,
        581 F. Supp. 2d 818 (E.D. Mich. 2008)

House Legislative Analysis Section, H.B. No. 5331 (Mich. Jan. 20, 1989)

**C.    The Complexity, Expense, and Duration of Further Litigation
        Favor Final Approval.**

*UAW v. Gen. Motors Corp.*,
        497 F.3d 615 (6th Cir. 2007)

*In re Cardizem CD Antitrust Litig.*,
        218 F.R.D 508 (E.D. Mich. 2003)

*Leonhardt v. ArvinMeritor, Inc.*,
        581 F. Supp. 2d 818 (E.D. Mich. 2008)

*In re Telectronics Pacing Sys., Inc.*,
        137 F. Supp. 2d 985 (S.D. Ohio 2001)

*Stinson v. Delta Mgmt. Assocs., Inc.*,
    302 F.R.D. 160 (S.D. Ohio 2014)

**D.**     **The Stage of the Proceedings and Amount of Discovery that has Been Completed Weigh in Favor of Final Approval.**

*In re Rio Hair Naturalizer Products Liab. Litig.*,
    No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Int'l Union v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

**E.**     **The Opinion of Class Counsel Supports Final Approval.**

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

*In re Netflix Privacy Litig.*,
    No. 11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011)

*Int'l Union v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)

**F.**     **The Reaction of Absent Class Members Favors Final Approval.**

*Olden v. Gardner*,
    294 F. App'x 210, 217 (6th Cir. 2008)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

**G.**     **The Settlement is Free from Fraud and Collusion.**

*UAW v. Gen. Motors Corp.*,

497 F.3d 615 (6th Cir. 2007)

*Vasalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006)

*Kogan v. AIMCO Fox Chase, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000)

*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)

## I.   INTRODUCTION

After successful implementation of the Court-approved notice plan, which has drawn an overwhelmingly favorable response from the class, Plaintiff Cindy Halaburda ("Plaintiff") now moves for final approval of the class action Settlement Agreement reached with Defendant Bauer Publishing Co., LP ("Defendant" or "Bauer"). The instant Settlement Agreement[1] brings to a close more than two years of contentious litigation and negotiation, including significant motion practice and eight months of settlement talks. The class-wide settlement fully and finally resolves Plaintiff's claims that Bauer violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1711, *et seq.*, when it allegedly disclosed the magazine reading habits of thousands of Michigan consumers.

The fairness, reasonableness, and adequacy of the Agreement are apparent from its terms. Defendant has agreed to create a non-reversionary $775,000 settlement fund, which (following payment of administration and notice costs, incentive award, and attorneys' fees) will be distributed to class members on a *pro rata* basis. Based on the current claims rate, which has exceeded the Parties' expectations, the Settlement will deliver immediate cash relief of approximately $74 to each class member who files a valid claim. This result far surpasses those achieved in other statutory damages class actions, which have typically resulted in

---

[1]     A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit 1.

1

the donation of funds to privacy-based charities, with no cash relief flowing to class members. The Settlement also delivers notable prospective relief, including a new privacy policy and agreement not to disclose subscribers' magazine reading preferences for the next four years.[2]

Since this Court granted preliminary approval on September 26, 2014 (dkt. 63), the Parties and the settlement administrator have successfully carried out the Court-approved notice plan, delivering direct notice to 94% of the class. A significant number of class members have already submitted claims, a process that will continue until the claims deadline closes on February 19, 2015. Not a single objection, and fewer than ten opt-outs, have been filed.

In light of the results achieved, Plaintiff respectfully requests that this Court find the Settlement fair, reasonable, and adequate, and grant final approval.

## II.   BACKGROUND

### A.   Plaintiff's Allegations under the VRPA.

This case stems from alleged violations of reader privacy under the VRPA, a Michigan statute that prohibits publishers, retailers, and other entities engaged in the business of selling written and audiovisual materials from disclosing information "concerning the purchase . . . of those materials by a customer that

---

[2]   The Parties have modified the originally proposed prospective relief based on their discussions with the Michigan Attorney General's office. These changes are detailed in full in Section III.C.3–4 below.

2

indicates the identity of the customer." M.C.L. § 445.1712. Modeled after the federal Video Privacy Protection Act, the statute recognizes the right to keep private the books and magazines an individual chooses to read. *See* House Legislative Analysis Section, H.B. No. 5331 (Mich. Jan. 20, 1989), a true and accurate copy of which is attached hereto as Exhibit 2.

Defendant is a major magazine publisher, delivering well-known titles such as *InTouch Weekly* and *Women's World* to the homes of readers nationwide. (Agreement ¶ 1.3.) Plaintiff, along with thousands of other magazine readers across the state of Michigan, is a Bauer publication subscriber. (Dkt. 9 ["Compl."] ¶¶ 39–41; Declaration of Ari J. Scharg ["Scharg Decl."] ¶ 4, a true and accurate copy of which is attached hereto as Exhibit 3.) Plaintiff alleges that Bauer discloses subscriber information—which identifies Bauer publication subscribers and the magazines they read—to data mining companies. (Compl. ¶¶ 29, 44; *see also* Agreement ¶ 1.33.) According to Plaintiff, Bauer works with the data miners to build a richly detailed profile of each subscriber—containing income, religion, age, subscriber information, and other data. (*Id.*) Plaintiff alleges that Bauer packages this information into specialty mailing lists, which it then sells to third parties. (*Id.* ¶¶ 30–31; 45.) Plaintiff further alleges that Bauer does not inform subscribers of its practices, much less seek or obtain their consent. (*Id.* ¶¶ 32; 45.)

On August 23, 2012, Plaintiff filed her amended class action complaint,

alleging that Bauer's disclosure of subscriber information violates the VRPA. (Dkt. 9.) While the VRPA applies to both written and audiovisual materials, the instant action was the first to allege a violation of reader—rather than viewer—privacy under the statute. (Scharg Decl. ¶ 5.)

### B.    The Road to the Settlement Agreement.

More than two years of hard-fought litigation and negotiation have paved the way to the instant Settlement Agreement. Defendant initially moved to dismiss the complaint, arguing that Plaintiff lacked Article III and statutory standing because she did not plead actual damages. (Dkt. 29 at 5–11.) In addition, Defendant argued that Plaintiff had not adequately pleaded lack of consent—which, it argued, could have arisen because of a web-based privacy policy. (*Id.* at 17–18.) Further, Defendant maintained that the VRPA did not apply to magazines (*id.* at 12–16), and argued that the sale of subscriber data was a longstanding practice that had "remained largely unchanged" since the passage of the statute (*id.* at 3). Defendant's motion to dismiss was fully briefed (dkts. 29, 35, 37), and the Court heard oral argument in a special session at the University of Michigan Law School (Scharg Decl. ¶ 6). Although formal discovery had begun, (*id.* ¶ 7), it was stayed pending resolution of Defendant's motion (dkt. 44).

On August 6, 2013, the Court issued its ruling on the motion, dismissing Plaintiff's breach of contract claim, but allowing her VRPA claim to proceed. (Dkt.

4

47.) The Court was the first to hold that the VRPA applied to magazines and the publishers who sold them "at retail." (*Id.* at 13–14.) The Court further held that Plaintiff had both Article III standing and statutory standing, determining that the VRPA did not require a showing of actual damages. (*Id.* at 6–12.) The Court found Defendant's consent argument to be premature. (*Id.* at 15.)

On August 22, 2013, Defendant moved for interlocutory appeal on the issue of standing. (Dkt. 50.) Defendant again questioned whether a statutory violation alone could satisfy the injury-in-fact requirement of Article III. (*Id.*) After full briefing (dkts. 50, 52, 54), the Court denied Defendant's motion (dkt. 58).

Having tackled the issue of standing, the Parties began to discuss the possibility of a class-wide settlement. (Scharg Decl. ¶ 9.) Preliminary talks gave way to rounds of arm's-length negotiations, in which the Parties discussed and debated the terms of what would become the Settlement Agreement. (*Id.*) On April 1, 2014, the Parties finally reached an agreement on the Settlement's principal terms. (*Id.*) It would take five months more of intensive settlement talks—and numerous drafts of the proposed agreement and related documents—until the Parties executed the Settlement Agreement on August 28, 2014. (*Id.* ¶ 10.) On September 26, 2014, this Court granted preliminary approval to the instant Agreement (dkt. 63), the first-ever class-wide settlement reached under the VRPA. (Scharg Decl. ¶ 2.) In response to notice delivered pursuant to the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1715, the Parties were contacted by the Michigan Attorney General. (Scharg Decl. ¶ 11.) Following their discussions, a modification to prospective relief, described below, was made. (*Id.*)

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement Agreement are briefly summarized as follows:

### A.   Class Definition.

The settlement class is comprised of "all Persons in the state of Michigan that subscribed to any Bauer Publication and subsequently had their Subscriber Information disclosed by Bauer to a third party." (Agreement ¶ 1.30.) The settlement class excludes certain persons, including the Defendant, its employees, and other related entities. (*See id.* for a complete list of exclusions.)

### B.   Individual Monetary Relief.

Defendant has created a $775,000 non-reversionary settlement fund (*id.* ¶ 1.32), which (after settlement administration expenses, incentive award, and attorneys' fees have been paid) will be distributed *pro rata* to all class members who have submitted a valid claim form (*id.* 2.2(a)). Although the Agreement estimated a cash payment of $175 (*id.*), based on the higher-than-anticipated claims rate, each claimant is now expected to receive approximately $74, which is still an excellent and meaningful recovery. (Scharg Decl. ¶ 12.)

### C.   Prospective Relief.

6

Defendant has also implemented the following four-part prospective relief, which will continue for a four-year period:

### 1.    Implementation of online privacy policy.

Defendant has put into effect an online privacy policy containing clear information regarding its practice of disclosing subscriber information to third parties. (*Id.* ¶ 2.1(a).) The privacy policy also contains a statement informing subscribers that they may opt-out of Defendant's disclosures (at no cost), as well as instructions for doing so. (*Id.*)

### 2.    Prompt compliance with opt-out requests.

Defendant has agreed to promptly comply with all opt-out requests from Michigan subscribers within 30 days of receipt. (*Id.* ¶ 2.1(b).) This timeframe is extended to 150 days in the event the opt-out request does not fully comply with the instructions set forth in the privacy policy. (*Id.*) Defendant has also agreed not to disclose any new subscriber data within the first 30 days of a subscription. (*Id.*)

### 3.    Promotion of privacy policy.

Defendant will notify new subscribers to view its privacy policy by including a written notice regarding the policy on the printed, online, and electronic materials that are disseminated to first-time subscribers. (*Id.* ¶ 2.1(c).) Although the Agreement provides that Bauer will use "commercially reasonable best efforts" to ensure that the third-party companies who sell Bauer subscriptions

provide similar notice (*id.*), the Parties have agreed to delete this clause based on their discussions with the Michigan Attorney General. (Scharg Decl. ¶ 11.) This change is reflected in the Proposed Order granting final approval, which has been submitted to the Court concurrently with this motion.

### 4. Agreement not to disclose any Michigan customer's subscriber information.

Paragraph 2.1(e)—which prohibited Bauer from disclosing subscriber information without consent—was originally presented as an alternative to the prospective relief described above. Based on their discussions with the Michigan Attorney General, the Parties have agreed to replace paragraph 2.1(e) of the Settlement Agreement with following provision "Bauer agrees not to disclose any Michigan customer's Subscriber Information for the four-year period provided for in the Class Action Settlement Agreement." (Scharg Decl. ¶ 11.) The change—also reflected in the Proposed Order—ensures that in addition to the prospective relief currently in place, no subscriber information will be disclosed in the four-year period following final approval. (*Id.*)

### 5. Compliance with notice plan.

Defendant has fully complied, and will continue to comply, with the notice plan described in paragraph 4.2 of the Agreement. (*Id.* ¶ 2.1(d).) In addition to alerting class members to the Settlement Agreement, the notice (1) notifies class members that their subscriber information may be disclosed to third parties, (2)

informs class members of their ability to opt-out of Defendant's disclosures, (3)
provides specific opt-out instructions, and (4) directs class members to the privacy
policy. (*Id.*) Notably, the claim form itself provides class members an opportunity
to opt-out of Defendant's disclosures. (*Id.*)

### D.   Additional Relief.

In addition, Defendant has also agreed to provide the following:

#### 1.   Payment of notice and settlement administration expenses.

Defendant has paid, and will continue to pay, all notice and administration
expenses out of the settlement fund.

#### 2.   Payment of incentive award, attorneys' fees, and expenses.

Defendant has agreed to pay from the settlement fund an incentive award to
Ms. Halaburda in recognition of her service as class representative, as well as
reasonable attorneys' fees. (*Id.* ¶¶ 8.1–8.2.) Both awards are subject to this Court's
approval, which Plaintiff has petitioned for separately. (Dkt. 62.)

### E.   Release.

In exchange for the relief described above, Defendant, its parent companies,
subsidiaries, associates, employees, and other related entities will be released from
any and all claims relating to the alleged disclosure of class members' subscription
information. (*See* Agreement ¶¶ 1.23, 1.24, 3 for complete release language.)

## IV.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS.

Before final approval can be granted, due process and Rule 23 require that the notice provided is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, No. 05-cv-73991-DT, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 3:12-CV-00443-TBR, 2014 WL 345265, at *5 (W.D. Ky. Jan. 30, 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.* ["*UAW*"] *v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation and internal quotations omitted).

Due process does not require that every class member receive notice. *Fidel*, 534 F.3d at 514 (citations omitted). According to the Federal Judicial Center, a

10

notice plan that reaches 70–95% of the class is reasonable. Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publication notice reached 81.8% of class).

At preliminary approval, this Court approved the Parties' proposed notice plan, finding it to be "the best notice practicable under the circumstances," and to meet the requirements of Rule 23 and due process. (Dkt. 63 at 5.) That notice plan has now been fully carried out by professional settlement administrator Epiq Systems, Inc. ("Epiq"), and it continues to meet these requirements. Pursuant to the Agreement, Defendant produced and provided to Epiq a comprehensive "Class List" of the names, last known mailing addresses, and last known email addresses of the magazine subscribers comprising the settlement class. (Agreement ¶ 4.2(a); Declaration of Shawn Schneider ["Schneider Decl.] ¶ 4, a true and accurate copy of which is attached hereto as Exhibit 4.) Using the Class List, Epiq sent direct notice via email as well as postal mail, successfully reaching 94% of the class. (Agreement ¶ 4.2(b); Schneider Decl. ¶¶ 4, 6–10.) [3] In accordance with the requirements of Rule 23 and due process, the notice contained essential

---

[3]     In addition to the direct notice campaign, Epiq also notified the appropriate state and federal officials pursuant to CAFA. (Schneider Decl. ¶ 19.)

11

information regarding the settlement, including the terms of the Agreement and individual options for opting-out, objecting, or submitting a claim. (*See* Postcard and Email Notice, true and accurate copies of which are attached to the Schneider Decl. as Exhibits A & B.) The notice also directed class members to the Settlement Website—www.michiganmagazinesettlement.net—an online resource center where class members can submit their claims via a short and simple electronic form and access and review important court filings, deadlines, and frequently asked questions. (Schneider Decl. ¶¶ 12–13; Agreement ¶ 4.2(c).)

As a result of the notice plan, 94% of the class received direct notice of the Settlement (Schneider Decl. ¶¶ 4, 10)—a rate that surpasses others approved within this circuit and endorsed by the Federal Judicial Center. Given the broad reach of the notice plan, and the comprehensive information provided, the requirements of due process and Rule 23 are met.

## V.   THE SETTLEMENT WARRANTS FINAL APPROVAL.

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 11-14275, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy

12

favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

To evaluate the fairness, reasonableness, and adequacy of a settlement agreement at final approval, the following seven factors are considered: (1) the likelihood of success on the merits, (2) the public interest, (3) the complexity, expense and duration of future litigation, (4) the opinions of class counsel, (5) the amount of discovery completed, (6) the reaction of absent class members, and (7) the risk of fraud or collusion (the "*UAW* factors"). *UAW*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Williams*, 720 F.2d at 922–23. The court need only analyze the factors that are relevant to the settlement agreement and may weigh "particular factors according to the demands of the case." *Leonhardt*, 581 F. Supp. 2d at 832 (citations and internal quotations omitted). Although the factors may be assessed individually, inquiry into one factor often overlaps with another. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011).

As described in detail below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A. Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval.

Under the first, and most important, *UAW* factor, a plaintiff's likelihood of success on the merits is weighed against the immediate benefits of settlement.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522–23 (E.D. Mich. 2003). "Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions," the fairness of a proposed settlement cannot be judged "without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 632 (citation omitted). Ultimately, the question is whether the class's interests "are better served if the litigation is resolved by the settlement." *Leonhardt*, 581 F. Supp. 2d at 832–33 (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 595 (E.D. Mich. 2006)).

Although Plaintiff and Class Counsel believe that Plaintiff's VRPA claim is strong—and that Plaintiff would prevail at summary judgment or at trial—success is not a certainty. (Scharg Decl. ¶ 13.) For instance, in its motion to dismiss, Bauer argues that consumers who subscribed online consented to the disclosure of subscription information because of a web-based privacy policy. (Dkt. 29 at 17–18.) The court found Bauer's argument "compelling" but premature in a motion to dismiss. (Dkt. 47 at 15). Plaintiff expects Defendant's consent argument to resurface should this case continue. (Scharg Decl. ¶ 13.) Plaintiff's claim has always contained certain risks, especially because as this Court recognized, the VRPA is a statute that lacks "significant litigation history." (Dkt. 47 at 5).

If this case moved forward, Defendant would doubtless oppose Plaintiff's motion for class certification, and even if Plaintiff overcame that hurdle and prevailed at trial, Defendant would likely appeal. (Scharg Decl. ¶ 13.) Plaintiff's likelihood of success on the merits is also uncertain given the amount of damages involved. (*Id.* ¶ 14.) Though Plaintiff maintains that the size of a statutory damages award alone cannot render it unconstitutional, the maximum statutory damages exceed $200 million, which could raise due process concerns. *See Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13, 22 (2d Cir. 2003).

Plaintiff's likelihood of success on the merits serves as a "gauge" against which the benefits of settlement are measured. *Poplar Creek*, 636 F.3d at 245 (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Against the backdrop of uncertainty described above, the benefits of the Settlement Agreement are clear. The Settlement delivers meaningful prospective relief, including a new privacy policy in which Bauer will provide up-front information about its disclosure practices, improved procedures for opting-out of such disclosures, and agreement not to disclose Michigan customers' subscriber information going forward. (Agreement ¶ 2.1(a)–(e); Scharg Decl. ¶ 11.)

Just as importantly, the Agreement provides immediate monetary relief, placing cash in the hands of class members who have submitted a valid claim form. (Agreement ¶ 2.2(a).) The estimated payment of $74 that each class member will

15

receive far surpasses those achieved in other statutory damages class actions under similar privacy statutes, many of which have resulted in *cy pres* relief only. *See, e.g.*, *In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 1120801, at *6–7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres* relief only in case where statutory damages of at least $2,500 per claim were available); *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* relief only in case where statutory damages of up to $10,000 per claim were available), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5 settlement providing *cy pres* relief only in case where statutory damages of up to $10,000 per claim were available). Although statutory damages under the VRPA top out at $5,000 per claim, *see* M.C.L. § 445.1715, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) (citation omitted); *see also UAW*, 2006 WL 891151, at *17 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Where, as here, the Plaintiff's likelihood of success on the merits is tempered by significant risks, the benefits of Settlement—both prospective and

16

monetary—are clear. The first *UAW* factor thus supports final approval.

### B.     In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest.

A settlement that serves the public interest is likely to be found fair, reasonable, and adequate. *In re Cardizem*, 218 F.R.D. at 530. Settlements may serve the public interest by advancing a statute's goals, or by conserving judicial resources. *See id.*; *see also In re Rio Hair Naturalizer Products Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996) (citation and quotation omitted) ("[V]oluntary resolution [of complex class action litigation] is in the public interest."). To serve the public interest, a settlement agreement that seeks to enforce a statute "must be consistent with the public objectives" the legislature sought to attain. *Williams*, 720 F.2d at 923 (citations omitted).

The settlement is clearly aligned with the objectives the Michigan legislature sought to attain when it enacted the VRPA. The VRPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legislative Analysis Section, H.B. No. 5331. The Agreement furthers the legislature's goal of protecting an individual's right to privacy in the written materials he or she chooses to read because it prevents the disclosure of magazine reading preferences. The Agreement also serves the public interest by conserving judicial resources, avoiding "notoriously difficult and unpredictable" class action litigation that can consume the courts' time and money. *See In re Cardizem*, 218

17

F.R.D. at 530 (citation and internal quotations omitted); *see also Leonhardt*, 581 F. Supp. 2d at 839. The complex and lengthy litigation that Plaintiff foresees—which will require significant motion practice and potential appeals—is discussed in the section that follows. Here, no other interests "justif[y] deviating from the strong public interest in encouraging settlement of complex class action litigation." *In re Packaged Ice Antitrust Litig*., No. 08-MDL-01952, 2011 WL 6209188, at *14–15 (E.D. Mich. Dec. 13, 2011) (citation omitted).

Because the Settlement furthers the underlying purpose of the VRPA—to protect the privacy of readers and viewers—and conserves judicial resources, the public interest is served. The first factor thus weighs in favor of final approval.

## C.   The Complexity, Expense, and Duration of Further Litigation Favor Final Approval.

The third *UAW* factor takes into account the complexity, expense, and duration of further litigation, and compares those risks to the relief afforded under the settlement. *In re Cardizem*, 218 F.R.D. at 523; *UAW*, 2006 WL 891151, at *18 (citation omitted). Final approval is favored in cases such as this one, where the parties are "likely [to] expend significant time and money litigating [a] case through class certification, dispositive motions, trial, and appeal," further chipping away at the amount—and possibility—of class recovery. *Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 164 (S.D. Ohio 2014); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (citation omitted).

18

Given the VRPA's lack of "any significant litigation history" (dkt. 47 at 5), further litigation is likely to raise challenging legal issues the Court has not yet fully resolved, such as that of consent. (*See id.* at 15.) Plaintiff would also need to overcome the hurdle of adversarial class certification and anticipates Defendant would appeal any decision in his favor. (Scharg Decl. ¶ 13.) Any one of these obstacles could strip the class of recovery, making further litigation "a high stakes 'zero sum' undertaking." *Leonhardt*, 581 F. Supp. 2d at 833.

Without the instant Settlement Agreement, the complexity, expense, and duration of further litigation will rise, while the possibility of relief slips further away from the class. The third *UAW* factor thus supports final approval.

### D.   The Stage of the Proceedings and Amount of Discovery that has Been Completed Weigh in Favor of Final Approval.

The fourth *UAW* factor examines the stage of the proceedings and the amount of discovery that has taken place. *In re Rio*, 1996 WL 780512, at *13. Although "[t]here is no precise yardstick to measure the amount of litigation that the parties should conduct before settling," the case should be developed enough to raise the court's decision "above mere conjecture." *Id.* (citation and internal quotations omitted). What is imperative is not the amount of formal discovery completed, but whether the parties and the court have sufficient information to make a reasoned decision about settlement. *Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *25 (E.D. Mich. July 13, 2006) ("That the parties

19

conducted their investigation through informal discovery . . . is not unusual or problematic, so long as they and the court have adequate information in order to evaluate the parties' relative positions.") *aff'd sub nom. UAW*, 497 F.3d 615.

Although discovery proceeded on an informal basis, sufficient motion practice and informal exchanges of information have enabled Class Counsel and defense counsel to make a reasoned decision regarding settlement. (Scharg Decl. ¶ 14.) Formal discovery had just begun, and Plaintiff had served interrogatories and requests to produce on Defendant, when this Court stayed discovery pending resolution of Defendant's motion to dismiss. (Dkt. 44.) Nevertheless, Plaintiff's investigation of Defendant's practices, full briefing on Defendant's motion to dismiss (dkts. 29, 35, 37) and petition for interlocutory appeal (dkts. 50, 52, 54), and exhaustive settlement discussions have enabled the parties to confront the issues of standing and consent, and fully evaluate the strength of Plaintiff's case (Scharg Decl. ¶ 14). In addition, during the span of this litigation—which has now lasted more than two years—the Parties have maintained an ongoing dialogue that has allowed them to explore every angle of Plaintiff's VPRA claim. (*Id.*)

Because counsel for both Parties are well equipped with the information needed to make a reasoned decision about settlement—and have conveyed this information to the Court—the fourth *UAW* factor weighs in favor of final approval.

### E.    The Opinion of Class Counsel Supports Final Approval.

The fifth *UAW* factor assesses the opinion of experienced counsel regarding the settlement. *UAW*, 497 F.3d at 631; *Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Counsel's judgment is entitled to significant weight. *Leonhardt*, 581 F. Supp. 2d at 837. However, the deference afforded to counsel's opinion depends on both the skill and experience of counsel, *Int'l Union*, 2006 WL 1984363, at *25, as well as "the amount of discovery completed and the character of the evidence uncovered," *Williams*, 720 F.2d at 923.

Here, Class Counsel are well-respected members of the plaintiffs' bar, with significant experience litigating consumer class actions of similar size, scope and complexity—particularly in the consumer privacy realm. (*See* Scharg Decl. ¶ 15; Edelson PC Firm Resume, a true and accurate of which is attached to the Scharg Decl. as Exhibit A.) *See also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (noting Edelson PC's "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]")

Further, as detailed above, the amount of discovery completed also entitles counsel's opinion to significant weight. Although formal discovery was stayed in this action less than a year after Plaintiff filed her complaint (dkt. 44), issues and critical information were brought to light through a fact-intensive investigation of Defendant's practices, briefing on Defendant's motion to dismiss (dkt. 29) and

21

petition for interlocutory appeal (dkt. 50), and informal exchanges of information that occurred throughout the pendency of this litigation. (Scharg Decl. ¶ 14.) Even after the Parties decided to explore the possibility of settlement, arm's-length negotiations took place over an eight-month period in which counsel continued to share information before reaching the instant Agreement. (*Id.* ¶ 10.) The fact that the Parties garnered information outside a formal discovery framework "is not unusual or problematic." *Int'l Union*, 2006 WL 1984363, at *25.

Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate. (Scharg Decl. ¶ 16.) In light of their experience, and the amount of information that has been exchanged in this case, their opinion in support of final approval should carry weight in this Court's analysis.

### F.     The Reaction of Absent Class Members Favors Final Approval.

The sixth *UAW* factor weighs in favor of approval where the majority of class members have elected to remain in the settlement class without objecting. *See In re Cardizem*, 218 F.R.D. at 527. A small number opt-outs and objections "are to be expected in a class action" and do not impact the settlement's fairness. *Id.* (citations omitted); *see, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that "most class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, class members' reaction to the Agreement has been overwhelmingly positive. The deadline for objections and

exclusions has now passed—not a single class member has objected to the terms of the Settlement and less than ten have elected to opt-out of the lawsuit.

Given this favorable reaction, the sixth *UAW* factor supports final approval.

## G.    The Settlement is Free from Fraud and Collusion.

The final *UAW* factor ensures that the settlement is the "product of arm's length negotiations as opposed to collusive bargaining." *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501–02 (E.D. Mich. 2000) (citation omitted); *see also Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) (explaining that arm's-length negotiations conducted "by adversarial parties and experienced counsel" are indicative of a settlement's fairness, reasonableness, and adequacy.) The absence of fraud or collusion is presumed unless there is evidence to the contrary. *IUE-CWA*, 238 F.R.D. at 598; *see also UAW*, 497 F.3d at 628.

Here, the Settlement is entitled to the presumption that it is free from fraud or collusion. Evidence of collusion may be present, for instance, when attorneys' fees are negotiated simultaneously with the principal terms of a settlement. *UAW*, 497 F.3d at 628. In the instant case, however, attorneys' fees were only discussed after the principal terms of the Agreement had been secured. (Scharg Decl. ¶ 10.) Moreover, the instant Agreement is the product of negotiations conducted at arm's length by experienced counsel representing adversarial Parties. (*Id.* ¶ 17.) As

23

detailed above, class counsel have built their practice upon complex, consumer class action litigation, and have significant experience in the area of consumer privacy. (*See* § V.E, *supra*.) Defense counsel—attorneys from large, national firms—have a wealth of experience representing leading magazine publishers including Hearst Communications and Time, Inc. (Scharg Decl. ¶ 17.)

As evidenced by Defendant's motion to dismiss (dkts. 29, 35, 37), the spirited oral argument on that motion, and Defendant's petition for interlocutory appeal on the issue of standing (dkts. 50, 52, 54), the Parties are adversaries who have doggedly pursued their own interests and positions throughout the litigation. (Scharg Decl. ¶ 17.) They have shown strong disagreement on the core issues of this case—including whether actual damages are required to establish statutory or Article III standing, whether, under Plaintiff's previously untested interpretation, the VRPA applies to magazines, and whether online subscribers who read a web-based privacy policy "consented" to Bauer's disclosures. (*Id.*) This adversarial relationship further confirms the absence of fraud or collusion. *See Leonhardt*, 581 F. Supp. 2d at 838. Naturally, when the Parties were finally ready to pursue the possibility of settlement, negotiations only occurred at arm's length, requiring eight months of intensive settlement talks and dozens of drafts before the Agreement was executed. (Scharg Decl. ¶¶ 9–10.)

Absent evidence the contrary, the Settlement is entitled to the presumption

24

that it is untainted by fraud or collusion.[4]

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter

an order (1) granting final approval to the Settlement Agreement, (2) awarding

such other and further relief as the Court deems reasonable and just.

Dated: December 22, 2014                    Respectfully submitted,

                                            **CINDY HALABURDA**, individually
                                            and on behalf of a class of similarly
                                            situated individuals,

                                            By: s/ Ari J. Scharg

                                            One of Plaintiff's attorneys

---

[4]     In addition to the seven *UAW* factors, courts may also consider whether the settlement gives "preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vasalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams*, 720 F.2d at 925 n.11) (internal quotations omitted). Plaintiff has already addressed this concern in her Motion for Attorneys' Fees, Expenses, and Incentive Award (dkt. 64 at 23–24). Plaintiff's motion detailed Ms. Halaburda's efforts on behalf of the class—which have demanded her active involvement in this case for more than two years—and noted that the immediate cash and prospective relief the Settlement provides are far from "perfunctory." (*Id.*)

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on December 22, 2014, I served the above and foregoing ***Plaintiff's Motion for Final Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system on this, the 22nd day of December, 2014.

s/ Ari J. Scharg

26