UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**CINDY HALABURDA, individually
and on behalf of all others
similarly situated,**

          Plaintiff,              **HONORABLE GEORGE CARAM STEEH**

    v.

                        **No. 12-12831**

**BAUER PUBLISHING CO., LP, a
Delaware Partnership,**

          Defendant.
_____/

**SETTLEMENT AGREEMENT**

**Monday, January 5, 2015**

-   -   -

APPEARANCES:

For the Plaintiff:           ARI J. SCHARG, ESQ.
                              Assistant U.S. Attorney


For the Defendant:           SHARON SCHNEIER, ESQ.

-   -   -


*To Obtain Certified Transcript, Contact:*
*Ronald A. DiBartolomeo, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 238*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

2

1                              **I  N  D  E  X**

2  _____ Page

3  Settlement agreement                                        4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        E  X  H  B  I  T  S
2    Identification_____Offered    Received
3
4                        N      O      N      E
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

```
1                                  Detroit, Michigan
2                                  Monday, January 5, 2015
3
4                          -    -    -
5               THE CLERK:  Calling Case Number 12-12831,
6    Cindy Halaburda versus Bauer Publishing.
7               THE COURT:  Good morning.
8               MR. SCHARG:  Good morning.
9               MS. SCHNEIER:  Good morning.
10              THE COURT:  Would you like to state your
11   appearances?
12              MR. SCHARG:  Ari Scharg on behalf of the
13   plaintiff.
14              MR. SUMMERFIELD:  Brian Summerfield on behalf
15   of the plaintiff.
16              MS. SCHNEIER:  Sharon Schneier on behalf of
17   the plaintiff.
18              MR. O'REILLY:  Arthur O'Reilly on behalf of
19   the defendant.
20              MS. SCHNEIER:  I'm sorry.  On behalf of the
21   defendant.
22              THE COURT:  All right.  Welcome.
23         This is the date and time established for the
24   Court to review a proposed final settlement and
25   professional fees, as well as an incentive award to the
```

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    plaintiff, and how would you like to proceed?

2              **MR. SCHARG:**  Any way you would like.  I could

3    present the salient points to the Court.

4              **THE COURT:**  All right.  Come on up.  Fine.

5         I'll note that this is a hearing established by

6    the Court as part of its preliminary approval of the

7    settlement, and that notice of this hearing was published

8    to the putative class members in what fashion, Mr. Scharg?

9              **MR. SCHARG:**  Notice was sent to them via

10   mail, as well as email, and also published on the

11   settlement website.

12             **THE COURT:**  All right.  And according to your

13   papers, you have heard from some individuals, but received

14   no objections, is that right?

15             **MR. SCHARG:**  We've received no objections.  I

16   believe nine individuals have opt-out, and we've had an

17   overwhelming positive response from the class members.

18             **THE COURT:**  And the Court should note that

19   there's no one here in the courtroom to voice an objection

20   apparently.

21             **MR. SCHARG:**  Correct.

22             **THE COURT:**  You may proceed.

23             **MR. SCHARG:**  As you noted, we're here on

24   plaintiff's motion for final approval of the class action

25   settlement involving violations of the Video Rental

          *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

6

1    Privacy Act.

2         The settlement that was preliminarily approved on

3    September 26, 2014, provides excellent and meaningful

4    recovery to the class.  The defendant has established a

5    $775,000 non-reversionary settlement fund.  From that

6    settlement fund will be distributed pro rata to the class

7    after claims, administration expenses, notice expenses,

8    and attorney fees have been taken out.

9         I should note for the Court the claims deadline is

10   February 19, 2015.  So we still have claims coming in.

11        With respect to the prospective --

12             **THE COURT:**  Do you have any rough idea of how

13   many claims so far?.

14             **MR. SCHARG:**  Right now there's about 9,500.

15             **THE COURT:**  Okay.  And if it ended with

16   10,000, that would represent --

17             **MR. SCHARG:**  Over 25 percent of the class.

18             **THE COURT:**  Okay.  And the pro rata

19   distribution -- let's assume your attorney fees are

20   awarded as requested and the incentive award is recorded

21   as requested, what would that roughly translate to?

22             **MR. SCHARG:**  About $74 per class member.

23             **THE COURT:**  All right.

24             **MR. SCHARG:**  With respect to the prospective

25   relief, at first we contemplated a couple of different

             *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    modifications to the defense practices.  There's going to

2    be the implementation of an online privacy policy.  They

3    will comply with opt-out requests within 30 days, and they

4    would notify new customers of their privacy policy.

5           Recently we were contacted by the Michigan

6    Attorney General Office.  We've been working with them

7    along with the defendant, and what they've requested is a

8    modification to the settlement that required the defendant

9    to stop disclosing their Michigan customer information for

10   the next four years, and the defendant has agreed to

11   comply with that.  That was always an option that was

12   there under the settlement.  They could either not

13   disclose, or they could post the privacy policy, notify

14   people of the disclosure, but they are opting not to

15   disclose, and that change will also be reflected in the

16   final approval order.

17           **THE COURT:**  I see.  How is oversight of the

18   equitable relief that is provided going to occur?

19           **MR. SCHARG:**  Well, they've -- the defendant

20   has pledged not to disclose any customer information for

21   the next four years.  They're going to stop what we allege

22   they were doing wrong.

23           **THE COURT:**  And so again, oversight would be

24   achieved just by --

25           **MR. SCHARG:**  Well, through the

     *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    representations of counsel.  I mean, we're still

2    investigating getting the entire industry.  So we don't

3    expect to see any disclosures from Bauer being made, but

4    to the extent we do, it will be a phone call to their

5    attorneys right away to advise them of what's going on,

6    but we've discussed it at length with Bauer and their

7    attorneys, and we're comfortable that they're getting out

8    of the business for the next couple years.

9              THE COURT:  Four years.

10             MR. SCHARG:  Four years.

11             THE COURT:  Okay.

12             MR. SCHARG:  At that point it will be up to

13   them whether they even want to get back into it or not.

14   We will be watching.  If they do, it will start a new

15   violation of the Video Privacy Protection Act.  That's our

16   contention.  So I don't think that they'll be disclosing

17   in the future, but we'll keep an eye out if they do.

18             THE COURT:  Okay.

19             MR. SCHARG:  I'm happy to report that the

20   notice plan was successfully implemented.  Epiq was

21   appointed class action administrator.  They sent physical

22   postcards and emails out to all the class members.  The

23   reach was 94 percent of the class.  There were a couple of

24   addresses that were no longer valid, and a couple of email

25   addresses that were no longer valid.  For those, they

        12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.

1    attempted to remail the postcards and re-email the

2    electronic notice.  Some of those did go through, but some

3    of them did not, but the 94 percent far surpasses the

4    percentage that was endorsed by the Federal Judicial

5    Center, which was 70 percent.

6         In addition to that, there's a settlement website

7    that went live 10 days after the preliminary approval.

8    That website essentially is an online resource where class

9    members can submit electronic claims.  They can review in

10   court -- important court filings.  They can review the

11   deadlines.  They can review all of the preliminary and

12   final approval papers, as well as our fee petition.  We

13   posted that to the settlement website 14 days before the

14   objection deadline, and, of course, we also sent out CAFA

15   notice within 10 days after the settlement was filed with

16   the Court.

17        So beyond that, if there are any other questions

18   that I can answer to the Court or take you through any

19   other issues with the settlement --

20             **THE COURT:**  So the statute provides for an

21   incentive award of up to $5,000.  You're asking for

22   $5,000, and you also acknowledge that there has not been

23   an extensive amount of formal discovery undertaken.  So

24   I'm wondering what do you believe would justify the

25   maximum award as an incentive award to the named

          *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    plaintiff, Ms. Halaburda?

2              **MR. SCHARG:**  Well, the named plaintiff has

3    been involved in the case for the past two and a half

4    years.  In fact, she was one of the driving forces behind

5    the case.  She brought the issue to our attention with

6    respect to this defendant.  She had been involved in the

7    issuing of discovery.  We did issue it in discovery, and

8    her involvement was critical during the negotiation of the

9    settlement.  She had ideas with respect to the prospective

10   relief, as well as what should go on the claim form,

11   including giving people to opportunity to opt-out of the

12   disclosures through the claim form.  She's been involved.

13   She's been the energy behind the case.

14        For those reasons, I would ask that the Court

15   award her the $5,000 incentive award.

16              **THE COURT:**  Okay.  All right.  Thank you.

17              **MR. SCHARG:**  Thank you very much.

18              **THE COURT:**  On behalf of defendants?

19              **MR. SCHARG:**  Would you like me to address the

20   fee petition as well?

21              **THE COURT:**  The attorney fees, sure.

22              **MR. SCHARG:**  Okay.  It's a non-reversionary

23   settlement fund, and for that reason we've asked the Court

24   to approve fees of 30 percent.  Additional percentages

25   have been approved.  Lower percentages have been approved.

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

Thirty percent seems to be in the middle.  With respect to
a crosscheck against our Lodestar, it's pretty close.
It's only a 1.1 multiplier.  I believe that our Lodestar
base was around $205,000, and I think we're asking for
$230,500.

     **THE COURT:**  Okay.

     **MR. SCHARG:**  Thank you very much.

     **THE COURT:**  On behalf of the defense?

     **MS. SCHNEIER:**  Your Honor, I don't really
have much to add unless the Court has questions for me.

     **THE COURT:**  Well again, my only question
really was, there's no mechanism established for
monitoring compliance with the equitable relief that is
proposed here.  Should I be comfortable with that?

     **MS. SCHNEIER:**  I understand the Court's
concern.  Obviously, that was our concern as well, and
it's I would say two things that might give the Court
comfort.

    The vast bulk of Bauer's sales come from
newsstands, not through subscriptions.  So it's a fairly
confined universe, and very clearly defined people who
would be involved.  It is a very small group.

    I have been on phone with them.  I'm comfortable.
Obviously, we -- we have negotiated this, you know, for
quite a long time and very carefully, and making sure that

     *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1  we comply with the Court's order, and from my client's

2  perspective, you know, making sure that we're not going to

3  have any further allegations that we've violated the

4  statute is of paramount importance.

5       So given the limited scope of Bauer's business in

6  this area, I feel comfortable that we will be able to

7  monitor it, and we have already shut it down, and there

8  have been no issues.

9       **THE COURT:**  Should I be concerned about the

10  variance between the -- the modification that's called for

11  by the attorney general's involvement and the form of the

12  proposed settlement agreement before that involvement?

13       **MS. SCHNEIER:**  I --

14       **THE COURT:**  I gather as a result of

15  interaction with the attorney general's office, there's an

16  agreement for a period of four years not to allow any

17  personal information to me.  What's it called, personal

18  reading?

19       **MS. SCHNEIER:**  It's not defined under the

20  statute.  We refer to it as personal reading information.

21       **THE COURT:**  Right.  Not to be disclosed, and

22  then is it that the agreement is going to be modified to

23  provide that, but after four years if you undertake to

24  disclose, you'll be required to post the privacy notices

25  explaining that?

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1          **MS. SCHNEIER:** Well, actually we have already
2     modified our online privacy policy to lessons learned from
3     here to have, you know, better practices. We've already
4     done that, but after four years if we decide to begin the
5     disclosures that are contemplated with the statute, we
6     have to comply with the statute. The statute provides for
7     certain exceptions, most of which are built into the
8     prospective relief that has been negotiated, some of which
9     we have voluntarily undertaken any way.
10          The -- the discussions with the AG's office really
11    caused us to affirmatively represent what was already
12    provided for in the statute, which was we were given the
13    option of not -- of not making any further disclosures,
14    and what we agreed was given how the discussion was going
15    to just say that's -- that is what we're going to do.
16    We're going to make a representation that that is what
17    we're going to do and that satisfied the attorney general.
18          **THE COURT:** All right. Very fine. Thank
19    you.
20          **MS. SCHNEIER:** Thank you, your Honor.
21          **THE COURT:** Well, the Court today, based upon
22    the papers that has been submitted, as well as the
23    statements here on the record, is prepared to grant the
24    motion for final settlement approval.
25          The -- the Court can conclude from the submissions

             *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1   that the preliminary approval is -- as concluded by the

2   preliminary approval, the Court is satisfied that the Rule

3   of 23(a) requirements have been met.

4        The settlement class is comprised of about 23,000

5   individuals, and is obviously numerous enough that the

6   joinder of all members are -- would be impractical, and

7   the numerosity requirement is therefore met.

8        The commonality requirement in Rule 26(a)(2) is

9   also met given the common questions of fact and law, which

10  include whether defendant obtained consent prior to

11  disclosing the magazine subscription information at issue

12  to third parties, whether the defendant notified plaintiff

13  in the settlement class members that such information

14  would be disclosed, and whether the defendant's disclosure

15  of plaintiffs and settlement class members magazine

16  subscription information violated the Michigan Video

17  Rental Privacy Act, and lastly, whether the plaintiff and

18  settlement class members are entitled to the statutory

19  damages provided for by the Video Rental Privacy Act.

20       The Court concludes then that the commonality

21  requirement is likewise met.

22       As it relates to typicality given that all of the

23  claims arise from the same course of conduct, the Court is

24  convinced that the requirement of Rule 26(a)(3) has been

25  established, and lastly, that the requirement of adequacy

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    is satisfied by the -- by both criteria that commonly are

2    applied by the Court to make that assessment.

3            First, that the class representative Ms.

4    Halaburda, has common interest with the unnamed members of

5    class, and second, that the representative vigorously

6    prosecuted the interest of the class through qualified

7    counsel.

8            The Court is to assess the predominance factor

9    that is likewise a part of Rule 26(a), and can determine

10   that the class members claims are based on the same set of

11   facts by disclosure of magazine subscription information

12   carrying essentially the same legal claims that are

13   covered by the RPA, and the -- and that the class action

14   claims here are superior to other methods fair and

15   efficient adjudication of a controversy.

16           As it relates to this proposed class action

17   settlement agreement, the Court is to assess whether the

18   terms proposed are fair, adequate and reasonable to those

19   it affects, and in the public interest.

20           The Court is to consider whether the interest of

21   the class as a whole are better served by the settlement

22   of the litigation rather than pursue through further

23   litigation, and -- and is to assess several factors that

24   have been established by the Sixth Circuit to guide the

25   inquiry into whether the final settlement is fair and

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    reasonable.

2         The first is the risk of fraud or collusion, and

3    in this case there is no evidence of fraud or collusion

4    and the presumption as established by the Sixth Circuit is

5    that, therefore, there is none.  There is no fraud or

6    collusion.

7         The complexity expense and likely duration of the

8    litigation is to be considered by the Court.  This case

9    has been pending for over two years.  It involves claims

10   that were heard as matter of first impression in our

11   circuit at least, if not in the country, and the Court in

12   earlier rulings found that the statute does apply to

13   magazines, which was an issue advanced that the case

14   should not be dismissed as the Court was asked to do by

15   the defense based upon its argument that subscribers had

16   consented to the disclosure of their subscription

17   information based upon privacy policy.

18        There are significant risks here that given

19   continuing litigation, there is significant possibility

20   that the ultimate outcome would have been little to no

21   recovery for the plaintiff, and the Court is satisfied

22   that while there has been not a great deal of formal

23   discovery, there was a good deal of exchange between the

24   parties conducting discovery informally over this period

25   of time.

       *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1    The Court is satisfied that the defendant has

2    provided plaintiff counsel with enough information to

3    conclude that the settlement as proposed is in the best

4    interest of settlement class, and here, the Court is

5    satisfied that the parties are using the proposed

6    settlement to resolve legitimate legal and factual

7    disputes that is more or less identified in the summary

8    and are more fully described in the parties papers.

9        The Court is likewise satisfied that class

10    counsel, as well as defense counsel here, is experienced

11    in litigating class action disputes that are at least

12    similar in size, scope and complexity, that their request

13    for approval of the settlement based upon their assessment

14    that the settlement is fair, reasonable and adequate can

15    be accepted by the Court that the settlement itself was

16    negotiated at arm's-length over a period of months.

17        The Court is also impressed that there has been a

18    generally positive reaction from the class members, that

19    while some have opted out of the class, there have been no

20    objections made to the settlement among the approximately

21    23,000 putative class members.

22        The Court is satisfied as well that public

23    interest favors approving the final settlement agreement.

24    As the plaintiff has pointed out in her motion, the

25    settlement is aligned with the objections of the statute,

12-12831; *CINDY HALABURDA v. BAUER PUBLISHING CO.*

1   and given the review and participation by the state

2   attorney general and its input into the final settlement

3   agreement as described on the record, the Court is

4   satisfied that the public interest favors approval.

5          As it relates to the attorney fees, the Court is

6   persuaded that the request for an award of attorney fees

7   of 232,500 as representing 30 percent of the common class

8   fund is a reasonable request in accordance with the fee

9   agreement originally negotiated, and a fair sum in light

10  of the risks that the Court has previously discussed of no

11  recovery at all, that the -- that the Lodestar calculation

12  results in a similar sum, and -- and that again, there

13  have been no objections made after notice to the class

14  members.

15         The Court is also aware the incentive award of

16  $5,000 to Ms. Halaburda is reasonably modest, and

17  commensurate with the role that she played in the

18  litigation.

19         While the ultimate distribution of the damages

20  award -- well, it's, in fact, the statutory damages

21  awarded as a part of this settlement agreement -- while

22  that sum is relatively modest and almost to the point of

23  being nominal, it is again commensurate with the

24  experience I think of the class members as a whole, and

25  who would be unable to establish actual damages, and who

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1     might be characterized as having suffered the annoyance of

2     the disclosure of the personal reading information and a

3     little more than that.

4           So had this case proceeded to judgment against the

5     defendant, it seems likely to the Court that the award to

6     individual plaintiffs would have been nominal, and that

7     the more important provisions of the settlement agreement

8     are the provisions according equitable relief and a

9     cessation of the disclosure altogether for this period of

10     four years by the defendants.

11           So the Court is satisfied that the settlement

12     agreement as a whole is appropriate.  I understand that

13     there is yet a modification of that award in accordance

14     with this outright cessation of four years that needs to

15     be completed and returned to the Court before that is

16     ultimately ordered, is that right?

17           **MR. SCHARG:**  Yes, we did include it in the

18     proposed final approval order, but as we were speaking

19     outside just before we walked in, we need to make a couple

20     of changes to the final approval order itself.  So we can

21     do it by the end of the day.

22           **THE COURT:**  All right.

23           **MR. SCHARG:**  And send it to the chambers.

24           **THE COURT:**  Okay.  That will be fine, and

25     we'll enter that as requested.  You can fill in the blanks

*12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*

1      on the awards, and we'll --

2                    MR. SCHARG:  If I could make one more note.

3                    THE COURT:  Yes.

4                    MR. SCHARG:  In the final approval motion,

5      the declaration attached to it, we corrected that there

6      were actually about 40,000 class members, and I just want

7      the Court --

8                    THE COURT:  Not 23?

9                    MR. SCHARG:  Not 23.  I just want the Court

10     to be aware of that.

11          Thank you for your assistance.

12                    THE COURT:  That's more suitable under the

13     numerosity requirement.

14                    MR. SCHARG:  Yes.

15                    THE COURT:  Okay.  Very good.  We'll enter

16     that when you get it to us later today.

17                    MR. SCHARG:  Thank you.

18                    MS. SCHNEIER:  Thank you, your Honor.

19

20                    (Proceedings concluded.)

21                        -   -   -

22

23

24

25


                   12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.

1                    **C E R T I F I C A T I O N**

2            I, Ronald A. DiBartolomeo, official court

3    reporter for the United States District Court, Eastern

4    District of Michigan, Southern Division, appointed

5    pursuant to the provisions of Title 28, United States

6    Code, Section 753, do hereby certify that the foregoing is

7    a correct transcript of the proceedings in the

8    above-entitled cause on the date hereinbefore set forth.

9            I do further certify that the foregoing

10   transcript has been prepared by me or under my direction.

11

12   _____          _____

13   Ronald A. DiBartolomeo, CSR                  Date
     Official Court Reporter

14                              -   -   -

15

16

17

18

19

20

21

22

23

24

25

                 *12-12831; CINDY HALABURDA v. BAUER PUBLISHING CO.*